OCT 23 2023 PM4:11
FILED-USDC-CT-NEW-HAVEN

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THEODORA F. ANTAR, *Individually & as next friend and legal guardian of her minor children A.L. and J.V., and on behalf of all others similarly situated* | § § § § § § § | **CASE NO. 3:23-cv-01337** |
| *Plaintiff,* | § § § | **COMPLAINT FOR FRAUD, RACKETEERING, VIOLATIONS OF CIVIL RIGHTS, ABUSE OF PROCESS, AND CIVIL CONSPIRACY** |
| v. | § § § | |
| HON. JANE KUPSON GROSSMAN *Official & individual capacities,* HON. JESSICA C. TORRES SHLATZ, *Official & individual capacities,* JUDICIAL BRANCH OF THE STATE OF CONNECTICUT, SENIOR OFFICE CLERK TIMOTHY AUGERI SCJM WATERBURY, *Official & individual capacities,* PETER FRADIANI, *Official & individual capacities,* RACHAEL LEVINE, *Official & individual capacities,* LEVINE LITIGATION LLC, TOWN OF ORANGE, ORANGE DEPARTMENT OF POLICE SERVICES, CITY OF NEW BRITAIN, ABDELGHANY ANTAR, ADAM REMBISZ, *Official and individual capacities,* ALEXANDRA WARZOCHA, *Official and individual capacities,* ALEXIS SMITH, *Official & individual capacities,* ALEXIS STAMOS, *Official and individual capacities,* ALLIE JACOBS, *Official and individual capacities,* AMANDA NUGENT, *Official & individual capacities,* AMANDA DEVAN NARDOZZI, *Official and individual capacities,* AMBER DOE, *Official and individual capacities, See pg. 2** | § § § § § § § § § § § § § § § § § § § § § § | **DEMAND FOR JURY TRIAL** |

*Plaintiff's first amended complaint* (handwritten)

1- COMPLAINT FOR FRAUD, RACKETEERING, ABUSE OF PROCESS, AND CIVIL CONSPIRACY

DEFENDANTS CONTINUED FROM PAGE 1:

SGT. AMEER WILLIAMS, *Official & individual capacities,* AMINA CONNELLY, *Official & individual capacities* ANASTASIA GANIM, *Official and individual capacities,* ANDREW KNOTT, *Official & individual capacities,* ANDREW MARSHALL, *Official & individual capacities,* ALEXANDRA ALEXIADES, *Official and individual capacities,* ELIAS ALEXIADES, *Official and individual capacities,* CITY OF NEW HAVEN CORPORATION COUNSEL DEPARTMENT, GREGORY STAMOS, *Official and individual capacities,* CITY OF MILFORD, MILFORD POLICE DEPARTMENT,  ANN DENY, *Official & individual capacities,* ANNAMARIA BARANOWSKI, *Official & individual capacities,* ANNISA KLAPPROTH *Official & individual capacities,* ANTHONY ZUPPARDI, *Official & individual capacities,* ANY AND ALL CLERKS/JUDICIAL MARSHALS PRESENT AT NEW HAVEN SUPERIOR COURT ON 4/8/22 6/1/22 6/28/22 4/5/23 5/25/23 6/15/23 8/1/23 & 10/4/23, *Official and individual capacities,* ASHLEY GRAY, ASST. CHIEF MAX MARTINS, *Official and individual capacities,* ASSISTANT CLERK DYLAN WINGARD, *Official and individual capacities,* ASSISTANT STATE'S ATTORNEY LAURA DELEO, *Official and individual capacities,* ASSISTANT STATE'S ATTORNEY REBECCA BARRY, *Official and individual capacities,* BARBARA BELLUCCI, *Official and individual capacities,* BASIL R.A. MAHONEY, *Official and individual capacities,*  BENJAMIN ABRAMS, *Official and individual capacities,* BENJAMIN GETTINGER, *Official and individual capacities,* BETSY KELLER, *Official and individual capacities,* BHCARE INC, BHCARE FOUNDATION INC, BLAKE SULLIVAN, *Official and individual capacities,* BRAD SAXTON, *Official and individual capacities,* BRUCE MARTIN, BUNNY VILLAGE LEARNING CENTER LLC, CARLA SMITH STOVER, PHD., *Official and individual capacities,* CARRIE BRICKHOUSE, *Official and individual capacities,*  CASEY BRINKMAN, *Official and individual capacities,* JILL ROSENFELD, *Official and individual capacities,* CAT ITAYA, *Official and*

*individual capacities,* CENTER FOR CHILDREN'S ADVOCACY INC.,   CHARLES & BONI-VENDOLA LLC, CHRIS R. NELSON, *Official and individual capacities,* CHRISTINA DOE, *Official and individual capacities,* CHRISTOPHER GANIM, CHRISTOPHER KATAGIS, CITY OF NEW HAVEN, CITY OF WATERBURY, ASSISTANT SUPERVISORY STATES ATTORNEY COLLEEN V. ZINGARO, *Official and individual capacities,* ASSOCIATION OF COURT SECURITY OFFICERS-CONNECTICUT INC., JEFFREY S. LEHMAN, *Official and individual capacities,* CONNECTICUT ALLIANCE TO END SEXUAL VIOLENCE INC., CONNECTICUT COALITION AGAINST DOMESTIC VIOLENCE INC., CONNECTICUT DEPARTMENT OF PUBLIC SAFETY, CONNECTICUT HUSKY HEALTH, CONNECTICUT JUDICIAL BRANCH CENTRALIZED ADA OFFICE, CONNECTICUT JUDICIAL REVIEW COUNCIL, CONNECTICUT OFFICE OF THE VICTIM ADVOCATE, CONNECTICUT OFFICE OF VICTIM SERVICES, CONNECTICUT STATE DEPARTMENT OF CHILDREN AND FAMILIES, CONNECTICUT PROTECTIVE MOMS INC., CONNECTICUT STATE CHILD SUPPORT ENFORCEMENT SERVICES, CONNECTICUT STATE DEPARTMENT OF SOCIAL SERVICES, CONNECTICUT STATE DIVISION OF CRIMINAL JUSTICE, CONNECTICUT STATE POLICE TROOP I BETHANY, CONNECTICUT WOMEN'S EDUCATION AND LEGAL FUND, CONOR DUFFY, *Official and individual capacities,* CRIS DOE, *Official and individual capacities,*  MAGISTRATE CYNTHIA ANGER, *Official and individual capacities,* DANIEL BURNS, *Official and individual capacities,* JOSHUA PASCALE, *Official and individual capacities,* DENNIS REILLY, *Official and individual capacities,* DIAMANTO ANTONELLIS, DISPATCHER WHITHAM #206, *Official and individual capacities,* DONALD CRETELLA, *Official & individual capacities,* DONNA DICOSMO, *Official & individual capacities,* DR. ANTHONY CAMPAGNA, *Official and individual capacities,* DR. ERIC FRAZER, *Official and individual capacities,* CONNECTICUT LEGAL SERVICES, INC., DR. KIMBERLY CITRON, *Official*

3- COMPLAINT FOR FRAUD, RACKETEERING, ABUSE OF PROCESS, AND CIVIL CONSPIRACY

*and individual capacities*, DR. ROBERT HOROWITZ, *Official and individual capacities*, DR. WENDY LEVY, *Official and individual capacities*, OFFICER E AVILES OF THE NEW HAVEN POLICE DEPARTMENT #263, *Official and individual capacities*, ELIZABETH PROTZMAN, *Official and individual capacities*, ELWYN BREWSTER QUIRK, *Official and individual capacities*, ERIN KRYGIER, *Official and individual capacities,* EUGENE ZINGARO, *Official & individual capacities*, GABRIEL MINA, *Official & individual capacities*, GANIM LEGAL LLC, GERALD VIGLIONE JR., *Official & individual capacities*, GINA KILLIAN, *Official and individual capacities*, GOVERNOR NED LAMONT, *Official and individual capacities*, GREGORY GALLO, *Official & individual capacities*, HAPPY EVEN AFTER FAMILY LAW LLC, SUSAN LETTELLEIR, *Official & individual capacities*, HEALING SPRINGS WELLNESS CENTER LLC, HEATHER COLLINS, *Official and individual capacities,* DAVID ROHAN, *Official & individual capacities*,  WOODBRIDGE CHILD CENTER INC., DAWN MORETTI, *Official & individual capacities*, JOCELYN PERCELL, *Official & individual capacities*, JESSICA MAYBECK, *Official & individual capacities*, HEAVENLY GIFT CHILDCARE CENTER LLC, HON. ARTHUR HILLER, *Official and individual capacities,* HON. CHERIE PHOENIX-SHARPE, *Official and individual capacities*, HON. CHRISTINE P. RAPILLO, *Official and individual capacities,* HON. CHRISTOPHER GRIFFIN, *Official and individual capacities*, HON. DAWNE G. WESTBROOK, *Official and individual capacities,* HON. EDWARD GRAZIANI, *Official and individual capacities*, HON. ERIKA MONIQUE TINDILL, *Official and individual capacities*, HON. JAMES ABRAMS, *Official and individual capacities,* HON. JAMES KENEFICK, *Official and individual capacities*, HON. KEVIN RANDOLPH, *Official and individual capacities*, HON. MARGARITA H. MOORE, *Official and individual capacities*, HON. MARK T. GOULD, *Official and individual capacities,* HON. MATTHEW P. VACCARELLI, *Official and individual capacities,* HON. MAUREEN PRICE-BORELAND, *Official and individual capacities*, NEXSTAR MEDIA GROUP INC.,

HON. JON M. ALANDER, *Official and individual capacities,* TOWN OF MIDDLEBURY, OFFICER MORTALLI OF THE HAMDEN POLICE DEPARTMENT, *Official and individual capacities,* SEVERAL OTHER JANE DOE AND JOHN DOE OFFICERS FROM THE HAMDEN POLICE DEPARTMENT, *Official and individual capacities,* HON. MICHAEL KAMP, *Official and individual capacities,* HON. PETER BROWN, *Official and individual capacities,* HON. SCOTT JONES, *Official and individual capacities,* HON. TAMMY GEATHERS, *Official and individual capacities,* DOROTHY DANIEL RODDY, *Official and individual capacities,* HOWARD LEVINE, *Official and individual capacities,* IRENE ANTAR O.D., *Official and individual capacities,* JAMES HENKE, *Official and individual capacities,* JAMES LAMBO, *Official and individual capacities,* JAMES ZEOLI FIRST SELECTMAN OF THE TOWN OF ORANGE, *Official and individual capacities,* JOHN CARANGELO, *Official and individual capacities,* PJ SHANLEY, *Official and individual capacities,* MITCHELL R. GOLDBLATT, *Official and individual capacities,* RALPH OKENQUIST, *Official and individual capacities,* JUDY W. WILLIAMS, *Official and individual capacities,* TOWN OF ORANGE CONNECTICUT BOARD OF SELECTMEN, TOWN OF ORANGE BOARD OF POLICE COMMISSIONERS, TOWN OF ORANGE BOARD OF POLICE COMMISSIONER CHAIRMAN JACK BARTON, *Official and individual capacities,* MARIAN HURLEY, *Official and individual capacities,* ROY CUZZOCREO, *Official and individual capacities,* NYJAHWAHN WALKER, *Official and individual capacities,* CHRISTOPHER CARVETH, *Official and individual capacities,* JAMIE HOBART LAMBO, *Official and individual capacities,* JANE ADAMIK, *Official and individual capacities,* JANET ORTIZ, *Official and individual capacities,* MAGISTRATE JENNIFER AGUILAR, *Official and individual capacities,* JENNIFER GALLO LODICE, JESSICA MAYO PH.D, *Official and individual capacities,* JESSICA STRUSKY, *Official and individual capacities,* JIA LUO, *Official and individual capacities,* JOAQUINA BORGES KING, *Official and individual capacities,* JOHN PARESE,

5- COMPLAINT FOR FRAUD, RACKETEERING, ABUSE OF PROCESS, AND CIVIL CONSPIRACY

*Official and individual capacities*, JOSEPH DECICCO, *Official and individual capacities*, JOSEPH M. PORTO, *Official and individual capacities*, JOSEPH MERSCHMAN, *Official and individual capacities*, JOSH LAMBO, *Official and individual capacities*, JUDICIAL MARSHAL ANDREWS OF THE NEW HAVEN SUPERIOR COURT, *Official and individual capacities,* JUDICIAL MARSHAL HAYDEN #567 OF THE NEW HAVEN SUPERIOR COURT, *Official and individual capacities,* JUDICIAL MARSHAL RUNLETT OF THE NEW HAVEN SUPERIOR COURT, *Official and individual capacities*, JUSTIN ATTAI, *Official and individual capacities*, KATHERINE VERANO, *Official and individual capacities,* KAREN BOWERS, *Official and individual capacities* , KATHERINE VERANO, *Official and individual capacities*, SAFE FUTURES INC., KEVIN DUNN, *Official and individual capacities,* KLINGBERG FAMILY CENTER INC., KRISTIANNA TYLER, *Official and individual capacities*, KRISTIN WOLF, *Official and individual capacities*, LANCIA BLATCHLEY, *Official and individual capacities*, LARAE PLUMMER, *Official and individual capacities*, LEONARD RODRIGUEZ, *Official and individual capacities*, LIEUTENANT ANDERSON OF THE ORANGE POLICE DEPARTMENT, *Official and individual capacities,* CLERK LINDA DOE FROM THE DERBY COURT, *Official and individual capacities*, LIEUTENANT BENJAMIN BORELLI OF THE CONNECTICUT STATE POLICE TROOP I BETHANY, *Official and individual capacities,* LIEUTENANT DERUBEIS OF THE ORANGE POLICE DEPARTMENT, *Official and individual capacities,* LIEUTENANT JOHN PRISAVAGE OF THE NEW BRITAIN POLICE DEPARTMENT, *Official and individual capacities*, LIEUTENANT JUDICIAL MARSHAL DADIO BADGE #113 OF THE NEW HAVEN SUPERIOR COURT, *Official and individual capacities,* LISA B. GLIBERTO, *Official and individual capacities*, DETECTIVE LISA R. STEEVES OF THE NEW BRITAIN POLICE DEPARTMENT, *Official and individual capacities*, LIZZY CRETELLA, LORI DOE CLERK OF THE NEW HAVEN SUPERIOR COURT, *Official and individual capacities,* LORI SEMRAU, *Official and individual capacities*, LOUIS

A. ANNECCHINO, *Official and individual capacities*, LUZ SANTANA, *Official and individual capacities*, LYNDA SORENSEN, *Official and individual capacities*, MAKANA ELLIS, *Official and individual capacities*, MARESSA LATORACCA, *Official and individual capacities*, MARGARET PENNY MASON, *Official and individual capacities*, MARGOT KENEFICK BURKLE, *Official and individual capacities*, MARK D. PHILLIPS, *Official and individual capacities*, MARK WACHTER, MARTHA WEILER, MARY KOZICKI, *Official and individual capacities*, MARY-ANN CHARLES, MATTHEW JOHN LODICE, *Official and individual capacities*, MATTHEW J. LODICE ON BEHALF OF HIS MINOR CHILD D.L., *Official and individual capacities*, MATTHEW LODICE ON BEHALF OF HIS MINOR CHILD S.L., *Official and individual capacities*, MAURA MASTRONY, *Official and individual capacities*, MEGAN C. MCGRATH, *Official and individual capacities*, MELISSA SWAN, MAYOR JOE GANIM, *Official and individual capacities*, MEREDITH MCGLOIN, *Official and individual capacities*, MERIT LAJOIE, *Official and individual capacities*, MICHAEL HILLIS, MICHELLE M. MURPHY, *Official and individual capacities*, MILFORD SUPERIOR COURT CLERK LAURA, *Official and individual capacities*, MONICA CLOUD ROGERS, *Official and individual capacities*, MONICA PEREZ, *Official and individual capacities*, NANCY DOE CLERK FROM THE NEW HAVEN SUPERIOR COURT, *Official and individual capacities*, NANCY SASSER, *Official and individual capacities*, NANCY VALENTINO, *Official and individual capacities*, NATALIE CABAN, *Official and individual capacities*, NEW BRITAIN POLICE DEPARTMENT, NEW HAVEN CHILD SUPPORT ENFORCEMENT SERVICES, NEW HAVEN COUNTY BAR ASSOCIATION, NEW HAVEN LEGAL ASSISTANCE ASSOCIATION INC., NEW HAVEN POLICE DEPARTMENT, NICOLE TUNG, *Official and individual capacities*, NUMEROUS JANE DOE AND JOHN DOE DISPATCH AND POLICE OFFICERS OF THE CONNECTICUT STATE POLICE TROOP I BETHANY DEPARTMENT, *Official and individual capacities*, NUMEROUS JANE DOE AND JOHN

DOE DISPATCH AND POLICE OFFICERS OF THE NEW BRITAIN POLICE DEPARTMENT, *Official and individual capacities*, OFFICER STRZALKA # 341 OF THE NEW BRITAIN POLICE DEPARTMENT, *Official and individual capacities*, NUMEROUS JANE DOE AND JOHN DOE DISPATCH AND POLICE OFFICERS OF THE ORANGE POLICE DEPARTMENT, *Official and individual capacities*, OFFICE OF VICTIM COMPENSATION, OFFICE OF VICTIM SERVICES TRAINING, OFFICER ALIZA ESPOSITO OF THE ORANGE POLICE DEPARTMENT, *Official and individual capacities*, OFFICER ANDREW SATKOWSKI OF THE ORANGE POLICE DEPARTMENT, *Official and individual capacities,* OFFICER ARTABANE OF THE ORANGE POLICE DEPARTMENT, *Official and individual capacities,* OFFICER BAILEY OF THE ORANGE POLICE DEPARTMENT, *Official and individual capacities*, OFFICER JEFFREY FERNANDES OF THE ORANGE POLICE DEPARTMENT, *Official and individual capacities,* OFFICER JOHN LANE OF THE ORANGE POLICE DEPARTMENT, *Official and individual capacities,* OFFICER JUSTIANO NIEVES OF THE NEW HAVEN POLICE DEPARTMENT #221, *Official and individual capacities*, OFFICER KURT CORREIA #132 OF THE ORANGE POLICE DEPARTMENT, *Official and individual capacities,* OFFICER PADRO OF THE WATERBURY POLICE DEPARTMENT, *Official and individual capacities*, OFFICER PISCITELLI OF THE ORANGE POLICE DEPARTMENT, *Official and individual capacities*, OFFICER REPICE OF THE ORANGE POLICE DEPARTMENT, *Official and individual capacities*, OFFICER RISTIANO OF THE ORANGE POLICE DEPARTMENT, *Official and individual capacities,* OFFICER TAYLOR OF THE ORANGE POLICE DEPARTMENT, *Official and individual capacities,* OFFICER YELENIK OF THE ORANGE POLICE DEPARTMENT, *Official and individual capacities*, DEAN PAUL CHILL, *Official and individual capacities,* PAUL GANIM, *Official and individual capacities*, PAUL LODICE JR., *Official and individual capacities*, PAUL LODICE SR., *Official and individual capacities,* PREFERRED PEDIATRICS, QUINNIPIAC UNIVERSITY,

8- COMPLAINT FOR FRAUD, RACKETEERING, ABUSE OF PROCESS, AND CIVIL CONSPIRACY

QUINNIPIAC UNIVERSITY SCHOOL OF LAW, RACHEL REEVES, *Official and individual capacities*, RANDI CALABRESE, RANEIL SMITH, *Official and individual capacities*, RAPE CRISIS CENTER OF MILFORD INC, JANE DOE EMPLOYEES OF PREFERRED PEDIATRICS LLC, *Official and individual capacities,* RENEE CASEY MD, *Official and individual capacities*, RENEW YOUR MIND LLC, REPRESENTATIVE MARY WELANDER, *Official and individual capacities,* CHIEF ROBERT J. GAGNE, *Official and individual capacities*, ROBERT MCCONNELL, *Official and individual capacities*, ROY BOWERS, *Official and individual capacities*, SAFE HAVEN OF GREATER WATERBURY, SANDRA LUGO GINES, *Official and individual capacities*, SARAH HANNA, *Official and individual capacities*, SCOTT LODICE, *Official and individual capacities*, JAY GROSSMAN, *Official and individual capacities*, SCOTT LODICE ON BEHALF OF HIS MINOR CHILD T.L., *Official and individual capacities*, SEAN MCELLIGOTT, *Official and individual capacities*, SENATOR JAMES MARONEY, *Official and individual capacities*, SERGEANT BARTLEY OF THE ORANGE POLICE DEPARTMENT, *Official and individual capacities*, SERGEANT JARED BARSELAU OF THE NEW BRITAIN POLICE DEPARTMENT, *Official and individual capacities*, HON. KAREN DEMEOLA, *Official and individual capacities,*  SERGEANT JOEL PORTORREAL OF THE CONNECTICUT STATE POLICE TROOP I OF BETHANY, *Official and individual capacities,*  SERGEANT JUDICIAL MARSHAL POWERS BADGE #157 OF THE NEW HAVEN SUPERIOR COURT,  *Official and individual capacities*, SERGEANT JUDICIAL MARSHAL SCHWEITZER BADGE #129 OF THE NEW HAVEN SUPERIOR COURT, *Official and individual capacities*, SERGEANT KIRBY OF THE ORANGE POLICE DEPARTMENT, *Official and individual capacities*, SEVERAL JANE DOE AND JOHN DOE CONNECTICUT JUDICIAL MARSHALS FROM THE MILFORD SUPERIOR COURT, *Official and individual capacities*, SEVERAL JANE DOE AND JOHN DOE CONNECTICUT JUDICIAL MARSHALS FROM THE NEW HAVEN SUPERIOR COURT, *Official and individual*

9- COMPLAINT FOR FRAUD, RACKETEERING, ABUSE OF PROCESS, AND CIVIL CONSPIRACY

*capacities,* SEVERAL JANE DOE AND JOHN DOE DERBY SUPERIOR COURT CLERKS, *Official and individual capacities,* SEVERAL JANE DOE AND JOHN DOE MILFORD CONNECTICUT SUPERIOR COURT CLERKS, *Official and individual capacities,* SEVERAL JANE DOE AND JOHN DOE NEW HAVEN SUPERIOR COURT CLERKS, *Official and individual capacities,* SHAKERIA BROWN, *Official and individual capacities,* SHARI-LYNNE CUOMO SHORE, *Official and individual capacities,* STEPHEN M. CARROLL, *Official and individual capacities,* SHAWNIEL CHAMANLAL, *Official and individual capacities,* SHELBY SUMMERS, *Official and individual capacities,* STACY VOTTO, *Official and individual capacities,* STAN STRUSKY, STATE OF CONNECTICUT, STATE OF CONNECTICUT SENATE DEMOCRATS, STEPHANIE BERNSTEIN, STEPHANIE ROBERGE, *Official and individual capacities,* STEPHANIE SGAMBATI, *Official and individual capacities,* TAHLISA BROUGHAM, *Official and individual capacities,* TAMAR BIRCKHEAD, *Official and individual capacities,* THE CENTER FOR FAMILY JUSTICE INC., THE DECICCO LAW FIRM LLC, THE UMBRELLA CENTER FOR DOMESTIC VIOLENCE SERVICES OF BHCARE, THE UNIVERSITY OF CONNECTICUT, THOMAS A. ESPOSITO, *Official and individual capacities,* TIM POTHIN, *Official and individual capacities,* TOWN OF ORANGE FIRST SELECTMANS OFFICE, UNIVERSITY OF CONNECTICUT SCHOOL OF LAW, US DEPARTMENT OF JUSTICE CIVIL RIGHTS DIVISION, VICTIM RIGHTS CENTER OF CONNECTICUT, VIOLENCE AGAINST WOMEN PREVENTION PROGRAM, WELTY ESPOSITO & WEILER LLC, WHOLE HOUSE REMODELING COMPANY LLC, WILLIAM TONG, *Official and individual capacities,* YALE CHILD ABUSE CLINIC, SAFE FUTURES INC.,YALE UNIVERSITY, YALE UNIVERSITY CHILD STUDY CENTER, ZINGARO CRETELLA AND RASILE LLC, DAVID A. CARLSON, *Official and individual capacities,* LYNN PELLEGRINO, *Official and individual capacities,* DIVORCE SOLUTIONS OF CONNECTICUT, CONNECTICUT CRIMINAL DEFENSE LAWYERS ASSOCIATION, COLEMAN

LAW LLC, THE CONNECTICUT COUNCIL FOR NON-ADVERSARIAL DIVORCE, PELLEGRINO & PELLEGRINO LLC, AISHA ROCHE, *Official and individual capacities*, WATERBURY POLICE DEPARTMENT OPERATOR 452, *Official and individual capacities,* ANY AND ALL JANE DOE AND JOHN DOE DISPATCH OPERATORS FROM THE WATERBURY POLICE DEPARTMENT ON DUTY FROM 10/8/23-10/11/23, *Official and individual capacities,* ANY AND ALL JANE DOE AND JOHN DOE DETECTIVES FROM THE WATERBURY POLICE DEPARTMENT ON DUTY FROM 10/8/23-10/11/23, *Official and individual capacities,* ANY AND ALL JANE DOE AND JOHN DOE OFFICERS FROM THE WATERBURY POLICE DEPARTMENT ON DUTY FROM 10/8/23-10/11/23, *Official and individual capacities,* ANY AND ALL JANE DOE AND JOHN DOE SOCIAL WORKERS FROM THE DEPARTMENT OF CHILDREN AND FAMILIES PRESENT AND INVOLVED IN INCIDENTS OF 10/8/23-10/11/23, *Official and individual capacities,* ANY AND ALL JANE DOE AND JOHN DOE SOCIAL WORKERS FROM THE DEPARTMENT OF CHILDREN AND FAMILIES 24 HOUR CARE LINE OPERATOR SYSTEM WHO TOOK REPORTS REGARDING A.L AND THE INCIDENTS OF 10/8/23-10/11/23, *Official and individual capacities,* CATHERINE WHELAN, *Official and individual capacities*, CATHERINE WHELAN LAW LLC, CARMELINA CALABRESE, *Official and individual capacities,* SUPERVISOR STEPHANIE N. DOE DIRECTOR OF QUALITY FOR THE QUALITY DEPARTMENT OF ST. MARY'S HOSPITAL, *Official and individual capacities,* KELLY PINTO, *Official and individual capacities,* DETECTIVE AGUILAR OF THE WATERBURY POLICE DEPARTMENT, *Official and individual capacities,* ANY AND ALL JANE DOE AND JOHN DOE PARAMEDICS DISPATCHED TO 48 QUARRY HILL RD WATERBURY CT IN RESPONSE TO THE WELFARE OF MINOR CHILD A.L FOR ANY AND ALL OF THE INCIDENTS OF 10/8/23-10/11/23, *Official and individual capacities*,  ANY AND ALL JANE DOE AND JOHN DOE WATERBURY POLICE DEPARTMENT OFFICERS DISPATCHED TO 48 QUARRY HILL RD

WATERBURY CT IN RESPONSE TO THE WELFARE OF MINOR CHILD A.L FOR ANY AND ALL OF THE INCIDENTS OF 10/8/23-10/11/23, *Official and individual capacities*, ANY AND ALL JANE DOE AND JOHN DOE EMPLOYEES OF SAINT MARY'S HOSPITAL WHO HAD ANY CONTACT WITH A.L. OR WERE PRESENT AT SAINT MARY'S HOSPITAL FROM 10/8/23-10/11/23, *Official and individual capacities*, HONORABLE JUDGE JON M. ALANDER, *Official and individual capacities*, OFFICER J. SEEGER OF THE WATERBURY POLICE DEPARTMENT, *Official and individual capacities*, KIM COLEMAN, *Official and individual capacities*, MELANIE S. BUCKLEY, *Official and individual capacities*, SAINT MARY'S HOSPITAL, AMANDA DOE, *Official and individual capacities*, SAFE FUTURES INC., GERAGHTY & BONNANO LLC, MARK DUBOIS, NEW HAVEN COUNTY BAR FOUNDATION INC, CONNECTICUT BAR ASSOCIATION, EMILY KULIKAUSKAS, *Official and individual capacities*, THE FOUNDATION OF THE NEW HAVEN COUNTY BAR, CLIFFORD GARNETT, *Official and individual capacities*, OFFICER NASUFI OF THE WATERBURY POLICE DEPARTMENT, *Official and individual capacities*, OFFICE OF THE STATES ATTORNEY JUDICIAL DISTRICT OF ANSONIA-MILFORD, ACCESS HEALTH INTERNATIONAL INC., TOWN OF HAMDEN, HAMDEN POLICE DEPARTMENT, OFFICER JOSEPHY MORTALI OF THE HAMDEN POLICE DEPARTMENT, *Official and individual capacities*, JULIO ORTIZ, *Official and individual capacities*, FORTIFIED INVESTIGATIONS AND SECURITY LLC, CONNECTICUT BAR ASSOCIATION INC., DIRECTOR OF HEALTH FOR THE TOWN OF ORANGE AMIR MOHAMMAD, *Official and individual capacities*. LISA ZAPPONE, *Official and individual capacities*, TRINITY HEALTH, INC., TRINITY HEALTH OF NEW ENGLAND CORPORATION INC., SAINT MARY'S HOSPITAL OF WATERBURY, TRINITY HEALTH OF NEW ENGLAND EMERGENCY MEDICAL SERVICES INC., THE COMMUNITY FOUNDATION FOR GREATER NEW HAVEN INC., VALENTINA RESTREPO, *Official and individual capacities*,

KELLI DALY RN, *Official and individual capacities*, DIANA LOPUSNY MD, *Official and individual capacities*, ALLISON PEARSON FNP, *Official and individual capacities*, PREFERRED PEDIATRICS, LLC., FATHER PETER J. ORFANAKOS, *Official & individual capacities*,   SAINT BARBARA GREEK ORTHODOX CHURCH, GREEK ORTHODOX ARCHDIOCESE OF AMERICA, ANTHONY INGALA, *Official and individual capacities,* SOUTHINGTON HIGH SCHOOL, TOWN OF SOUTHINGTON,  ROSA CHIROPRACTIC AND WELLNESS, ROSA CHIROPRACTIC CENTER, RICHARD BLUMENTHAL, *Official and individual capacities,* CT PROBATE E-FILING, DANIEL MINA, *Official and individual capacities,* THE COMMISSIONERS CIGAR LOUNGE LLC, CONNECTICUT DEPARTMENT OF EMERGENCY SERVICES AND PUBLIC PROTECTION, SEVERAL JANE DOE AND JOHN DOE DISPATCH WORKERS EMPLOYED BY MILFORD POLICE DEPARTMENT, *Official and individual capacities,* SEVERAL JANE DOE AND JOHN DOE OFFICERS EMPLOYED BY MILFORD POLICE DEPARTMENT, *Official and individual capacities,* OFFICER M. KREITMAN #21 OF THE MILFORD POLICE DEPARTMENT, *Official and individual capacities,* OFFICER SCHOTT #33 OF THE MILFORD POLICE DEPARTMENT, *Official and individual capacities,* LISA A. KNOPF, *Official and individual capacities*, KNOPF LAW LLC, OFFICER VAKOS #139 OF THE MILFORD POLICE DEPARTMENT, *Official and individual capacities,* OFFICER V. SENATORE #87 OF THE MILFORD POLICE DEPARTMENT, *Official and individual capacities,* SERGEANT LACY #310 OF THE MILFORD POLICE DEPARTMENT, *Official and individual capacities,* CLERK MAGDALA DOE OF THE MILFORD SUPERIOR COURT, *Official and individual capacities,* JOHN LAMBO, *Official and individual capacities*, SERGEANT O'KEEFE #320 OF THE MILFORD POLICE DEPARTMENT, *Official and individual capacities,* JUDICIAL MARSHAL SANTANA FOR THE MILFORD SUPERIOR COURT, *Official and individual capacities,* STATES ATTORNEY MARGARET E. KELLEY, *Official and individual capacities,* CONNECTICUT

DEPARTMENT OF CORRECTIONS, OFFICE OF THE PROBATE COURT ADMINISTRATOR, YORK CORRECTIONAL INSTITUTION, CONNECTICUT FATHERHOOD INITIATIVE, CONNECTICUT DEPARTMENT OF LABOR, CONNECTICUT DEPARTMENT OF DEVELOPMENTAL SERVICES, MIDDLEBURY POLICE DEPARTMENT, OFFICER R.M. GUSTO OF THE MIDDLEBURY POLICE DEPARTMENT, *Official and individual capacities*, KYLIE VACCARELLI BCBA LBA, *Official and individual capacities*,  CT BAR INSTITUTE INC., HON. LYNDA B. MUNRO, *Official and individual capacities*, AND CHRISTOPHER SMITH, *Official and individual capacities*.

## PLAINTIFF'S FIRST AMENDED COMPLAINT

This lawsuit unveils the shocking veil of secrecy and conspiratorial activities which has been led by several revered institutions to mastermind and execute a "Cash for Kids" operation involving a multitude of state departments, agencies, and affiliates.

The State of Connecticut has created an intricate system within which mothers and women have been systematically marginalized and children have been perpetually harmed and mistreated.

Plaintiff Theodora F. Antar (hereinafter "Plaintiff" or "Ms. Antar"), *both individually and as next friend and legal guardian of her minor children J.V. and A.L., and on behalf of all others similarly situated,* brings this Complaint for fraud, civil conspiracy to commit fraud, abuse of process, civil violations of the Federal Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1964(c))("Federal RICO") as well as multiple additional claims, both supplemental and original, of violations of plaintiffs rights by way of Complaint against the above captioned Defendants for cause alleging and stating as follows:

## THE PARTIES

1. Plaintiffs are as follows:

    1. Plaintiff Theodora Antar, *both individually and as next friend and legal guardian of her minor children J.V. and A.L. and on behalf of a significant class of aggrieved individuals,* is a resident of, and is domiciled in the State of Connecticut residing at 856 Shagbark Drive, Orange, CT, 06477. Plaintiff is a living, breathing, private being and is not defined as an entity under contract law. Rather, plaintiff is a living, breathing, private individual as are her minor children A.L. and J.V., and plaintiff and her minor children have inalienable rights under the United States Constitution.

2. Defendants are as follows:

    1. Defendant Honorable Jane Kupson Grossman, *Official and individual capacities,* is the Presiding Judge and AAJ for the Post-Judgment Family Division of the New Haven Superior Court located at 235 Church street, New Haven, CT, the former President of the Family Law Section of the New Haven County Bar Association, President of the Board of the Connecticut Women's Education and Legal Fund, former Presiding Judge for Criminal Matters for New Haven Superior Court at 121 Elm St, New Haven, CT, former Magistrate Judge for New Haven, Bridgeport, and Waterbury CT, and is an adjunct professor at Quinnipiac University School of Law with an official address of 235 Church street, New Haven, CT, 06510.

    2. Defendant Honorable Jessica C. Torres Shlatz, *Official & individual capacities,* is a superior court judge for the State of Connecticut Superior Court for Juvenile Matters with an address of 7 Kendrick Avenue, Waterbury, CT, 06702.

    3. Defendant Judicial Branch for the State of Connecticut is state government office with a publicly listed address at 20 Park Pl, Vernon, CT 06066.

    4. Defendant Senior Office Clerk Timothy Augeri SCJM Waterbury, *Official & individual*

*capacities,* is a senior office clerk for the State of Connecticut Superior Court for Juvenile Matters with an address of 7 Kendrick Avenue, Waterbury, CT, 06702.

5. Defendant Peter Fradiani, *Official & individual capacities,* is a deputy clerk for juvenile matters for the New Britain State's Attorney's office for Juvenile Matters at New Britain with an address of 20 Franklin Square, New Britain, CT, 06051.

6. Defendant Rachael Levine, *Official & individual capacities,* is an attorney employed at Levine Litigation LLC and former employee of the State of Connecticut representing the Department of Children and Families with an address of 304 Federal Road, Suite 206, Brookfield, CT, 06804.

7. Defendant Joshua Pascale, *Official and individual capacities,* is an employee of Levine Litigation LLC and the court-appointed counsel for plaintiff's minor child A.L. with an address of 304 Federal Road, Suite 206, Brookfield, CT, 06804.

8. Defendant Levine Litigation LLC is a law firm located in the State of Connecticut with an address of 304 Federal Road, Suite 206, Brookfield, CT, 06804.

9. Defendant Town of Orange is a Town located in New Haven County, in the State of Connecticut with an official address of 617 Orange Center Rd, Orange, CT, 06477.

10. Defendant Orange Department of Police Services is a police department located at 314 Lambert Rd, Orange, CT, 06477.

11. Defendant City of New Britain is a City located in Hartford County, in the State of Connecticut with an official address of 27 West Main st, New Britain, CT, 06051.

12. Defendant Abdelghany Antar is the biological father of the plaintiff and is domiciled in the State of Connecticut residing at 156 Wintonbury Ave B 112, Bloomfield, CT, 06002.

13. Defendant Adam Rembisz, *Official and individual capacities,* is the Captain Criminal Investigations Division of the City of New Britain Police Department. The official address is 10

Chestnut Street, New Britain, CT, 06051.

14. Defendant Alexandra Warzocha, *Official and individual capacities*, is a resident of and is domiciled in the State of Connecticut and is legal assistant and an employee of Zingaro, Cretella, and Rasile LLC with an official address of 681 State St, New Haven, CT, 06510.

15. Defendant Alexis Smith, *Official and individual capacities,* is a resident of and is domiciled in the State of Connecticut and is the Executive Director at New Haven Legal Assistance Association, Inc. with an official address of 205 Orange Street, New Haven, CT, 06510.

16. Defendant Alexis Stamos, *Official and individual capacities,* is the owner and operator of Defendant Tiny But Mighty Family Childcare LLC and a resident of the State of Connecticut with an address of 4 Bungay Terrace, Seymour, CT, 06483.

17. Defendant Allie Jacobs, Esq., *Official and individual capacities,* is a resident of and is domiciled in the State of Connecticut and is one of the Executive Committee Members of the New Haven County Bar Association. She is an alumnus of Quinnipiac University School of Law, a former Assistant Clerk in Family Matters at New Haven Superior Court for Honorable James G. Kenefick, Jr., and the Co-founder and co-chair of the New Haven County Bar Association LGBTQ Committee. She is employed at Jacobs & Jacobs Injury lawyers with an official address of One Audubon, 1 Audubon Suite 103, New Haven, CT, 06511.

18. Defendant Amanda C. Nugent, *Official and individual capacities,* is a resident of and is domiciled in the State of Connecticut and is the President-elect Executive Committee Officer for the New Haven County Bar Association with an official address of 900 Chapel St #10, New Haven, CT, 06510.

19. Defendant Amanda Devan Nardozzi, *Official and individual capacities,* is a resident of and is domiciled in the State of Connecticut and is the Executive Director at Safe Haven of Greater

Waterbury Inc. She is a member of the International Association of Chiefs of Police, former Commission Member of the Environmental Control Commission for the City of Waterbury, current Board of Director member for Jane Doe No More Inc., current Board of Director member for the Boys and Girls Club of Greater Waterbury, current corporator of Thomaston Savings Bank, Current Commissioner for the Board of Education for the City of Waterbury, former State of Connecticut Department of Corrections Correctional Officer, former patrol officer, detective, police sergeant, and detective sergeant for the Naugatuck Police Department, former director of the Police Recertification Program for Post University, current CT Post Certified Instructor for Police Officer Standards and Training, and former board member for the Connecticut Public Broadcasting Network. The official address is listed at 29 Central Avenue, Waterbury, CT, 06702.

20. Defendant Amber Doe, *Official and individual capacities,* is a resident of the state of Connecticut and is presumed to be a romantic partner of Defendant Matthew J. Lodice. Her address and true identity are unknown at this time.

21. Defendant Sergeant Ameer Williams, #745 of the New Haven Police Department, *Official and individual capacities,* is an employee of the New Haven Police Department and City of New Haven. The official address is 1 Union Ave, New Haven, CT, 06510.

22. Defendant Amina Connelly, *Official and individual capacities*, is the Deputy Chief Clerk for Family Matters for the New Haven Superior Court located at 235 Church st, New Haven, CT, 06510.

23. Defendant Anastasia Ganim, *Official and individual capacities*, is a resident of the state of Connecticut and is the biological sister of the plaintiff. She is a state employee employed with Hamden Public Schools and sits as president on the executive board of the Peck Place PTO. The official address is 314 Demarest Drive, Orange, CT, 06477.

24. Defendant Andrew Knott, *Official and individual capacities*, is the President of the Executive Committee of The New Haven County Bar Association. The official address is 900 Chapel St #10, New Haven, CT, 06510.

25. Defendant Andrew Marshall, *Official and individual capacities,* is a resident of the state of Connecticut. He is a PCA at Waterbury Hospital, an Emergency Medical Technician at Medtronic, and a former Emergency Medical Technician Supervisor at Naugatuck Ambulance. His official address is 28 Miller rd., Bethany, CT, 06524.

26. Defendant Alexandra Alexiades, *Official and individual capacities,* is a resident of the state of Connecticut and the cousin of defendant Wachter. She is a registered nurse employed by Yale New Haven Health and an alumnus of Quinnipiac University with an address of 1073 Racebrook Road, Woodbridge, CT, 06525.

27. Defendant Elias Alexiades, *Official and individual capacities,* is the Assistant Corporation Counsel for the Corporation Counsel Department for the City of New Haven with a listed address of 165 Church Street, New Haven, CT, 06510.

28. Defendant City of New Haven Corporation Counsel Department is a municipal department located in the State of Connecticut and has a listed address of 165 Church Street, New Haven, CT, 06510.

29. Defendant Gregory Stamos, *Official and individual capacities,* is an alumnus of Defendant University of Connecticut and is the father of Defendant Alexis Stamos and is the General Counsel for Defendant Saint Barbara Greek Orthodox Church with an address of 480 Racebrook Road, Orange, CT, 06477.

30. Defendant City of Milford is a municipality in the State of Connecticut with an official address of 110 River Street, Milford, CT, 06460.

31. Defendant Milford Police Department is a police department in the City of Milford with an address

of 430 Boston Post Road, Milford, CT, 06460.

32. Defendant Sergeant O'Keefe #320 of the Milford Police Department, *Official and individual capacities,* is an employee of the Milford Police Department with an address of 430 Boston Post Road, Milford, CT, 06460.

33. Defendant Sergeant Lacy #310 of the Milford Police Department, *Official and individual capacities,* is an employee of the Milford Police Department with an address of 430 Boston Post Road, Milford, CT, 06460.

34. Defendant Officer V. Senatore #87 of the Milford Police Department, *Official and individual capacities,* is an employee of the Milford Police Department with an address of 430 Boston Post Road, Milford, CT, 06460.

35. Defendant Officer Schott #33 of the Milford Police Department, *Official and individual capacities,* is an employee of the Milford Police Department with an address of 430 Boston Post Road, Milford, CT, 06460.

36. Defendant Officer Vakos #139 of the Milford Police Department, *Official and individual capacities,* is an employee of the Milford Police Department with an address of 430 Boston Post Road, Milford, CT, 06460.

37. Defendant Officer M. Kreitman #21 of the Milford Police Department, *Official and individual capacities,* is an employee of the Milford Police Department with an address of 430 Boston Post Road, Milford, CT, 06460.

38. Defendant Several Jane Doe and John Doe Officers employed by the Milford Police Department, *Official and individual capacities,* are employees of the Milford Police Department with an address of 430 Boston Post Road, Milford, CT, 06460.

39. Defendant Several Jane Doe and John Doe Dispatch Workers employed by the Milford Police

Department, *Official and individual capacities,* are employees of the Milford Police Department with an address of 430 Boston Post Road, Milford, CT, 06460.

40. Defendant Ann Denny, *Official and individual capacities*, is the administrative assistant for the First Selectman's office for the Town of Orange, CT. The official address is 617 Orange Center Rd, Orange, CT, 06477.

41. Defendant Annamaria Baranowski, *Official and individual capacities*, is an employee of the State of Connecticut Judicial System Family Services Division at the New Haven Superior Court at 235 Church St, New Haven, CT, 06510.

42. Defendant Annisa Klapproth, *Official and individual capacities*, is one of the Executive Committee Members of the New Haven County Bar Association, with an official address of 900 Chapel St #10, New Haven, CT, 06510.

43. Defendant Anthony Zuppardi, *Official and individual capacities*, is a resident of the state of Connecticut and is a volunteer firefighter/EMT for the North Farms Volunteer Fire Department Inc. with an official address of 95 North Ridgeland Road, Wallingford, CT, 06492.

44. Defendant Any and all Clerks/Judicial Marshals Present at New Haven Superior Court on 4/8/22 6/1/22 6/28/22 4/5/23 5/25/23 6/15/23 8/1/23 & 10/4/23 is any and all clerks and judicial marshals that were present at the New Haven Superior Court on the dates of 4/8/22, 6/1/22, 6/28/22, 4/5/23, 5/25/23, 6/15/23, 8/1/23 and 10/4/23. The official address is 235 Church Street, New Haven, CT, 06510.

45. Defendant Ashley Gray is a resident of the state of Connecticut and is domiciled in Connecticut and resides at 13 Plank rd., Prospect, CT, 06712.

46. Defendant Assistant Chief Max Martins, *Official and individual capacities*, is the Assistant Chief for the Orange Police Department for the Town of Orange in the State of Connecticut with an

official address of 314 Lambert Rd, Orange, CT, 06477.

47. Defendant Assistant Clerk Dylan Wingard, *Official and individual capacities*, is the Assistant Clerk for the New Haven Superior Court with an official address of 235 Church Street, New Haven, CT, 06510.

48. Defendant Assistant States Attorney Laura DeLeo, *Official and individual capacities*, is a state's attorney for the Derby GA5 court in Derby, CT, with an official address of 106 Elizabeth Street, Derby, CT, 06418.

49. Defendant Clerk Linda Doe from the Derby Court, *Official and individual capacities,* is a clerk for the Derby GA5 court in Derby, CT, with an official address of 106 Elizabeth Street, Derby, CT, 06418.

50. Defendant States Attorney Margaret E. Kelley, *Official and individual capacities*, is a States Attorney for the State of Connecticut Ansonia-Milford Criminal Division and has an official address of 14 West River Street, Milford, CT, 06460.

51. Defendant Office of the States Attorney Judicial District of Ansonia-Milford is a branch of the State of Connecticut Judicial System located at 14 West River Street, Milford, CT, 06460.

52. Defendant Supervisory Assistant States Attorney Rebecca Barry, *Official and individual capacities*, is a state's attorney for the Derby GA5 court in Derby, CT, with an official address of 106 Elizabeth Street, Derby, CT, 06320.

53. Defendant Barbara Bellucci, *Official and individual capacities*, is the Family Violence Victim Advocate at the Derby Superior Court GA5 for the Umbrella Center for Domestic Violence Services—A program of BHcare, with an official address of 106 Elizabeth Street, Derby, CT, 06320.

54. Defendant Basil R.A. Mahoney, *Official and individual capacities*, is a public member of the

Judicial Review Council for the State of Connecticut, with an official address of 505 Hudson Street #5, Hartford, CT, 06106.

55. Defendant Benjamin Abrams, *Official and individual capacities*, is the Assistant Attorney General at the Office of the Attorney General for the State of Connecticut, with an official address of 165 Capitol Avenue, Hartford, CT, 06106.

56. Defendant Benjamin Gettinger, *Official and individual capacities*, is an Executive Committee Officer for the New Haven County Bar Association, with an official address of 900 Chapel St #10, New Haven, CT, 06510.

57. Defendant Betsy Keller, *Official and individual capacities,* is the founder of Connecticut Protective Moms, a 501(c) (3) non-profit organization registered in the State of Connecticut at 2389 Main Street, Suite 100, Glastonbury, CT, 06033.

58. Defendant BHcare Inc. is a non-profit 501(c)(3) tax exempt organization in the State of Connecticut that identifies as a Certified Community Behavior Health Clinic. They cite their mission as being "to improve community health and quality of life of individuals by providing mental health, addiction, and domestic violence services. The official address is listed as 127 Washington Avenue, North Haven, CT, 06473.

59. Defendant BHcare Foundation Inc. is a non-profit 501(c)(3) tax exempt organization in the State of Connecticut that identifies as a Certified Community Behavior Health Clinic. They cite their mission as being "fundraising to provide support to BHcare, Inc. which is a 501(c)(3) organization whose mission is to improve community health and quality of life of individuals by providing mental health addiction and domestic violence services." The official address is listed as 127 Washington Avenue, North Haven, CT, 06473.

60. Defendant Blake Sullivan, *Official and individual capacities*, is the Assistant Attorney General at

the Office of the Attorney General for the State of Connecticut, with an official address of 165 Capitol Avenue, Hartford, CT, 06106.

61. Defendant Brad Saxton, *Official and individual capacities*, is an Executive Committee Officer for the New Haven County Bar Association, with an official address of 900 Chapel St #10, New Haven, CT, 06510.

62. Defendant Bruce Martin is a resident of the State of Connecticut and is domiciled at 14 Woodbury Court, Wolcott, CT, 06716.

63. Defendant Bunny Village Learning Center LLC is a childcare center located at 41 Village Ln., Ste. 101-103, Bethany, CT, 06454.

64. Defendant Carla Smith Stover, Ph.D., *Official and individual capacities*, is a Professor and Licensed Clinical Psychologist employed at the Yale University Child Study Center at 230 S. Frontage Rd, New Haven, CT, 06520.

65. Defendant Carrie Brickhouse, Director of Heavenly Gift LLC, *Official and individual capacities*, is the Director working at Heavenly Gift Childcare Center LLC at 14 Park Street #106, Thomaston, CT, 06787.

66. Defendant Casey Brinkman, *Official and individual capacities*, is an executive member of Connecticut Protective Moms and is a registered respiratory therapist at Yale New Haven Hospital with a listed address of 33 Madison Street, East Hartford, CT, 06118.

67. Defendant Jill Rosenfeld, *Official and individual capacities*, is an administrative member of Connecticut Protective Moms with an official address of 2389 Main Street, Suite 100, Glastonbury, CT, 06033.

68. Defendant Cat Itaya, *Official and individual capacities*, runs the Federal Pro Se Legal Assistance Program for New Haven Legal Assistance Association Inc, with an official address of 205 Orange

Street, New Haven, CT, 06510.

69. Defendant Center for Children's Advocacy Inc. is a nonprofit law firm located in Connecticut which identifies themselves as "fight[ing] for the legal rights of Connecticut's most vulnerable children." They are a 501(c)(3) tax-exempt corporation that has a mission stated as being to "promote the legal rights and interests of poor children who are dependent for their care upon Connecticut's judicial, child welfare, health, mental health, education, and juvenile systems. They have an official address of 65 Elizabeth Street, Hartford, CT, 06105.

70. Defendant Charles & Boni-Vendola, LLC is a law firm registered in the state of Connecticut with a registered address of 31 Broadway, North Haven, CT, 06473.

71. Defendant Chris R. Nelson, *Official and individual capacities*, is an executive committee member of the New Haven County Bar Association, with an official address of 900 Chapel St #10, New Haven, CT, 06510.

72. Defendant Christina Doe, *Official and individual capacities*, is a clerk from the New Haven Superior Court Clerk's Office at 235 Church st, New Haven, CT, 06510.

73. Defendant Christopher Ganim, *Official and individual capacities*, is the brother-in-law of the plaintiff and is a resident of the Town of Orange in New Haven County in the State of Connecticut with an address of 314 Demarest Drive, Orange, CT, 06477.

74. Defendant Christopher Katagis, *Official and individual capacities*, is the son of the Defendant Diamanto Antonellis and a resident of the State of Connecticut residing at 21 Burma road, Woodbridge, CT, 06525.

75. Defendant Christopher Smith, *Official and individual capacities*, is the husband of the Defendant Elizabeth Protzman and a resident of the State of Connecticut residing at 16 Myrna Drive, Marlborough, CT, 06447.

76. Defendant City of New Haven is a City located in the State of Connecticut, with an official address of 165 Church Street, New Haven, CT, 06510.

77. Defendant City of Waterbury is a City located in the State of Connecticut, with an official address of 235 Grand Street, Waterbury, CT, 06702.

78. Defendant Supervisory Assistant State's Attorney Colleen V. Zingaro, *Official and individual capacities*, is the Supervisory Assistant State's Attorney for Violent Crimes/Special Victims Unit, with an official address of 1061 Main street, Fairfield, CT, 06604.

79. Defendant Connecticut Alliance to End Sexual Violence Inc. is a nonprofit 501(c)(3) tax exempt corporation organized in the State of Connecticut with a registered address of 96 Pitkin Street, East Hartford, CT, 06108.

80. Defendant Association of Court Security Officers-Connecticut is a nonprofit 501(c)(3) tax exempt corporation organized in the state of Connecticut with an official address of 141 Church Street, New Haven, CT, 06510.

81. Defendant Connecticut Coalition Against Domestic Violence is a nonprofit 501(c)(3) tax exempt corporation organized in the state of Connecticut with an official address of 655 Winding Brook Drive, Suite 4050, Glastonbury, CT, 06033.

82. Defendant Connecticut Department of Public Safety is a branch of the State of Connecticut, with an official address at Washington Building, Middletown, CT, 06457.

83. Defendant Officer R.M. Gusto of the Middlebury Police Department, *Official and individual capacities*, is an officer employed by the Town of Middlebury with an official address of 200 Southford Road, Middlebury, CT, 06762.

84. Defendant Access Health International Inc is a 501(c)(3) tax exempt corporation organized in the State of New York that administers the State of Connecticut Husky Health program and acts as a

branch of the State of Connecticut Department of Social Services. The official address is 1016 Fifth Avenue No 11A C, New York, NY, 10028.

85. Defendant Connecticut Husky Health is a branch of Defendant Access Health International Inc. The official address is 1016 Fifth Avenue No 11A C, New York, NY, 10028.

86. Defendant Jeffrey S. Lehman is on the board of directors for Access Health International Inc, with an official address is 1016 Fifth Avenue No 11A C, New York, NY, 10028.

87. Defendant Connecticut Judicial Branch Centralized ADA Office is a branch of the State of Connecticut Judicial System, with an official address of 90 Washington Street, Hartford, CT, 06106.

88. Defendant Connecticut Judicial Review Council is a self-governing administrative body in the State of Connecticut, with an official address of 505 Hudson St, #5, Hartford, CT, 06106.

89. Defendant Connecticut Department of Emergency Services and Public Protection is a branch of the state of Connecticut, with an official address at Washington Building, Middletown, CT, 06457.

90. Defendant Connecticut Legal Services Inc. is a non-profit 501(c)(3) tax exempt corporation that acts as a legal aid agency in the State of Connecticut, with an official address of 62 Washington Street, 4th Floor, Middletown, CT, 06457.

91. Defendant Connecticut Office of Victim Advocate is an administrative branch of the State of Connecticut with an office address of 505 Hudson Street, Hartford, CT, 06106.

92. Defendant Connecticut Office of Victim Services is an oversight agency that is an administrative office in the State of Connecticut, with an office address of 225 Spring Street, 4th Floor, Wethersfield, CT, 06109.

93. Defendant Connecticut Protective Moms Inc. is a 501(c)(3) non-profit organization located in the State of Connecticut at 2389 Main Street, Suite 100, Glastonbury, CT, 06033.

94. Defendant Connecticut State Child Support Enforcement Services is an administrative agency that is under the Connecticut Department of Social Services with an office address of P.O. Box 990036, Hartford, CT, 06199-0036.

95. Defendant Connecticut State Department of Children and Families is an administrative agency for the State of Connecticut and is a child protection agency with an office address of 506 Hudson Street, Hartford, CT, 06106.

96. Defendant Connecticut State Department of Social Services is a welfare benefit agency for the State of Connecticut, located at 3580 main street, Hartford, CT, 06120.

97. Defendant Connecticut State Division of Criminal Justice is a division of the criminal sector of the State of Connecticut Judicial Branch, located at 300 Corporate Place, Rocky Hill, Connecticut, 06067.

98. Defendant Lisa A. Knopf is an attorney licensed in the state of Connecticut with an address of 3333 Main Street, Stratford, CT, 06614.

99. Knopf Law LLC is a law firm owned by Defendant Lisa A. Knopf with an address of 3333 Main Street, Stratford, CT, 06614.

100. Defendant Lynn Pellegrino, *Official and individual capacities,* is an attorney employed at Pellegrino & Pellegrino, the founding member of Divorce Solutions of Connecticut, and a member of the Connecticut Counsel for Non-Adversarial Divorce, with an address of 59 Elm Street, Suite 215, New Haven, CT, 06510.

101. Defendant Divorce Solutions of Connecticut is an organization registered in the State of Connecticut with a listed address of P.O. Box 1073, Madison, CT, 06443.

102. Defendant The Connecticut Council for Non-adversarial Divorce is an organization registered I the State of Connecticut with a listed address of P.O. Box 1551, Naugatuck, CT, 06770.

103. Defendant Pellegrino & Pellegrino LLC is a law firm located in the State of Connecticut with a registered address of 30 Fountain Street, New Haven, CT, 06510.

104. Defendant Aisha Roche is a staff attorney at the Children's Law Center of Connecticut with an address of 30 Arbor Street, Hartford, CT, 06106.

105. Defendant Connecticut State Police Troop I Bethany is a branch of the Connecticut State Police for the State of Connecticut, located at 631 Amity Rd, Bethany, CT, 06524.

106. Defendant Connecticut Women's Education and Legal Fund is a non-profit organization located in the State of Connecticut with an address of PO Box 320460, Hartford, CT, 06132.

107. Defendant Conor Duffy, *Official and individual capacities*, is a member of the Executive Committee of the New Haven County Bar Association. The registered address is listed as 900 Chapel St #10, New Haven, CT, 06510.

108. Defendant Cris Doe, *Official and individual capacities*, is a phone operator for Safe Haven of Waterbury Inc. and covers the 24/7 hotline. The address is listed as 29 Central Ave, Waterbury, CT, 06702.

109. Defendant Magistrate Cynthia Anger, *Official and individual capacities*, is a small claims magistrate for the Ansonia-Milford JD handling small claims matters in Milford Superior Court, with an address of 14 West River street, Milford, CT, 06460.

110. Defendant Daniel Burns, *Official and individual capacities*, is a member of the New Haven Legal Assistance Association, Inc. with an official address of 205 Orange Street, New Haven, CT, 06510.

111. Defendant Lisa Zappone, *Official and individual capacities*, is former Connecticut State Marshal and an employee of the Family Relations Division for the Family branch of the New Haven Superior Court at 235 Church st, New Haven, CT, 06510.

112.     Defendant Dennis Reilly, *Official and individual capacities*, is an employee of the Family
Relations Division for the Family branch of the New Haven Superior Court at 235 Church st, New
Haven, CT, 06510.

113.     Defendant Diamanto Antonellis *Official and individual capacities* is the biological mother
of the defendants Christopher Katagis, Irene Antar, and Anastasia Ganim as well as of the plaintiff.
Her address is 21 Burma Road, Woodbridge, CT, 06525.

114.     Defendant Dispatcher Whitham #206 of OPD, *Official and individual capacities*, is a
dispatcher employed with the Town of Orange Police Department, with an official address of 314
Lambert Rd, Orange, CT, 06477.

115.     Defendant Town of Middlebury is a town in the state of Connecticut with an address of
1212 Whittemore Road, Middlebury, CT, 06702.

116.     Defendant Middlebury Police Department is a police department in the town of Middlebury
with an address of 200 Southford Road, Middlebury, CT, 06762.

117.     Defendant Donald Cretella, Esq., *Official and individual capacities,* is an attorney at
Zingaro, Cretella, and Rasile LLC and an adjunct professor at Quinnipiac University School of
Law, with an official address of 681 State Street, New Haven, CT, 06511

118.     Defendant Donna Dicosmo, *Official and individual capacities,* is a business partner and
investor in the Defendant Whole House Remodeling Company LLC and of the Defendant Matthew
J. Lodice and resides at 55 Quarry Hill road, Waterbury, CT, 06706.

119.     Defendant Dr. Anthony Campagna, *Official and individual capacities,* is a mental health
professional who regularly conducts business with the State of Connecticut Judicial Branch, with
a listed address of 1844 Whitney Ave, 2nd Floor, Hamden, CT, 06517.

120.     Defendant Dr. Eric Frazer, *Official and individual capacities,* is a mental health

professional who regularly conducts business with the State of Connecticut Judicial Branch. He is an employee of Yale School of Medicine with an address as 333 Cedar Street, New Haven, CT, 06510.

121.     Defendant Dr. Kimberly Citron, PH.D., *Official and individual capacities*, is a mental health professional who regularly conducts business with the State of Connecticut Judicial Branch. Her listed address is 396 Main Street, Cheshire, CT, 06410.

122.     Defendant Dr. Robert Horowitz, *Official and individual capacities,* is a mental health professional who regularly conducts business with the State of Connecticut Judicial Branch and a board member of the Connecticut Council for Non-adversarial Divorce located at 258 Bradley Street, New Haven, CT, 06510.

123.     Defendant Dr. Wendy Levy PsyD, is a mental health professional who regularly conducts business with the State of Connecticut Judicial Branch with an address at 1465 Post Road East, in Westport, CT, 06880.

124.     Defendant Officer E. Aviles of New Haven Police Department Badge # 263, *Official and individual capacities*, is a police officer for the New Haven Police Department and employee of the City of New Haven, Connecticut at 1 Union Avenue, New Haven, CT, 06511.

125.     Defendant Elizabeth Protzman, *Official and individual capacities*, is the Director of Communications and Nonprofit development at Onyx Elite Consulting Services, the Director of Communications at Winning Ways, Inc. of Connecticut, and a Business Consultant for Smith PR Company located at 279 North Main street, Branford, CT, 06405.

126.     Defendant Elwyn Brewster Quirk, *Official and individual capacities*, is a member of the Executive Committee of the New Haven County Bar Association, with an address of  900 Chapel St #10, New Haven, CT, 06510.

127.    Defendant Erin Krygier, *Official and individual capacities*, is the caseflow coordinator assigned to the New Haven Superior Court at 235 Church street, New Haven, CT handling family caseflow requests with an address of 235 Church street, New Haven, CT, 06510.

128.    Defendant Eugene Zingaro, Esq. is the partner of Donald Cretella, Esq. at Zingaro, Cretella, and Rasile LLC, with a registered address of 681 State Street, New Haven, CT, 06511.

129.    Defendant Gabriel Mina is a sub-contractor employed by Whole House Remodeling Company LLC working under the supervision and direction of Defendant Matthew J. Lodice, with an address at 57 Westport drive, Waterbury, CT, 06706.

130.    Defendant Daniel Mina is a resident of the state of Connecticut and owner of Defendant The Commissioners Cigar Lounge LLC with a listed address of 350 Fairfield Ave, Waterbury, CT, 06708.

131.    Defendant The Commissioners Cigar Lounge LLC is a business registered in the State of Connecticut with a listed address of 350 Fairfield Ave, Waterbury, CT, 06708.

132.    Defendant Ganim Legal LLC is a law firm located at 2370 Park Ave, Bridgeport, CT, 06604.

133.    Defendant Gerald Viglione Jr., *Official and individual capacities,* is the father of plaintiff's minor daughter J.V. and resides at 118 Irvington st, New Haven, CT, 06513.

134.    Defendant Gina Killian, *Official and individual capacities*, is a clerk at the New Haven Superior Court clerk's office located at 235 Church st, New Haven, CT, 06510.

135.    Defendant Governor Ned Lamont, *Official and individual capacities*, is the Governor of the State of Connecticut, with an address at 210 Capital Ave, Hartford, CT, 06106.

136.    Defendant Gregory Gallo, Esq., is a partner at Pellegrino & Pellegrino LLC and an attorney in the State of Connecticut. He is also the ex-brother-in-law and former landlord/business partner

of the Defendant Matthew Lodice and has contracted several jobs through defendant Whole House Remodeling LLC with an address at 475 Whitney Ave, New Haven, CT, 06511.

137.     Defendant Happy Even After Family Law LLC is a family law firm located at 2531 Whitney Ave, Hamden, CT, 06518.

138.     Defendant Susan Lettelleir, *Official and individual capacities,* is the president of the Board of Directors for Defendant Woodbridge Child Center with an address of 4 Meetinghouse Lane, Woodbridge, CT, 06525.

139.     Defendant Woodbridge Child Center Inc. is a 501c(3) tax-exempt corporation registered in the state of Connecticut with an address of 4 Meetinghouse Lane, Woodbridge, CT, 06525.

140.     Defendant Jocelyn Percell, *Official and individual capacities,* is an employee of the Defendant Woodbridge Child Center Inc. with an address of 4 Meetinghouse Lane, Woodbridge, CT, 06525.

141.     Defendant Jessica Maybeck, *Official and individual capacities,* is a former employee of Defendant Woodbridge Child enter Inc. with an address 307 Soundview Ave, Shelton, CT, 06484.

142.     Defendant Healing Springs Wellness Center LLC is a mental health treatment provider located at 1006 S. Main St, suite 4, Plantsville, CT, 06479.

143.     Defendant Heather Collins, *Official and individual capacities*, is the Court Planner II for the Centralized ADA Office for the State of Connecticut with an office at 90 Washington Street, 3rd floor, Hartford, CT, 06106.

144.     Defendant David Rohan, *Official and individual capacities,* is an inspector for the State of Connecticut State's Attorney's Office for the New Britain Judicial District and a former employee of the City of New Britain and New Britain Police Department with an address of 20 Franklin Square, New Britain, CT, 06051.

145.     Defendant Heavenly Gift Childcare Center LLC is a childcare center located at 14 Park st, #106, Thomaston, CT, 06787.

146.     Defendant Honorable Arthur Hiller, *Official and individual capacities*, is a judge employed by the State of Connecticut Judicial Branch who is in the Ansonia-Milford JD at 14 West River st, Milford, CT, 06460.

147.     Defendant Honorable Cherie Phoenix-Sharpe, *Official and individual capacities*, is a judge employed by the State of Connecticut Judicial Branch who is in the Ansonia-Milford JD, at 14 West River st, Milford, CT, 06460.

148.     Defendant Honorable Christine P. Rapillo, *Official and individual capacities*, is a judge employed by the State of Connecticut Judicial Branch who is in the New Britain JD ,at 20 Franklin Square, New Britain, CT, 06053.

149.     Defendant Honorable Christopher Griffin, *Official and individual capacities*, is a judge employed by the State of Connecticut Judicial Branch who is in the New Haven JD at 235 Church street, New Haven, CT, 06511.

150.     Defendant Honorable Dawne G. Westbrook, *Official and individual capacities*, is a judge employed by the State of Connecticut Judicial Branch and is a judge member of the Judicial Review Council for the State of Connecticut, with an official address of 505 Hudson Street #5, Hartford, CT, 06106.

151.     Defendant Honorable Edward Graziani, *Official and individual capacities*, is a judge employed by the State of Connecticut Judicial Branch at 14 West River st, Milford, CT, 06460.

152.     Defendant Honorable Erika Monique Tindill, *Official and individual capacities*, is a judge employed by the State of Connecticut Judicial Branch who is in the Ansonia-Milford JD at 14 West River st, Milford, CT, 06460.

153.     Defendant Honorable James Abrams, *Official and individual capacities*, is a judge employed by the State of Connecticut Judicial Branch and is a Judge Member of the Judicial Review Council is a for the State of Connecticut, with an official address of 505 Hudson Street #5, Hartford, CT, 06106.

154.     Defendant Honorable James Kenefick, *Official and individual capacities*, is a judge employed by the State of Connecticut Judicial Branch at 235 Church street, New Haven, CT, 06510.

155.     Defendant Honorable Jon M. Alander, *Official and individual capacities*, is a judge employed by the State of Connecticut Judicial Branch who is in the New Haven JD at 235 Church street, New Haven, CT, 06510.

156.     Defendant Honorable Kevin Randolph, *Official and individual capacities*, is a judge employed by the State of Connecticut Judicial Branch and a judge member of the Judicial Review Council for the State of Connecticut, with an official address of 505 Hudson Street #5, Hartford, CT, 06106.

157.     Defendant Stephen M. Carroll, *Official and individual capacities*, is a public member of the Judicial Review Council for the State of Connecticut, with an official address of 505 Hudson Street #5, Hartford, CT, 06106.

158.     Defendant Honorable Margarita H. Moore, *Official and individual capacities*, is a judge employed by the State of Connecticut Judicial Branch who is in the Ansonia-Milford JD at 14 West River street, Milford, CT, 06460.

159.     Defendant Honorable Mark T. Gould, *Official and individual capacities*, is a judge employed by the State of Connecticut Judicial Branch who is in the New Haven JD at 235 Church street, New Haven, CT, 06510.

160.    Defendant Honorable Matthew P. Vaccarelli, *Official and individual capacities*, is a judge employed by the State of Connecticut Judicial Branch in the probate district of Waterbury, Connecticut with an address at 65 Center street, Waterbury, CT, 06702.

161.    Defendant Honorable Maureen Price-Boreland, *Official and individual capacities*, is a judge employed by the State of Connecticut Judicial Branch who is in the Meriden JD at 54 West Main street, Meriden, CT, 06451.

162.    Defendant Honorable Michael Kamp, *Official and individual capacities*, is a judge employed by the State of Connecticut Judicial Branch who is in the New Haven JD at 235 Church street, New Haven, CT, 06510.

163.    Defendant Honorable Peter Brown, *Official and individual capacities*, is a judge employed by the State of Connecticut Judicial Branch who is in the Ansonia-Milford JD at 14 West River street, Milford, CT, 06460.

164.    Defendant Honorable Scott Jones, *Official and individual capacities*, is a judge employed by the State of Connecticut Judicial Branch who is in the Ansonia-Milford JD at 14 West River street, Milford, CT, 06460.

165.    Defendant Honorable Tammy Geathers, *Official and individual capacities*, is a judge employed by the State of Connecticut Judicial Branch at 14 West River street, Milford, CT, 06460.

166.    Defendant Howard Levine, *Official and individual capacities*, is a member of the executive committee of the New Haven County Bar Association, with an address of  900 Chapel St #10, New Haven, CT, 06510.

167.    Defendant Irene Antar, O.D. , *Official and individual capacities*, is an optometrist domiciled in the state of Connecticut living at 21 Burma rd., Woodbridge, CT, 06525.

168.    Defendant James Henke, *Official and individual capacities*, is a member of the executive

committee of the New Haven County Bar Association, with an address of 900 Chapel St #10, New Haven, CT, 06510.

169.     Defendant James Lambo, *Official and individual capacities*, is a former employee of the Connecticut Department of Correction and former customer of Defendant Whole House Remodeling Company LLC and best friend of Defendant Matthew Lodice with an address of 54 Joy Road, Middlebury, CT, 06762.

170.     Defendant First Selectman of the Town of Orange James Zeoli, *Official and individual capacities*, is the First Selectman for the Town of Orange, with an address of 617 Orange Center Rd, Orange, CT, 06477.

171.     Defendant Jamie Hobart Lambo, *Official and individual capacities*, is a state marshal for the State of Connecticut, a former Waterbury Police Department officer, former Connecticut Joint Public Safety and Security Committee Clerk, former Committee Clerk for the State of Connecticut Senate Democrats, and is the husband of the best friend of Defendant Matthew J. Lodice, with an address of 46 Pine street, Watertown, CT, 06795.

172.     Defendant Jane Adamik, *Official and individual capacities*, is a Child Advocate at the Umbrella Center for Domestic Violence Services of BHcare with an address of 435 East Main Street, Ansonia, CT, 06401.

173.     Defendant Kelly Pinto, *Official and individual capacities,* is the Chief Clerk,  for the Superior Court Juvenile Matters with an address of 7 Kendrick Ave, Waterbury, CT, 06702.

174.     Defendant Officer Mortalli of the Hamden Police Department, *Official and individual capacities,* is an employee of the Hamden Police Department with an official address of 2900 Dixwell Avenue, Hamden, CT, 06518.

175.     Defendant Several Other Jane Doe and John Doe Officers from the Hamden Police

Department, *Official and individual capacities,* are employees of the Hamden Police Department with an official address of 2900 Dixwell Avenue, Hamden, CT, 06518.

176.　　Defendant Janet Ortiz, *Official and individual capacities*, is the office manager for the Center for Children's Advocacy, with an address of 211 State Street, Bridgeport, CT, 06605.

177.　　Defendant Magistrate Judge Jennifer Aguilar, *Official and individual capacities*, is a magistrate judge working for the State of Connecticut Judicial System with an address of 235 Church street, New Haven, CT, 06510.

178.　　Defendant Jennifer Gallo Lodice is the sister-in-law of Defendant Matthew J. Lodice and the sister of Defendant Greg Gallo and has a listed address of 60 Inwood Lane, Bristol, CT, 06010.

179.　　Defendant Jessica Mayo, Ph.D, *Official and individual capacities*, is the Assistant Professor of Clinical Child Psychology and Licensed Psychologist at the Yale Child Study Center with an address of 350 George Street, New Haven, CT, 06510.

180.　　Defendant Jessica Strusky*, Official and individual capacities*, is the daughter of Defendants Karen Bowers and Roy Bowers and a resident of Connecticut residing at 100 Salem Rd, Prospect, CT. She is also an optometric assistant at Dr. Deluca Dr. Marciano and Associates in Prospect, Connecticut. Her address is 100 Salem Rd, Prospect, CT, 06712.

181.　　Defendant Jia Luo, *Official and individual capacities*, is a public member of the Judicial Review Council for the State of Connecticut, with an official address of 505 Hudson Street, #5, Hartford, CT, 06106.

182.　　Defendant Joaquina Borges King, Esq., *Official and individual capacities*, is an attorney licensed to practice law in the State of Connecticut and an attorney member of the Judicial Review Council, with an official address of 505 Hudson Street, #5, Hartford, CT, 06106.

183.　　Defendant John Parese, *Official and individual capacities*, is a member of the executive

committee of the New Haven County Bar Association.

184.     Defendant Joseph DeCicco, Esq., *Official and individual capacities*, is an attorney licensed to practice law in the state of Connecticut and was appointed as the court-appointed counsel for plaintiff's minor child A.L. for a termination of parental rights proceeding against the Defendant Matthew J. Lodice.

185.     Defendant Joseph M. Porto, *Official and individual capacities*, is a member of the executive committee of the New Haven County Bar Association.

186.     Defendant Joseph Merschman, *Official and individual capacities*, is a member of the executive committee of the New Haven County Bar Association.

187.     Defendant Josh Lambo, *Official and individual capacities*, is the Godfather of the minor child A.L. and the best friend of the Defendant Matthew J. Lodice and the husband of Defendant Jamie Hobart Lambo and the brother of Defendant James Lambo. He is also an employee of the State of Connecticut Department of Corrections employed as a Correctional Officer.

188.     Defendant Judicial Marshal Andrews, New Haven Superior Court, *Official and individual capacities*, is a judicial marshal employed by the State of Connecticut working at 235 Church street, New Haven, CT.

189.     Defendant Judicial Marshal Hayden, Badge #567 of the New Haven Superior Court, *Official and individual capacities*, is a judicial marshal employed by the State of Connecticut working at 235 Church street, New Haven, CT.

190.     Defendant Judicial Marshal Runlett, New Haven Superior Court, *Official and individual capacities*, is a judicial marshal employed by the State of Connecticut working at 235 Church street, New Haven, CT.

191.     Defendant Justin Attai, *Official and individual capacities*, is a legal assistant and employee

of Ganim Legal, LLC.

192.     Defendant Karen Bowers, *Official and individual capacities*, is the biological mother of the Defendant Matthew J. Lodice and resides at 48 Quarry Hill rd., Waterbury, CT, 06706.

193.     Defendant Katherine Verano, *Official and individual capacities*, is the CEO of Safe Futures, Inc. and is also a public member of the State of Connecticut Judicial Review Council, at 505 Hudson street, #5, Hartford, CT, 06106.

194.     Defendant Safe Futures Inc. is a non-profit organization registered in the State of Connecticut at 16 Jay Street, New London, CT, that receives contracts from the State of Connecticut Department of Social Services. Located at16 Jay Street, New London, CT, 06320.

195.     Defendant Kevin Dunn, Esq. , *Official and individual capacities*, is the Executive Director of the Judicial Review Council for the State of Connecticut, at 505 Hudson street, #5, Hartford, CT, 06106.

196.     Defendant Klingberg Family Center, Inc. is located at 370 Linwood street, #1949, New Britain, CT, 06052.

197.     Defendant John Carangelo, *Official and individual capacities*, is an employee of the Town of Orange and a selectmen for the First Selectman office with an address of 617 Orange Center Rd, Orange, CT, 06477.

198.     Defendant PJ Shanley, *Official and individual capacities*, is an employee of the Town of Orange and a selectmen for the First Selectman office with an address of 617 Orange Center Rd, Orange, CT, 06477.

199.     Defendant Mitchell R. Goldblatt, *Official and individual capacities*, is an employee of the Town of Orange and a selectmen for the First Selectman office with an address of 617 Orange Center Rd, Orange, CT, 06477.

200.     Defendant Ralph Okenquist, *Official and individual capacities*, is an employee of the Town of Orange and a selectmen for the First Selectman office with an address of 617 Orange Center Rd, Orange, CT, 06477.

201.     Defendant Judy W. Williams, *Official and individual capacities*, is an employee of the Town of Orange and a selectmen for the First Selectman office with an address of 617 Orange Center Rd, Orange, CT, 06477.

202.     Defendant Town of Orange Connecticut Board of Selectmen is a municipal department of the Town of Orange with an address of 617 Orange Center Rd, Orange, CT, 06477.

203.     Defendant Town of Orange Board of Police Commissioners is a municipal department of the Town of Orange with an address of 617 Orange Center Rd, Orange, CT, 06477.

204.     Defendant Town of Orange Board of Police Commissioner Chairman Jack Barton, *Official and individual capacities,* is the chairman of the Defendant Town of Orange Board of Police Commissioners with an address of 617 Orange Center Rd, Orange, CT, 06477.

205.     Defendant Marian Hurley, *Official and individual capacities,* is a member of the Town of Orange Board of Police Commissioner with an address of 617 Orange Center Rd, Orange, CT, 06477.

206.     Defendant Clerk Magdala Doe of the Milford Superior Court, *Official and individual capacities,* is a clerk working at the Milford Superior Court with an official address of 14 West River Street, Milford, CT, 06460.

207.     Defendant Roy Cuzzocreo, *Official and individual capacities,* is a member of the Town of Orange Board of Police Commissioner with an address of 617 Orange Center Rd, Orange, CT, 06477.

208.     Defendant Nyjahwahn Walker, *Official and individual capacities,* is a member of the Town

of Orange Board of Police Commissioner with an address of 617 Orange Center Rd, Orange, CT, 06477.

209.     Defendant Christopher Carveth, *Official and individual capacities,* is a member of the Town of Orange Board of Police Commissioner with an address of 617 Orange Center Rd, Orange, CT, 06477.

210.     Defendant Kristianna Tyler, *Official and individual capacities*, is former clerk for the New Haven Superior Court and an executive member of the New Haven County Bar Association with an address of  900 Chapel St #10, New Haven, CT, 06510.

211.     Defendant Kristin Wolf*, Official and individual capacities*, is a member of the executive committee of the New Haven County Bar Association with an address of  900 Chapel St #10, New Haven, CT, 06510.

212.     Defendant Richard Blumenthal, *Official and individual capacities,* is a United States Senator for the State of Connecticut with an address of 90 State House Square, 10th Floor, Hartford, CT, 06103.

213.     Defendant Lancia Blatchley, *Official and individual capacities*, is a mental health treatment provider employed at Healing Springs Wellness LLC and a resident of the state of Connecticut. She is also the Domestic Violence Program Coordinator for LifeBridge Community Services, with an adderss of 1006 South Main st, Suite 4, Plantsville, CT, 06479.

214.     Defendant Larae Plummer, *Official and individual capacities*, is a social worker working for the Department of Children and Families Milford Office, at 38 Wellington rd, Milford, CT, 06460.

215.     Defendant Leonard Rodriguez, *Official and individual capacities*, is an executive committee member for the New Haven County Bar Association, with an address of  900 Chapel

St #10, New Haven, CT, 06510.

216.       Defendant Lieutenant Anderson of the Orange Police Department, *Official and individual capacities*, is a lieutenant employed at the Orange Police Department located at 314 Lambert road, Orange, CT, 06477.

217.       Defendant Lieutenant Benjamin Borelli of the Connecticut State Police Troop I in Bethany, *Official and individual capacities*, is a lieutenant employed with the Connecticut State Police Troop I of Bethany, CT, 06524.

218.       Defendant Lieutenant DeRubeis of the Orange Police Department, *Official and individual capacities*, is a lieutenant employed with the Orange Police Department., with an official address of 314 Lambert Rd, Orange, CT, 06477.

219.       Defendant Lieutenant John Prisavage of the New Britain Police Department, *Official and individual capacities*, is a lieutenant employed with the New Britain Police Department. Located at 10 Chestnut Street, New Britain, CT, 06051.

220.       Defendant Lieutenant Judicial Marshal Dadio, Badge #113 of the New Haven Superior Court, *Official and individual capacities*, is a judicial marshal employed with the New Haven Superior Court at 235 Church st, New Haven, CT, 06510.

221.       Defendant Lisa B. Giliberto, Esq., *Official and individual capacities*, is the former counsel of the Defendant Elizabeth Protzman, an employee of The Victim Rights Center of Connecticut Team, and the Children's Law Center of Connecticut with an address of 8 Research Parkway, Wallingford, CT, 06492.

222.       Defendant Detective Lisa R. Steeves of the New Britain Police Department, *Official and individual capacities*, located at 10 Chestnut Street, New Britain, CT, 06051.

223.       Defendant Lizzy Cretella, *Official and individual capacities*, is a resident of and is

domiciled in the State of Connecticut and is legal assistant and an employee of Zingaro, Cretella, and Rasile LLC with an official address of 681 State St, New Haven, CT, 06510.

224.     Defendant Mayor Joe Ganim, *Official and individual capacities*, is the Mayor of the City of Bridgeport with an address of 999 Broad Street, Bridgeport, CT, 06604.

225.     Defendant Lori Doe, Clerk from New Haven Superior Court, *Official and individual capacities*, is a clerk employed in the New Haven Superior Court with an official address at 235 Church st, New Haven, CT, 06510

226.     Defendant Lori Semrau, Esq., *Official and individual capacities*, is an employee of the State of Connecticut working at the Court Service Center for the Milford Superior Court located at 14 West River st, Milford, CT, 06460.

227.     Defendant Louis A. Annecchino, *Official and individual capacities*, is a member of the Executive Committee of the New Haven County Bar Association with an address of 900 Chapel St #10, New Haven, CT 06510.

228.     Defendant Judicial Marshal Santana for the Milford Superior Court, *Official and individual capacities,* is a judicial marshal employed by the State of Connecticut with an address of 14 West River Street, Milford, CT, 06460.

229.     Defendant Luz Santana, *Official and individual capacities*, is the supervisor for the office of the Family Violence Victim Advocate at the Derby Superior Court GA5 for the Umbrella Center for Domestic Violence Services—A program of BHcare, with an official address of 106 Elizabeth Street, Derby, CT, 06320.

230.     Defendant Lynda Sorensen, *Official and individual capacities*, is a public member of the Judicial Review Council for the State of Connecticut, with an official address of 505 Hudson Street #5, Hartford, CT, 06106.

231.     Defendant Makana Ellis, *Official and individual capacities*, is a member of the Executive Committee of the New Haven County Bar Association with an address of 900 Chapel St #10, New Haven, CT 06510.

232.     Defendant Maressa Latoracca, *Official and individual capacities*, is an employee of the New Haven Superior Court Family Services CSSD division and is the supervisor of Defendant Annamaria Baranowski and has an official address of 235 Church Street, New Haven, CT, 06510.

233.     Defendant Margaret Penny Mason, *Official and individual capacities*, is a member of the Executive Committee of the New Haven County Bar Association with an address of 900 Chapel St #10, New Haven, CT 06510.

234.     Defendant Margot Kenefick Burkle, Esq., *Official and individual capacities*, is a visiting clinical lecturer in law at Yale Law School, the daughter of Defendant Honorable Judge James Kenefick, an attorney at New Haven Legal Assistance Association, with an address of 205 Orange Street, New Haven, CT, 06510.

235.     Defendant Mark D. Phillips, Esq., *Official and individual capacities*, is an attorney member of the Judicial Review Council for the State of Connecticut, with an official address of 505 Hudson Street #5, Hartford, CT, 06106.

236.     Defendant Mark Wachter is a resident of the state of Connecticut and has an address of 156 Briarcliff Rd, Hamden, CT, 06518.

237.     Defendant Martha Weiler, Esq, *Official and individual capacities*, is an attorney employed at Welty Esposito & Weiler LLC, with an official address of 385 Orange Street, New Haven, CT, 06511.

238.     Defendant Mary Kozicki, *Official and individual capacities*, is the administrative director for the State of Connecticut Office of Victim Services with an official address of 225 Spring Street,

4th Floor, Wethersfield, CT, 06109.

239. Defendant Mary-Ann Charles, Esq., *Official and individual capacities*, is an attorney licensed in the State of Connecticut and a partner at Charles & Boni-Vendola, LLC with an official address of 14 Ronald Lane, Cos Cob, CT, 06807.

240. Defendant Matthew J. Lodice, *Official and individual capacities*, is the biological father of the plaintiff's minor child A.L. and has a registered address of 48 Quarry Hill road, Waterbury, CT, 06706.

241. Defendant Dorothy Daniel Roddy, *Official and individual capacities,* is the treasurer for Saint Barbara Greek Orthodox Church with an address of 480 Racebrook Road, Orange, CT, 06477.

242. Defendant Matthew J. Lodice, on behalf of his minor child D.L., *Official and individual capacities*, has a registered address of 48 Quarry Hill road, Waterbury, CT, 06706.

243. Defendant Matthew J. Lodice, on behalf of his minor child S.L., *Official and individual capacities*, has a registered address of 48 Quarry Hill road, Waterbury, CT, 06706.

244. Defendant Maura Mastrony, *Official and individual capacities*, is a member of the Executive Committee of the New Haven County Bar Association with an address of 900 Chapel St #10, New Haven, CT 06510.

245. Defendant Megan C. McGrath, *Official and individual capacities*, is an attorney in the state of Connecticut that is employed at Happy Even After Family Law LLC with an official address of 2531 Whitney Ave, Hamden, CT, 06518.

246. Defendant Melissa Swan*, Official and individual capacities*, is the director and owner of Defendant Bunny Village Learning Center, LLC, with an official address of 41 Village Lane, #101-103, Bethany, CT, 06524.

247.     Defendant Meredith McGloin, *Official and individual capacities*, is an investigative social work supervisor at the Connecticut Department of Children and Families with an official address of 505 Hudson Street, Hartford, CT, 06106.

248.     Defendant Merit Lajoie, *Official and individual capacities*, has been an employee of the State of Connecticut Office of the Victim Advocate for 23 years and is the current Complaint Officer for the OVA with an address of 505 Hudson Street, #5, Hartford, CT, 06106.

249.     Defendant Michael Hillis, Esq, *Official and individual capacities*, is an attorney employed at Dombroski Hillis LLC with an address of 129 Whitney Avenue, New Haven, CT, 06510.

250.     Defendant Michelle M. Murphy *Official and individual capacities* is a public member of the Judicial Review Council for the State of Connecticut, with an official address of 505 Hudson Street #5, Hartford, CT, 06106.

251.     Defendant Milford Superior Court Clerk Laura, *Official and individual capacities*, is a clerk employed at the Milford Superior Court at 14 West River st, Milford, CT, 06460.

252.     Defendant Monica Cloud Rogers, *Official and individual capacities*, is the legal services advocate counselor for The Umbrella Center for Domestic Violence Services of BH*care* with an address of 435 East Main Street, Ansonia, CT, 06401.

253.     Defendant Monica Perez, *Official and individual capacities*, is a registered nurse for the State of Connecticut, former employee of Hartford Hospital, former wife of Defendant Matthew J. Lodice and mother of Defendant D.L., current travel nurse for The Nurse Network, and current nursing supervisor for iCare Health Network with an address of 15 Panthorn Trail, Southington, CT, 06489.

254.     Defendant Town of Southington is a town in the State of Connecticut with an official address of 75 Main Street, Southington, CT, 06489.

255.     Defendant Rosa Chiropractic and Wellness is a business registered in the State of Connecticut with an address of 1177 Wolcott Street, Waterbury, CT, 06705.

256.     Defendant Rosa Chiropractic Center LLC is a business registered in the State of Connecticut with an address of 1177 Wolcott Street, Waterbury, CT, 06705.

257.     Defendant Southington High School is a school in the town of Southington located in the State of Connecticut with an official address of 720 Pleasant Street, Southington, CT, 06489.

258.     Defendant Anthony Ingala, *Official and individual capacities,* is an ICU Nurse employed by Defendant Saint Mary's Hospital with an address of 56 Franklin Street, Waterbury, CT, 06706.

259.     Defendant Nancy Doe, Clerk from New Haven Superior Court, *Official and individual capacities,* is a family clerk for New Haven Superior Court with an address of 235 Church Street, New Haven, CT, 06510.

260.     Defendant Greek Orthodox Archdiocese of America is an organization with an address of 8 East 79th Street, New York, NY, 10075.

261.     Defendant Saint Barbara Greek Orthodox Church is a religious organization with an address of 480 Racebrook Road, Orange, CT, 06477.

262.     Defendant Father Peter J. Orfanakos, *Official and individual capacities,* is the parish priest for Saint Barbara Greek Orthodox Church with an address of 480 Racebrook Road, Orange, CT, 06477.

263.     Defendant Nancy Sasser, *Official and individual capacities*, is a family clerk for New Haven Superior Court with an address of 235 Church Street, New Haven, CT, 06510.

264.     Defendant Nancy Valentino, *Official and individual capacities*, is a member of the Executive Committee of the New Haven County Bar Association with an address of 900 Chapel St #10, New Haven, CT 06510.

265.      Defendant Natalie Caban, *Official and individual capacities*, is a social worker employed with the Department of Children and Families Central Office for New Britain CT with an address of One Grove Street, 4th Floor, New Britain, CT, 06053.

266.      Defendant New Britain Police Department is a police department in the City of New Britain located at 10 Chestnut Street, New Britain, CT, 06051.

267.      Defendant Officer Strzalka #341 of the New Britain Police Department, *Official and individual capacities*, is an employee of the City of New Britain and has an address located at located at 10 Chestnut Street, New Britain, CT, 06051.

268.      Defendant New Haven Child Support Enforcement Services is a branch of Connecticut Child Support Enforcement and has an address of 414 Chapel Street, New Haven, CT, 06511.

269.      Defendant New Haven County Bar Association is a Bar Association is a Bar Association located in the State of Connecticut with an address of 900 Chapel St #10, New Haven, CT 06510.

270.      Defendant John Lambo, *Official and individual capacities,* is a resident of the State of Connecticut and has an address of 32 Grandview Ave, Watertown, CT, 06795.

271.      Defendant New Haven Legal Assistance Association Inc. is a non-profit legal aid organization with an address of 205 Orange Street, New Haven, CT, 06510.

272.      Defendant New Haven Police Department is a police department in the city of New Haven located at 1 Union Ave, New Haven, CT, 06511.

273.      Defendant Nicole Tung, *Official and individual capacities*, is a member of the Executive Committee of the New Haven County Bar Association with an address of 900 Chapel St #10, New Haven, CT 06510.

274.      Defendant Numerous Jane Doe and John Doe Dispatch and police officers from Connecticut State Police Troop I in Bethany, CT, *Official and individual capacities,* are police

officers and dispatch officers employed by the State of Connecticut and have an address located at 631 Amity Rd, Bethany, CT, 06524.

275.     Defendant Numerous Jane Doe and John Doe Dispatch and police officers from The New Britain Police Department, *Official and individual capacities,* are police officers and dispatch officers employed by the City of New Britain located at 10 Chestnut street, New Britain, CT, 06051.

276.     Defendant Kim Coleman is an attorney licensed in the state of Connecticut, alumnus of Quinnipiac University School of law, and owner of Coleman is a member of the Connecticut Criminal Defense Lawyers Association and owner of Coleman Law LLC with an address of P.O. Box 17645, West Haven, CT, 06516.

277.     Defendant Connecticut Criminal Defense Lawyers Association is an organization registered in the State of Connecticut with a registered address of P.O. Box 1776 Waterbury, CT, 06721.

278.     Defendant Coleman Law LLC is a law firm owned by Defendant Kim Coleman with an address of 112 Broad Street, Milford, CT, 06460.

279.     Defendant Numerous Jane Doe and John Doe Dispatch and police officers from The Orange Department, *Official and individual capacities*, are police officers and dispatch officers employed by the Town of Orange with an official address of 314 Lambert Rd, Orange, CT, 06477.

280.     Defendant Office of Victim Compensation is administrative office in the State of Connecticut and has an address of 225 Spring Street, 4th floor, Wethersfield, CT, 06109.

281.     Defendant Office of Victim Services Training is a sub-unit of the State of Connecticut Office of Victim Compensation and has an address of 225 Spring Street, 4th floor, Wethersfield, CT, 06109.

282.     Defendant Officer Aliza Esposito of the Orange Police Department, *Official and individual capacities,* is an officer employed by the Town of Orange with an official address of 314 Lambert Rd, Orange, CT, 06477.

283.     Defendant Officer Andrew Satkowski of the Orange Police Department, *Official and individual capacities,* is an officer employed by the Town of Orange with an official address of 314 Lambert Rd, Orange, CT, 06477.

284.     Defendant Officer Artabane of the Orange Police Department, *Official and individual capacities,* is an officer employed by the Town of Orange with an official address of 314 Lambert Rd, Orange, CT, 06477.

285.     Defendant Officer Bailey of the Orange Police Department, *Official and individual capacities,* is an officer employed by the Town of Orange with an official address of 314 Lambert Rd, Orange, CT, 06477.

286.     Defendant Officer Jeffrey Fernandes of the Orange Police Department, *Official and individual capacities,* is an officer employed by the Town of Orange with an official address of 314 Lambert Rd, Orange, CT, 06477.

287.     Defendant Officer John Lane of the Orange Police Department, *Official and individual capacities,* is an officer employed by the Town of Orange with an official address of 314 Lambert Rd, Orange, CT, 06477.

288.     Defendant Officer Justiano Nieves of the New Haven Police Department Badge # 22, *Official and individual capacities*, is an officer employed by the City of New Haven and has an address located at 1 Union Ave, New Haven CT, 06510.

289.     Defendant Officer Kurt Correia #132 of the Orange Police Department, *Official and individual capacities,* is an officer employed by the Town of Orange with an official address of

314 Lambert Rd, Orange, CT, 06477.

290.     Defendant Officer Padro of the Waterbury Police Department, *Official and individual capacities*, is an officer employed by the City of Waterbury with an address located at 255 East Main Street, Waterbury, CT, 06706.

291.     Defendant Officer Piscitelli of the Orange Police Department, *Official and individual capacities,* is an officer employed by the Town of Orange with an official address of 314 Lambert Rd, Orange, CT, 06477.

292.     Defendant Officer Repice of the Orange Police Department, *Official and individual capacities,* is an officer employed by the Town of Orange with an official address of 314 Lambert Rd, Orange, CT, 06477.

293.     Defendant Officer Ristiano of the Orange Police Department, *Official and individual capacities,* is an officer employed by the Town of Orange with an official address of 314 Lambert Rd, Orange, CT, 06477.

294.     Defendant Officer J. Seeger of the Waterbury Police Department, *Official and individual capacities*, is an officer employed by the City of Waterbury with an address located at 255 East Main Street, Waterbury, CT, 06706.

295.     Defendant Officer Taylor of the Orange Police Department, *Official and individual capacities,* is an officer employed by the Town of Orange with an official address of 314 Lambert Rd, Orange, CT, 06477.

296.     Defendant Officer Yelenik of the Orange Police Department, *Official and individual capacities,* is an officer employed by the Town of Orange with an official address of 314 Lambert Rd, Orange, CT, 06477.

297.     Defendant Dean Paul Chill, *Official and individual capacities,* is the Associate Dean for

Academic Affairs & Clinical Professor of Law for the University of Connecticut School of law with an address located at 55 Elizabeth Street, Hartford, CT, 06105.

298.    Defendant Bruce Freedman, Ph.D., *Official and individual capacities,* is a licensed psychologist with an office address of 6 Northwest Drive, Suite 306, Bloomfield, CT, 06002.

299.    Defendant Paul Ganim, *Official and individual capacities,* is an attorney who is domiciled in the State of Connecticut and employee of Ganim Legal LLC, and has an address of 2370 Park Ave, Bridgeport, CT, 06604.

300.    Defendant Paul Lodice Jr., *Official and individual capacities,* is the biological son of Defendants Paul Lodice Sr. and Karen Bowers and the brother-in-law of Defendant Greg Gallo and the ex-husband of the Defendant Jennifer Gallo Lodice. He is also the brother of Defendants Matthew J. Lodice and Scott Lodice. His address is Unit 52 10 Ebert Drive, Bristol, CT, 06010.

301.    Defendant Paul Lodice Sr., *Official and individual capacities,* is the father of defendant Lodice and former firefighter for the Monroe Fire Department with an address of 9 Lazy Brook road, Shelton, CT, 06484.

302.    Defendant Preferred Pediatrics LLC is a pediatrician office located at 88 Noble Ave, #101, Milford, CT, 06460.

303.    Defendant Valentina Restrepo, *Official and individual capacities*, is an employee of Preferred Pediatrics LLC, located at 88 Noble Ave, #101, Milford, CT, 06460.

304.    Defendant Kelly Daly R.N., *Official and individual capacities*, is an employee of Preferred Pediatrics LLC, located at 88 Noble Ave, #101, Milford, CT, 06460.

305.    Defendant Diana Lopusny MD, *Official and individual capacities*, is an employee of Preferred Pediatrics LLC, located at 88 Noble Ave, #101, Milford, CT, 06460.

306.    Defendant Jane Doe employees of Preferred Pediatrics LLC, *Official and individual*

*capacities,* are employees of Defendant Preferred Pediatrics LLC, located at 88 Noble Ave, #101, Milford, CT, 06460.

307.     Defendant Allison Pearson FNP, *Official and individual capacities*, is an employee of Preferred Pediatrics LLC, located at 88 Noble Ave, #101, Milford, CT, 06460.

308.     Defendant Quinnipiac University is a private undergraduate university in the state of Connecticut located at 275 Mount Carmel Ave, Hamden, CT, 06518.

309.     Defendant Quinnipiac University School of Law is a private law school in the state of Connecticut located at 370 Bassett Rd, North. Haven, CT, 06473.

310.     Defendant Rachel Reeves, *Official and individual capacities,* is the Director of Field Placement and Pro Bono Programs and Assistant Clinical Professor of Law at the University of Connecticut School of Law with a listed address of 55 Elizabeth street, Hartford, CT, 06105.

311.     Defendant Randi Calabrese, Esq., *Official and individual capacities,* is a member attorney at the Connecticut Bar Association with a listed address of 126 Bradley Rd, Ste. 1, Madison, CT, 06443.

312.     Defendant Raneil Smith, Esq., *Official and individual capacities,* is an employee at Miller, Rosnick, D'Amico, August, & Butler PC with an address of 1087 Broad Street, Bridgeport, CT, 06604.

313.     Defendant Catherine Whelan is an attorney licensed in the State of Connecticut and owner of Catherin Whelan Law LLC with an address of 530 Old Post Road, #3, Greenwich, CT, 06830.

314.     Defendant Catherin Whelan Law LLC is a law firm owned by Defendant Catherine Whelan with an address of 530 Old Post Road, #3, Greenwich, CT, 06830.

315.     Defendant Rape Crisis Center of Milford Inc. is an organization located at 70 West River street, Milford, CT, 06460.

316.     Defendant Renee Casey MD, *Official and individual capacities,* is a pediatrician located at 88 Noble Ave, #101, Milford, CT, 06460.

317.     Defendant Renew Your Mind LLC is a mental health service provider with an address at 21W W. Main Street, 4th Floor, Waterbury, CT, 06702.

318.     Defendant Isamel Bodden, Administrative Associate II, of the Waterbury Police Department, *Official and individual capacities,* is an employee of the City of Waterbury and has an address located at 255 East Main street, Waterbury, CT, 06706.

319.     Defendant Connecticut State House Representative Mary Welander, *Official and individual capacities,* is the State Representative for the Town of Orange and has an office address located at Legislative Office Building Room 4000, Hartford, CT, 06106-1591.

320.     Defendant Chief of Police of the Orange Police Department Robert J. Gagne, *Official and individual capacities,* is the chief of police for the Town of Orange with an official address of 314 Lambert Rd, Orange, CT, 06477.

321.     Defendant Robert McConnell, *Official and individual capacities,* is a social worker for the Waterbury Department of Children and Families with an address of 395 West Main Street, Waterbury, CT, 06702.

322.     Defendant Roy Bowers, *Official and individual capacities,* is the husband of Defendant Karen Bowers and the step-father of Defendant Matthew Lodice and has an address located at 48 Quarry Hill Rd, Waterbury, CT, 06706.

323.     Defendant Safe Haven of Greater Waterbury Inc. is a non-profit organization in Connecticut with an address is listed as 29 Central Ave, Waterbury, CT, 06702.

324.     Defendant Sandra Lugo Gines, *Official and individual capacities,* is the Chair of the Americans with Disabilities Committee of the Connecticut Judicial Branch with an address of 90

Washington Street, Hartford, CT, 06106.

325.     Defendant Sarah Hanna, *Official and individual capacities,* is an appellate clerk working at the Connecticut Appellate Court Clerk's Office with an address of 231 Capitol Avenue, Hartford, CT, 06106.

326.     Defendant Scott Lodice, *Official and individual capacities,* is a resident of Connecticut located at 59 Cliff street, 2nd floor, Shelton, CT, 06484.

327.     Defendant Scott Lodice, on behalf of his minor child T.L., *Official and individual capacities,* located at 59 Cliff street, 2nd floor, Shelton, CT, 06484.

328.     Defendant Sean McElligott, *Official and individual capacities,* is an executive member of the New Haven County Bar Association with an address of  900 Chapel St #10, New Haven, CT, 06510.

329.     Defendant Connecticut State Senator James Maroney, *Official and individual capacities,* located at 22 Saranac Road, Milford, CT, 06460.

330.     Defendant Sergeant Bartley of the Orange Police Department, *Official and individual capacities,* is an employee of the Town of Orange with an official address of 314 Lambert Rd, Orange, CT, 06477.

331.     Defendant Sergeant Jared Barselau of the New Britain Police Department, *Official and individual capacities,* is an employee of the City of New Britain with an address located at 10 Chestnut street, New Britain, CT, 06051.

332.     Defendant Sergeant Joel Portorreal of the Connecticut State Police Troop I in Bethany, CT, *Official and individual capacities,* is an employee of the Connecticut State Police Troop I in Bethany with an address of 631 Amity road, Bethany, CT, 06524.

333.     Defendant Sergeant Judicial Marshal Powers, Badge #157 of the New Haven Superior

Court, *Official and individual capacities,* is a judicial marshal for the New Haven Superior Court and employee of the State of Connecticut with an address of 235 Church street, New Haven, CT, 06510.

334.     Defendant First Selectman James Zeoli for the Town of Orange, *Official and individual capacities,* is the first selectman for the Town of Orange with an official address of 617 Orange Center road, Orange, CT, 06477.

335.     Defendant Sergeant Judicial Marshal  Schweitzer, Badge #129 of the New Haven Superior Court, *Official and individual capacities, ,* is a judicial marshal for the New Haven Superior Court and employee of the State of Connecticut with an address of 235 Church street, New Haven, CT, 06510.

336.     Defendant Sergeant Kirby of the Orange Police Department, *Official and individual capacities,* is a sergeant employed with the Orange Police Department, with an official address of 314 Lambert Rd, Orange, CT, 06477.

337.     Defendant Several Jane Doe and John Doe Connecticut Judicial Marshals from Milford Superior Court, *Official and individual capacities,* are judicial marshals employed with the State of Connecticut and work at 14 West River st, Milford, CT, 06460.

338.     Defendant Several Jane Doe and John Doe Connecticut Judicial Marshals from Derby Superior Court, *Official and individual capacities,* are judicial marshals employed with the State of Connecticut and work at the Derby GA 5 Court, with an official address of 106 Elizabeth Street, Derby, CT, 06418.

339.     Defendant Several Jane Doe and John Doe Connecticut Court Marshals from New Haven Superior Court, *Official and individual capacities*, are employed with the State of Connecticut and work at 235 Church st, New Haven, CT, 06510.

340.     Defendant Several Jane Doe and John Doe Derby Superior Court Clerks  from the Derby

GA5 Clerks Office, *Official and individual capacities,*  are employed with the State of Connecticut

and work at the Derby GA 5 Court, with an official address of 106 Elizabeth Street, Derby, CT,

06418.

341.     Defendant Several Jane Doe and John Doe Milford Connecticut Superior Court Clerk's

Office Clerks, *Official and individual capacities,* are clerks employed by the Milford Superior

Court with an address located at 14 West River st, Milford, CT, 06460.

342.     Defendant Several Jane Doe and John Doe New Haven Superior Court Clerk's Office

Clerks, *Official and individual capacities,* are clerks employed by the New Haven Superior Court

with an address located at 235 Church street, New Haven, CT, 06510.

343.     Defendant Shakeria Brown, *Official and individual capacities,* is the owner of Renew Your

Mind LLC with an address at 21W W. Main Street, 4th Floor, Waterbury, CT, 06702.

344.     Defendant Connecticut Legal Rights Project, Inc. is a 501(c)(3) non-profit tax-exempt

corporation with a registered address of PO Box 351, Silver Street, Middletown, CT, 06457.

345.     Defendant Shari-Lynne Cuomo Shore, *Official and individual capacities,* is a member of

the executive committee for the Connecticut Bar Association, and an executive member of the

New Haven County Bar Association with an address of  900 Chapel St #10, New Haven, CT,

06510.

346.     Defendant Shawniel Chamanlal, *Official and individual capacities,* is the owner of Healing

Springs Wellness Center LLC, located at 1006 S. Main St, suite 4, Plantsville, CT, 06479.

347.     Defendant Jay Grossman is a member of the board of directors for Nexstar Media Group,

Inc. and has an official address of 545 East John Carpenter Freeway, Suite 700, Irving, TX, 75062.

348.     Defendant Nexstar Media Group, Inc. is a media company that owns several news stations

in the state of Connecticut, and has an address of 545 East John Carpenter Freeway, Suite 700, Irving, TX, 75062.

349.     Defendant Shelby Summers, *Official and individual capacities,* is the director of student affairs at the University of Connecticut School of Law with an address of 55 Elizabeth Street, Hartford, CT, 06105.

350.     Honorable Karen Demeola, *Official and individual capacities,* is a former Dean of the University of Connecticut School of Law and current judge presiding at 155 Church street, Putnam, CT, 06260.

351.     Defendant Stacy Votto, *Official and individual capacities,* serves as an Executive Committee Officer for the New Haven County Bar Association with an official address of 900 Chapel St #10, New Haven, CT, 06510.

352.     Defendant Stan Strusky, *Official and individual capacities,* is the husband of Defendant Jessica Strusky, and a resident of Connecticut residing at 100 Salem Rd, Prospect, CT, 06712.

353.     Defendant State of Connecticut is a state with an official address located at 210 Capitol Ave, Suite 104, Hartford, CT, 06106.

354.     Defendant State of Connecticut Senate Democrats is an organization located at 750 Main street, Suite 1108-3, Hartford, CT, 06103.

355.     Defendant Stephanie Bernstein, Esq, *Official and individual capacities,* is an attorney in the State of Connecticut with an official office address located at 124 Washington Avenue, Middletown, CT, 06457.

356.     Defendant Stephanie Roberge, Esq., *Official and individual capacities,* is the Chairperson and an attorney member for the State of Connecticut Judicial Review Council, with an official address of 505 Hudson Street #5, Hartford, CT, 06106.

357.        Defendant Stephanie Sgambati, *Official and individual capacities,* is domiciled in the state of Connecticut and serves as an Executive Committee Officer for the New Haven County Bar Association with an official address of 900 Chapel St #10, New Haven, CT, 06510.

358.        Defendant Tahlisa Brougham, *Official and individual capacities,* is an employee of New Haven Legal Assistance Association, Inc. with an official address of 205 Orange Street, New Haven, CT, 06510.

359.        Defendant Tamar Birckhead, *Official and individual capacities,* is domiciled in the state of Connecticut and serves as an Executive Committee Officer for the New Haven County Bar Association with an official address of 900 Chapel St #10, New Haven, CT, 06510.

360.        Defendant The Center for Family Justice, Inc. is a non-profit organization in Connecticut located at 753 Fairfield Ave, Bridgeport, CT, 06604.

361.        Defendant The DeCicco Law Firm, LLC is a law firm located at 27 Holmes Ave, Waterbury, CT, 06710.

362.        Defendant The Community Foundation for Greater New Haven Inc. is a non-profit organization located at 70 Audobon St, New Haven, CT, 06510.

363.        Defendant The Umbrella Center for Domestic Violence Services of BHcare, is a subsidiary of BHcare located at 1000 Bridgeport Avenue, Suite 310, Shelton, CT, 06484.

364.        Defendant The University of Connecticut is a non-profit state University in the State of Connecticut located at 233 Glenbrook Road Unit 4100, Storrs, CT, 06269.

365.        Defendant Thomas A. Esposito, *Official and individual capacities,* is an attorney licensed to practice law in the State of Connecticut and a member of the State of Connecticut Marshal Commission, with an address of 450 Columbus Blvd., Suite 1403, Hartford, CT, 06103.

366.        Defendant Tim Pothin, *Official and individual capacities,* is domiciled in the state of

Connecticut and serves as an Executive Committee Officer for the New Haven County Bar Association with an official address of 900 Chapel St #10, New Haven, CT, 06510.

367.     Defendant Town of Orange First Selectman's Office is the municipal government office for the Town of Orange with an address of 617 Orange Center Rd, Orange, CT, 06477.

368.     Defendant University of Connecticut School of Law is the only public state of Connecticut Law School in the state and owned by the University of Connecticut, with an address of 55 Elizabeth Street, Hartford, CT, 06105.

369.     Defendant United States Department of Justice Civil Rights Division is a branch of the United States Department of Justice with a listed address of 950 Pennsylvania Avenue NW, Office of the Assistant Attorney General, Main ,Washington, DC, 20530.

370.     Defendant Victim Rights Center of Connecticut Inc. is a non-profit located at 8 Research Parkway, Wallingford, CT, 06492.

371.     Defendant Violence Against Women Prevention Program Inc., is part of the Gladstein Family Human Rights Institute and has a registered address at The Dodd Center For Human Rights, 405 Babbidge road, U-1205, Storrs, CT, 06269.

372.     Defendant Welty Esposito & Weiler, LLC, is a law firm located at 385 Orange Street, New Haven, CT, 06511.

373.     Defendant Whole House Remodeling Company LLC, *Official and individual capacities*, is a full-service remodeling and construction company owned and operated by Defendant Matthew J. Lodice registered at 48 Quarry Hill Rd, Waterbury, CT, 06706.

374.     Defendant William Tong, *Official and individual capacities,* is the State of Connecticut Attorney General at the Office of the Attorney General for the State of Connecticut, with an official address of 165 Capitol Avenue, Hartford, CT, 06106.

375.     Defendant Yale Child Abuse Clinic is owned by Yale New Haven Health Services Corporation Inc and is owned by Yale School of Medicine and has an address of 1 Longwharf drive, New Haven, CT, 06511.

376.     Defendant Yale University is the parent educational institute of Yale New Haven Health Services Corporation Inc, a 501(c)(3) tax-exempt corporation non-profit registered at 789 Howard Avenue, New Haven, CT, 06519.

377.     Defendant Yale New Haven Health Services Corporation Inc. is a 501(c)(3) tax-exempt corporation non-profit registered at 789 Howard Avenue, New Haven, CT, 06519.

378.     Defendant Yale University Child Study Center is a branch of Yale University that offers mental health services to children and is a part of Yale School of Medicine with a registered address of 230 S. Frontage Rd, New Haven, CT, 06519.

379.     Defendant Zingaro, Cretella, and Rasile LLC is a law firm located in the State of Connecticut with a registered address of 681 State Street, New Haven, CT, 06511.

380.     Defendant Trinity Health of New England Emergency Medical Services, Inc. is owned by Defendant Trinity Health Inc. is the parent company of Defendant Trinity Health of New England Corporation Inc. is the parent company of Saint Mary's Hospital in Waterbury, CT, and has a registered address of 114 Woodland Street MS-510358, Hartford, CT, 06105.

381.     Defendant Trinity Health of New England Corporation Inc. is the parent company of Saint Mary's Hospital in Waterbury, CT, and has a registered address of 114 Woodland Street MS-510358, Hartford, CT, 06105.

382.     Defendant Trinity Health Inc. is the parent company of Defendant Trinity Health of New England Corporation Inc. is the parent company of Saint Mary's Hospital in Waterbury, CT, and has a registered address of 114 Woodland Street MS-510358, Hartford, CT, 06105.

383.     Defendant Saint Mary's Hospital in Waterbury is a subsidiary of Defendant Trinity Health of New England Corporation Inc. is the parent company of Saint Mary's Hospital in Waterbury, CT, and has a registered address of 114 Woodland Street MS-510358, Hartford, CT, 06105.

384.     Defendant Carmelina Calabrese, *Official and individual capacities*, is the Patient Advocate for Saint Mary's Hospital in Waterbury, CT, with a listed address of 56 Franklin Street, Waterbury, CT, 06706.

385.     Defendant CT Bar Institute Inc. is a non-profit 501(c)3 non-profit charitable organization that is funded by the Connecticut Bar Association and has an address of 30 Bank Street, New Britain, CT, 06051.

386.     Defendant Stephanie N. Doe, *Official and individual capacities,* is the Director of Quality for the Quality Department of Saint Mary's Hospital in Waterbury, CT, with a listed address of 56 Franklin Street, Waterbury, CT, 06706.

387.     Defendant Maureen Cooney, *Official and individual capacities,* is the supervisor for the Department of Health Information Management for Saint Mary's Hospital in Waterbury, CT, with a listed address of 56 Franklin Street, Waterbury, CT, 06706.

388.     Defendant New Haven County Bar Foundation Inc. is a 501(c)(3) organization registered at 171 Orange Street, New Haven, CT, 06510.

389.     Defendant Jared Mastej, *Official and individual capacities,* is a resident of the State of Connecticut and resides at 36 Center Street, West Haven, CT, 06516.

390.     Defendant Officer Joseph Mortalli of the Hamden Police Department, *Official and individual capacities*, with an address of 2900 Dixwell Ave, Hamden, CT, 06518.

391.     Defendant Julio Ortiz, *Official and individual capacities*, is a former employee of the State of Connecticut State Police and a current independent contractor working with the state of

Connecticut as a private investigator. He is the owner of Fortified Investigations and Security, LLC, with a listed address of 87 Alpine Street, Bridgeport, CT, 06610.

392.     Defendant Fortified Investigations and Security LLC, *Official and individual capacities*, is a registered business and state contractor in the state of Connecticut owned and operated by Defendant Julio Ortiz, with a listed address of 87 Alpine Street, Bridgeport, CT, 06610.

393.     Defendant Connecticut Bar Association Inc. is a Connecticut legal profession member organization located at 30 Bank Street, New Britain, CT, 06051.

394.     Defendant Director of Health for the Town of Orange Amir Mohammad, *Official and individual capacities*, 605A Orange Center Road, Orange, CT, 06477.

395.     Defendant Honorable Lynda B. Munro is a retired judge and former presiding judge for the Family Division in New Haven Superior Court with an address of 850 Main street, P.O. Box 7006, Bridgeport, CT, 06601-7006.

396.     Defendant CT probate e-filing is a branch of the Office of the Probate Court Administrator with a registered address of 186 Newington Road, West Hartford, CT, 06110.

397.     Defendant Office of the Probate Court Administrator is a division of the State of Connecticut with a registered address of 186 Newington Road, West Hartford, CT, 06110.

398.     Defendant Connecticut Fatherhood Initiative is a program run by the State of Connecticut Department of Social Services with a registered address of 55 Farmington Avenue, Hartford, CT, 06105.

399.     Defendant Connecticut Department of Corrections is a department of the State of Connecticut with an address of 24 Wolcott Hill Road, Wethersfield, CT, 06109.

400.     Defendant York Correctional Institution is a prison in the State of Connecticut with an address of 201 West Main Street, Niantic, CT, 06357.

401.     Defendant Connecticut Department of Labor is a department of the State of Connecticut with an address of 200 Folly Brook Boulevard, Wethersfield, CT, 06109.

402.     Defendant Connecticut Department of Developmental Services is a department of the State of Connecticut with an address of 460 Capitol Avenue, Hartford, CT, 06106.

403.     Defendant Kylie Vaccarelli BCBA LBA, *Official and individual capacities*, is a resident of the State of Connecticut with an address of 42 Grove Street, Ansonia, CT, 06401.

All above cited Defendants have participated, either through direct and overt acts, omissions, associations, or in conspiracy with and through aiding and abetting in the ongoing and systematic obstruction of justice that has directly damaged and caused irreparable harm to the business and property of the Plaintiffs.

## **NATURE OF ACTION**

This is an action alleging fraud, civil conspiracy to commit fraud, abuse of process, and racketeering, money laundering, extortion, violations of civil rights, violations of fundamental rights, discrimination, misuse of federal funding, human trafficking, tax evasion, and other false claims and torts all arising from an intricate and longstanding interconnected web of a RICO scheme in which each of the defendants play a specific and unique role that was designed and implemented to defraud the United States, the impoverished, the self-represented, the uneducated, the disabled, and any other class of people that has suffered immeasurable injustices and inequalities at the hands of the State of Connecticut RICO enterprise.

Plaintiff has been completely and permanently stripped of her fundamental right to parenting[1] her minor child A.L. and has lost any and all current or future ability to access, visit, raise, or have any contact

---

[1] See *Meyer v. Nebraska*, 262 U.S. 390 (1923)

whatsoever with her minor four-year-old child A.L. as a result of a court order put in place by Defendant

Grossman on May 25th, 2023, which essentially delegated all judicial authority to Defendant Lodice.

Defendant Grossman entered in an order that plaintiff's pre-existing agreement that she and Lodice

had signed just one year prior be modified so that plaintiff's access would be "as determined by the father,

in the presence of a third-party designated by the father" which essentially gave Lodice the right to

completely terminate[2] any and all access, visitation, and contact between plaintiff and her minor daughter

A.L.

Since 5/31/23 until now, Defendant Grossman has not allowed plaintiff to address any grievances

within the court and has completely blocked plaintiff from seeking modification, contempt, or any other

relief by denying any and all requests for leave that plaintiff files with the court and forcing every other

court in the state of Connecticut to transfer any and all cases involving plaintiff to the New Haven Superior

Court in the New Haven JD to be heard solely by Defendant Grossman[3].

Plaintiff was never found to be "unfit" by any court in any state and the overt acts and omissions

of the defendants as a collective in perpetuating several underlying RICO schemes resulted in plaintiff

being ordered to have no actual parenting time with her minor child A.L. without plaintiff having been

proven "unfit" by clear and convincing evidence of actual harm to the minor child pursuant to a properly

noticed fitness proceeding[4].

---

[2] Plaintiff attempted on numerous occasions over the past 151 days to seek a modification of this order and has been completely barred from doing so, as Defendant Grossman also imposed an order that plaintiff was required to "file a request for leave with any and all future pleadings or motions" including emergency motions.
[3] Plaintiff has attempted to file a motion for disqualification of judicial authority, attempted to file a writ of mandamus, and has named Defendant Grossman in this lawsuit as a defendant, yet she has refused to disqualify herself and has instead resorted to extreme levels of intimidation, retaliation, and violations of plaintiff's fundamental rights.
[4] Plaintiff and her minor children A.L. and J.V. have been wrongfully and unlawfully dispossessed of their fundamental rights and the overt acts and omissions of the defendants and those who are in association with the defendants have caused irreparable and permanent harm that will continue to cause pain and distress to plaintiff and her minor children for the rest of their lives.

The United States Supreme Court has held[5] that "courts may not issue physical custody orders that grant no 'actual parenting time' to a 'fit' parent—unless that parent is found 'unfit'—with clear and convincing evidence of actual harm to a minor child[6].

Defendant Grossman stripped plaintiff of her fundamental right to raising A.L. without ever proving plaintiff unfit, while also ignoring the fact that plaintiff has had sole legal and sole physical custody of J.V. for more than seven consecutive years without any issues and has never had any substantiations of abuse or neglect[7].

*Smith v. Org of Foster Families*, 431 U.S. 816 (1977) established the principle that "the right to family integrity clearly did not originate with the enactment of the Fourteenth Amendment . . . [b]ut until relatively recently, few questioned that parents possessed a ***fundamental constitutional right to raise their children without undue state interference***."

Despite the fact that plaintiff and Lodice had reached a final agreement in November 2019, modified their agreement by mutual agreement in June of 2021, and modified it a second time by mutual agreement in April of 2022, Defendant Grossman immediately began entering in unsolicited and unfair "temporary" orders as soon as she became involved in plaintiff's case, which began a pattern of her misusing her judicial authority in order to commit illegal racketeering overt acts to obstruct justice, launder funds, and ultimately traffic[8] A.L. directly into the hands of Lodice and D.L. where she had repeatedly stated she was being sexually abused.

---

[5] *Stanley v. Illinois*, 405 U.S. 645 (1972) was a case in which the court affirmed and established the principle that "[t]he Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed 'essential,' Meyer v. Nebraska, 262 U.S. 390, 399, 'basic civil rights of man,' Skinner v. Oklahoma, 316 U.S. 535, 541, and '[r]ights far more precious ... than property rights,' May v. Anderson, 345 U.S. 528, 533."

[6] *See Stanley v. Illinois*, 405 U.S. 645 (1972); *Smith v. Org of Foster Families*, 431 U.S. 816 (1977); *Quilloin v. Walcott*, 434 U.S. 246 (1978); *Parham v J.R.*, 442 U.S. 584 (1979); and, *Santosky v. Kramer*, 455 U.S. 745 (1982).

[7] The highly restrictive and harmful order that Defendant Grossman imposed upon plaintiff was unconstitutional and goes completely against precedent set by the United States Supreme Court and is akin to treason as Grossman is and was well aware that her order violated both state and federal laws regarding child protection, custody, family unity, and access to children.

[8] Rather than look out for the safety of the minor child A.L., Grossman directly harmed A.L. and permanently severed and

Grossman's actions are also contrary[9] to the precedent affirmed in *Quilloin v. Walcott,* 434 U.S. 246 (1978), in which the court stated that they "have little doubt that the Due Process Clause would be offended '[i]f a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest.[10]'"

Grossman's orders deliberately and explicitly contradict the precedent that was also affirmed in *Santosky v. Kramer*, 455 U.S. 745 (1982) which held that "[b]efore a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence. . . . [b]ut until the State proves parental unfitness, the child and his parents share a vital interest in preventing erroneous termination of their natural relationship.[11]"

Defendant Grossman, and all those who have acted in concert with her through their overt acts and omissions, have undermined plaintiff's rights under state and federal laws and have dehumanized plaintiff in an effort to destroy the fabric of her being and drive her into bankruptcy and financial and emotional ruin.

---

destroyed the parent-child and parent-sibling relationship that A.L. shared with plaintiff and J.V. without any legal or logical justification other than the obstruction of justice[8] in protecting Lodice and D.L. from criminal accountability for the sexual assault of A.L.

[9] Grossman failed to consider any of the seventeen factors in the State of Connecticut's "Best interest of the child standard" and did not prove that there was any substantial change in circumstances which would have justified the complete severance of the parental-child relationship between plaintiff and A.L., while also severing the sibling relationship between J.V. and A.L.

[10] This was also affirmed again in United States Supreme Court precedent and seen in *Parham v J.R.*, 442 U.S. 584 (1979), when the Court again affirms that they have "historically . . . reflected Western civilization concepts of the family as a unit with broad parental authority over minor children. Our cases have consistently followed that course; our constitutional system long ago rejected any notion that a child is 'the mere creature of the State' and, on the contrary, asserted that parents generally 'have the right, coupled with the high duty, to recognize and prepare [their children] for additional obligations.'"

[11] These cases underscore the importance the U.S. Supreme Court has placed on the rights of parents to raise their children without undue interference from the state, unless clear and convincing evidence of unfitness is shown.

Furthermore, Grossman entered in an order that transferred any and all of her judicial authority to the defendant Lodice, which then allowed Lodice to replace her as the final binding authority and dictate any and all access, contact, and visitation between plaintiff and A.L[12].

The State of Connecticut, through their employee Grossman, wrongfully dispossessed plaintiff of her fundamental rights, despite the fact that plaintiff was never found to be unfit, and without any findings of child abuse, child neglect, abandonment, or endangerment[13].

The order of supervised visitation does not equate to parenting and physical custody orders that grant "supervised visitation" such as the one imposed upon plaintiff, force noncustodial parents into a situation where they are awarded no actual parenting time[14].

Plaintiff has been deprived of her fourteenth amendment rights to the ability to exercise care, custody, and control of her minor child A.L. as a result of the imposition of this supervised visitation order that awards plaintiff no actual ability to access or contact her minor child and has resulted in plaintiff being separated indefinitely from A.L. with no way to see or speak to her at all[15].

The orders imposed by Grossman have infringed upon plaintiff's fundamental rights guaranteed to her by the first and fourteenth amendments and preclude plaintiff's ability to exercise care, custody,

---

[12] Grossman's order that plaintiff's access would change to being "as determined by the father" was a court order that granted plaintiff no "actual parenting time" which completely eliminated plaintiff's ability to have the actual ability to exercise the care, custody, and control of A.L., or the free exercise of religion and private speech with A.L.

[13] Moreover, Grossman not only gave Lodice the complete power and authority to dictate if or when plaintiff could ever see her minor child again, but Grossman also imposed that if and when said access to A.L. did take place, that it would have to take place as supervised visitation "in the presence of a third party designated by the father" with no actual schedule or clear method to exercise said visitation.

[14] The supervised visitation imposed upon plaintiff has left Lodice completely in control of if, when, where, how long, and with whom the access to A.L. takes place, which has resulted in Lodice stating that he will not allow plaintiff to have any further contact or access with A.L. and the court, police, medical professionals, mental health professionals, and any other named defendants in this action all affirming that Lodice is justified in terminating any and all access, contact, and visitation between plaintiff and A.L. and they have all colluded in overt acts and omissions to continuously obstruct justice and prevent plaintiff from ever gaining access to or having contact with her minor child again.

[15] Plaintiff has been stripped of the ability to exercise her religion with A.L. and has been stripped of the right to exercise private speech with A.L. which are both deprivations of plaintiff's rights guaranteed under the first amendment to the United States Constitution.

and control of A.L. within the meaning of *Troxel v. Granville*, 530 U.S. 57 (2000), as well as her ability

to exercise private speech with A.L. within the meaning of *Rotary Int'l v. Rotary Club of Duarte*, 481 U.S.

537 (1987) in that even if plaintiff is permitted to have phone or FaceTime calls with the minor child—on

the rare occasions when Lodice allows for such—even those calls are ordered to be "monitored by the

father" which eliminates any possibility of plaintiff having the ability to speak privately with A.L. ever

again[16].

The orders issued by Grossman on 5/25/23, 5/31/23, and 6/22/23, grant plaintiff no actual

parenting time and has caused plaintiff to suffer from the constructive termination of her right to parent

and the right to familial association, both of which are protected by the first and fourteenth amendments

to the United States Constitution[17].

Plaintiff is invoking her 14th Amendment "right to parent"—i.e., to care, custody, and control of

her minor daughter A.L., and also her 1st Amendment right to "familial association"—i.e., to private

speech with her minor daughter A.L. (e.g., to pray together, to attend religious services together, to travel

together, to do activities together, to participate in medical appointments together, to participate in

educational activities together, and lead by example on a daily basis[18])

Family Court judges in the State of Connecticut such as Defendant Grossman regularly engage in

the statewide issuance of physical custody orders that grant "no actual parenting time" to "fit" parents

such as plaintiff, and do so based on none other than the judge's own arbitrary discretion, oftentimes

---

[16] The supervised visitation order imposed by Grossman on plaintiff does not give plaintiff the opportunity to exercise any of her parental rights and deprives plaintiff of her rights guaranteed under the fourteenth amendment of the United States Constitution and the first amendment of the constitution, which effectively severs the parent-child relationship and exploits a loophole in which a parent's rights can be terminated without the court actually initiating a termination proceeding, leaving a muggy gray area where the standards can lead to children being left in dangerous situations.

[17] Likewise, the orders imposed upon plaintiff by Grossman run contrary to public policy. Under such a restrictive order, plaintiff is prohibited from actually "parenting" A.L. and is not awarded any parenting time whatsoever, which also denies A.L. the right to be "parented" by her mother and strips her from her right to a mother-daughter relationship[17] with a loving, suitable, and fit mother with whom she desires to reside.

[18] See *Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537 (1987).

encouraged and influenced by the unconstitutional "Best interest of the child standard" in Connecticut which allows judges to make restrictive orders with only a preponderance of the evidence standard based on any or no factors listed in the statute at the judge's sole discretion[19].

Plaintiff also contends that the systematic statewide administrative policies that have been implemented and practiced within the State of Connecticut result in the continuous and ongoing violations of federally protected civil rights of countless litigants such as plaintiff.

*In re Zakai F.*, supra, 336 Conn. 291-93 states that "Supreme Court jurisprudence is clear that parents have a fundamental liberty interest in the care, custody, and control of their children. Over time, the Supreme Court expanded that interest to encompass the broader right to preservation of the family entity, that is, the right of a family to make private decisions about what is best for the family unit, free from unwarranted state intervention. Thus, the law appreciates the private realm of family life which the state cannot enter. This is the right to family integrity. Under Fourteenth Amendment due process jurisprudence, parents have a well-established fundamental liberty interest in their relationship with their children. Parents can therefore forcefully assert a constitutional violation when the state seeks to infringe on their familial relationship through the child welfare, criminal, and/or immigration systems."

The orders imposed upon plaintiff by defendant Grossman completely severed any possibility of future contact or access between plaintiff and A.L., while terminating the plaintiff's physical and legal custody of the minor child A.L. and eliminating the possibility of plaintiff filing anything else in the case without the express consent of defendant Grossman.

Grossman imposed that plaintiff was required to file a "request for leave" before filing any motions or pleadings in the case, however did not impose this same restriction on Lodice.

---

[19] This allows for the encouragement of widespread corruption, money laundering, misuse of federal funding, racketeering, child trafficking, obstruction of justice, and abuse of children which has plagued the state of Connecticut for decades and is now directly and irreparably harming and impacting plaintiff and her minor children.

Grossman consistently held plaintiff accountable for court orders yet did not do the same for Lodice. On numerous occasions plaintiff attempted to report violation of protective order and other crimes to the police when Lodice was violating the laws and the police refused to take plaintiff's statement, contacted the court and stated that Grossman instructed them not to make an arrest, or coerced and retaliated against plaintiff for attempting to address said grievances with the judicial or law enforcement or child protection administrative systems within the state.

The State of Connecticut Department of Children and Families, in concert with other shadowy associate defendants[20], systematically places minors in abusive environments. This operation is not just an egregious failure of duty but an active facilitation of child trafficking.

Judges within the state of Connecticut regularly fail to meet the requirement of finding parents unfit prior to issuing orders that deny parents their rights to procedural due process and equal protection under the law pursuant to the United States Constitution.

This action exposes the clandestine machinations of a longstanding and intricate criminal enterprise spearheaded by the defendants. Plaintiff's revelations suggest an alarming nexus between state entities, trafficking operations, financial malfeasance, and a deeply entrenched system of gender-based discrimination.

The trial court's unlawful termination of plaintiff's custody, visitation, and access to her minor daughter A.L., without any means to ensure reunification or reinstitution of her most basic parental rights, is a constitutionally impermissible barrier to plaintiff's fundamental right to family integrity. The trial

---

[20] State judges in the family courts in Connecticut regularly and deliberately issue physical custody orders that grant no actual parenting time without finding parents unfit and without clear and convincing evidence of actual harm to a minor child by means of child abuse, child neglect, abandonment, or endangerment. This is in contrast with federal laws, and rights entitled to individuals by the United States Constitution, which are fundamental rights that the state actors have no authority to infringe upon.

court's order by defendant Grossman entirely precludes the plaintiff from communicating with A.L., the most basic role she has as a parent.

Grossman's order is even more concerning considering the fact that the plaintiff raised the issue and presented substantial evidence and proof of parental alienation, parasitic parenting, isolation as a form of coercive control and abuse, domestic violence, and the complete termination of any potential access that the plaintiff may have to her minor daughter A.L. by leaving any future access between plaintiff and her minor daughter at the finite and indefinite discretion of the defendant Lodice.

Grossman offered plaintiff no parenting schedule, no access schedule, no contact schedule, and completely voided a pre-existing contract and agreement that had been signed by both plaintiff and Lodice that was found to be in the "best interest of the child" by defendant Price-Boreland.

Grossman offered plaintiff no means for reunification or access or contact with her minor daughter and has maintained that Lodice is justified in terminating all contact and visitation between plaintiff and A.L. Grossman also intentionally ignored reports by defendants Baranowski and Mayo which highlighted medical professionals having serious concerns about the sudden, unwarranted change in custody.

Grossman also intentionally ignored reports by defendant Preferred Pediatrics which indicated that they instructed plaintiff to take A.L. to the hospital for a sexual assault DNA collection kit and reports by defendant Yale Child Abuse Clinic which include records stating that A.L. disclosed inappropriate contact between D.L.—who is 13 years her senior—and herself which defendant Plummer also ignored.

Defendants Perez, Grossman, Cretella, Baranowski, Mayo, Lodice, D.L., DCF, Plummer, Steeves, Barselau, Prisavage, and others all conspired in order to allow A.L. to continue to be sexually abused by D.L. in an effort to accept bribes and financial incentives of transferring sole legal and sole physical custody to Lodice and removing any and all access, contact, or other communication between plaintiff and A.L.

The ongoing exploitation of federal programs such as The Fatherhood Initiative and VAWA, while noble in intent, have become primary vehicles for siphoning federal funds. The funds, instead of supporting the marginalized, are funneled into the enterprise, bolstering its operations. By weaponizing these programs, defendants have created a scheme in which they are able to exploit billions of dollars while creating an environment where women, especially economically disadvantaged mothers, are routinely disenfranchised, silenced, and subjected to systemic statewide discrimination.

For almost half a century, multiple state departments have conspired to exploit federal grant programs, leveraging them not for public good but for personal gain. Key figures, shielded by their esteemed positions and the cloak of governmental authority, have purportedly developed an intricate money laundering system. This web encompasses a network of shell companies, illegitimate non-profit organizations, and complicit financial institutions, each playing a pivotal role in whitewashing billions of dollars in federal funding every single year.

This action arises from a pervasive and deeply entrenched scheme orchestrated by the defendants. The scheme involves egregious acts of racketeering, trafficking, money laundering, and systematic gender discrimination, causing profound and irreparable harm to plaintiff, her minor children, and millions of others similarly situated.

## JURISDICTION AND VENUE

This Court has jurisdiction pursuant to 28 U.S.C. §1251, §1253, §1331 §1343(a) and §1332, because it can hear cases that fall both within the scope of the United States Constitution in Article III Section 2 and Congressional statutes as listed above. Furthermore, this Court has jurisdiction to hear cases to be determined by the Due Process Clause of the Constitution's Fifth Amendment. Plaintiff's claims

arise under the First and Fourteenth Amendments. This court has original subject-matter jurisdiction[21] pursuant to 18 U.S.C. § 1964(C) and 28 U.S.C. §1331 because this action arises, in part, under the Federal Racketeer Influenced and Corrupt Organizations Act ("Federal Rico")[22].

Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims[23] asserted allegedly occurred in this District[24].

This Court has the authority to grant declaratory relief, 28 U.S.C. § 2201, as well as further relief requested in this Complaint, including injunctive relief, 28 U.S.C. § 2202 by rule 57 of the Federal Rules of Civil Procedure.

Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure. An award of costs and attorneys' fees is authorized by 42 U.S.C. § 1988.

This Court has personal jurisdiction[25] over Plaintiff's related state and common law claims pursuant to the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367.

This action alleging violation of federal statutes and the United States Constitution is authorized by 42 U.S.C. § 1983 and jurisdiction over this action is conferred by 28 U.S.C. §§ 1331 and 1343(a)(3).

---

[21] The United States Supreme Court's 1985 decision in *Sedima, S.P.L.R. v. Imrex Company* substantially expanded the various areas and types of factual circumstances to which the Racketeer Influenced and Corrupt Organizations (RICO) Act can be applied. A RICO claim is required to satisfy five basic elements per the law.

[22] This action is brought pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, to redress defendants' conspiracy and pattern of corrupt and illegal activities in the State, including abuse of federal funded welfare and domestic violence programs, child support and welfare fraud, and corruption involving judges and state actors.

[23] This Court has personal jurisdiction over Defendants who are involved in the Connecticut Judicial System, particularly Defendants Grossman and other state court judge Defendants because they aimed and purposefully directed their illegitimate actions and obstructed justice in concert with one another while sitting on the bench of the State of Connecticut and presiding over multiple of the Plaintiff's cases.

[24] In fact, the entirety of Defendants erroneous actions and omissions took place within the district of the State of Connecticut. The events took place in state courts in Connecticut including in Derby, Milford, New Britain, Waterbury, Hartford, and New Haven, as well as in various other municipalities all within the State of Connecticut.

[25] This Court has personal jurisdiction over all defendants in this action as all defendants are either domiciled in, do business in, have sufficient contacts with, or otherwise are or are associated with the state of Connecticut.

## **FACTUAL CONTENTIONS**

1.  The Plaintiff contends against a shadowy consortium comprising state departments, judiciary insiders, elite academic institutions, and opportunistic profiteers. This has allowed for ongoing constitutional parental rights breaches which contradict longstanding historical decisions such as *Santosky v. Kramer*[26] and *Troxel v. Granville* which place a heavy emphasis on parental sanctity, a sacred bond which has mercilessly been severed by the nefarious enterprise of the RICO scheme.

---

[26] Under New York law, the State may terminate, over parental objection, the rights of parents in their natural child upon a finding that the child is "permanently neglected." The New York Family Court Act (§ 622) requires that only a "fair preponderance of the evidence" support that finding. Neglect proceedings were brought in Family Court to terminate petitioners' rights as natural parents in their three children. Rejecting petitioners' challenge to the constitutionality of § 622's "fair preponderance of the evidence" standard, the Family Court weighed the evidence under that standard and found permanent neglect. After a subsequent dispositional hearing, the Family Court ruled that the best interests of the children required permanent termination of petitioners' custody. The Appellate Division of the New York Supreme Court affirmed, and the New York Court of Appeals dismissed petitioners' appeal to that court. The Supreme Court held that: 1. Process is constitutionally due a natural parent at a state-initiated parental rights termination proceeding. Pp. 455 U. S. 752-757. (a) The fundamental liberty interest of natural parents in the care custody, and management of their child is protected by the Fourteenth Amendment, and does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. A parental rights termination proceeding interferes with that fundamental liberty interest. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures. Pp. 455 U. S. 752-754. (b) The nature of the process due in parental rights termination proceedings turns on a balancing of three factors: the private interests affected by the proceedings; the risk of error created by the State's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure. *Mathews v. Eldridge*, 424 U. S. 319, 424 U. S. 335. In any given proceeding, the minimum standard of proof tolerated by the due process requirement reflects not only the weight of the public and private interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants. The minimum standard is a question of federal law which this Court may resolve. Retrospective case-by-case review cannot preserve fundamental fairness when a class of proceedings is governed by a constitutionally defective evidentiary standard. Pp. 455 U. S. 754-757. 2. The "fair preponderance of the evidence" standard prescribed by § 622 violates the Due Process Clause of the Fourteenth Amendment. Pp. 455 U. S. 758-768. (a) The balance of private interests affected weighs heavily against use of such a standard in parental rights termination proceedings, since the private interest affected is commanding, and the threatened loss is permanent. Once affirmed on appeal, a New York decision terminating parental rights is *final* and irrevocable. Pp. 455 U. S. 758-761. (b) A preponderance standard does not fairly allocate the risk of an erroneous factfinding between the State and the natural parents. In parental rights termination proceedings, which bear many of the indicia of a criminal trial, numerous factors combine to magnify the risk of erroneous factfinding. Coupled with the preponderance standard, these factors create a significant prospect of erroneous termination of parental rights. A standard of proof that allocates the risk of error nearly equally between an erroneous failure to terminate, which leaves the child in an uneasy *status quo*, and an erroneous termination, which unnecessarily destroys the natural family, does not reflect properly the relative severity of these two outcomes. Pp. 455 U. S. 761-766. (c) A standard of proof more strict than preponderance of the evidence is consistent with the two state interests at stake in parental rights termination proceedings -- a *parens patriae* interest in preserving and promoting the child's welfare and a fiscal and administrative interest in reducing the cost and burden of such proceedings. Pp. 455 U. S. 766-768. 3. Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence. A "clear and convincing evidence" standard adequately conveys to the factfinder the level of subjective certainty about his factual conclusions necessary to satisfy due process. Determination of the precise burden equal to or greater than that standard is a matter of state law properly left to state legislatures and state courts."

2. This Complaint unveils a sophisticated, deeply entrenched network spanning multiple state agencies and entities. Central to this purported web of corruption is an intricate scheme involving racketeering, trafficking, money laundering, and systemic gender discrimination that has ensnared countless innocent individuals, primarily women and children such as plaintiff and her minor children A.L. and J.V.

3. Although Connecticut may be famously nicknamed as the "Constitution State", the stark reality is that The Constitution State has been **unconstitutional**[27] since 1982 when they removed[28] the grand jury requirement, effectively removing the ability for the people to put checks and balances on the system.

4. In the year 2000, Governor Roland got rid of sherrifs and he was also involved in corruption. When they did away with sherrifs[29], the power was supposed to be restored to the people. However, rather than give it back to the people, they seized many aspects of the authority and gave some of the authority to state marshals, and some of it to judicial marshals. All of that power, which belongs to the people, has been seized[30].

5. The Defendants have participated in acts, omissions, affiliations, and other participating overt acts that

---

[27] In fact, the state of Connecticut was one of the last states to adopt a state constitution separate from its original colonial charter. Connecticut operated under the "Fundamental Orders" from 1639, which is often considered the first written constitution in the Western tradition. Later, the state was governed by the Royal Charter of 1662, granted by King Charles II. Connecticut continued to operate under this charter until 1818. It wasn't until that year that Connecticut adopted its first state constitution. Before that, Connecticut was unique in that it used its colonial charter as its primary governing document even after the American Revolution. Most other states had adopted new state constitutions immediately after the Revolution or in the years that followed.

[28] Connecticut abolished its grand jury system in 1983. The state transitioned to a system where probable cause hearings before a judge would determine whether there was sufficient evidence to move forward with prosecuting serious felonies. Prior to this change, grand juries were used in Connecticut to determine whether to formally charge someone with a crime, especially in serious criminal matters. After 1983, the decision to prosecute serious crimes in Connecticut has generally been made by state prosecutors based on evidence presented at these probable cause hearings.

[29] In 2000, Connecticut voters approved a constitutional amendment to abolish the county sheriff system. This move came after numerous allegations of corruption, mismanagement, and political patronage within the sheriff system. The amendment took effect in 2000, and the duties formerly performed by sheriffs were transferred to other state entities.

[30] State marshals are all under the executive branch of Governor Lamont, and the judicial marshals fall under the authority of the judicial branch and of the judges. Section 25 of the Connecticut Constitution stated that this should be to the people, and the state removed that and instead outsourced it to the state marshals and judicial marshals. The Defendant Lodice is strongly connected to a network of prominent state marshals and judicial marshals, police, and other state and municipal actors.

have allowed them to systematically misuse federal grants and launder funds earmarked for the Fatherhood Initiative, VAWA, and CAPTA. Billions of dollars in federal funding is funneled into coffers within the state of Connecticut, only to be misappropriated and redirected to unauthorized, undisclosed, and illegal racketeering and trafficking activities.

6. Plaintiff seeks relief for substantial injuries sustained to her business and property as a direct result of the Defendants' racketeering activities.

7. The State of Connecticut Judicial System and the Family Division, as well as all associated Defendant employees and affiliates thereof, has systematically violated the constitutional and fundamental rights of thousands of parents and stripped them of their fundamental rights by failing to protect litigants' due process rights under the Fourteenth Amendment in the "interest of natural parents in the care, custody, and management of their child" which the Supreme Court, such as in *Santosky* has held **"[d]oes not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State[31]."**

8. Plaintiff contends that a vast network, inclusive or state agencies, non-profit organizations, and various clandestine entities have all participated in various over acts and violated a plethora of rights in an effort to obstruct justice, extort funds, and engage in what can be described as State-sponsored racketeering within the State of Connecticut.

9. The Defendants have participated in a RICO scheme which has been carefully orchestrated to operate seamlessly to perpetrate a variety of illicit activities ranging from child trafficking and prostitution rings to embezzlement and financial fraud.

---

[31] Further, the Supreme Court has also held that "[w]hen the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures . . . The 'fair preponderance of the evidence' standard prescribed by §622 violates the Due Process Clause of the Fourteenth Amendment . . . A preponderance standard[31] does not fairly allocate the risk of an erroneous factfinding between the State and their natural parents." *Santosky v. Kramer*, 455 U.S. 745 (1982).

10. Family Court judges, such as Defendants Grossman, Tindill, Gould, Moore, and other named defendants, have maintained that the State of Connecticut's "Best Interest of the Child Standard in Connecticut[32]" which allows family court judges to issue no-contact, no-access/visitation, and absolute and final removal of custody orders—many times while also making said orders final, nonmodifiable, and permanent—without affording litigants the right to have the State be required to prove them unfit before terminating said rights, is acceptable and constitutional, which Plaintiff seeks to challenge in this lawsuit.

11. *The Best Interest of the Child Standard in Connecticut* provides a 17-factor test which outlines the factors that the court "shall consider" when "making or modifying any order . . . regarding the custody, care, education, visitation and support of the children" while maintaining that "[t]he court is not required to assign any weight to any of the factors that it considers, but shall articulate the basis for its decision." *See CGS §46b-56.*

12. The Family Court System[33] in the State of Connecticut does not advise litigants of their rights during

---

[32] CGS § 46-56(c) (2021) states that " [i]n making or modifying any order as provided in subsections (a) and (b) of this section, the court shall consider the best interests of the child, and in doing so may consider, but shall not be limited to, one or more of the following factors: (1) The physical and emotional safety of the child; (2) the temperament and developmental needs of the child; (3) the capacity and the disposition of the parents to understand and meet the needs of the child; (4) any relevant and material information obtained from the child, including the informed preferences of the child; (5) the wishes of the child's parents as to custody; (6) the past and current interaction and relationship of the child with each parent, the child's siblings and any other person who may significantly affect the best interests of the child; (7) the willingness and ability of each parent to facilitate and encourage such continuing parent-child relationship between the child and the other parent as is appropriate, including compliance with any court orders; (8) any manipulation by or coercive behavior of the parents in an effort to involve the child in the parents' dispute; (9) the ability of each parent to be actively involved in the life of the child; (10) the child's adjustment to his or her home, school and community environments; (11) the length of time that the child has lived in a stable and satisfactory environment and the desirability of maintaining continuity in such environment, provided the court may consider favorably a parent who voluntarily leaves the child's family home pendente lite in order to alleviate stress in the household; (12) the stability of the child's existing or proposed residences, or both; (13) the mental and physical health of all individuals involved, except that a disability of a proposed custodial parent or other party, in and of itself, shall not be determinative of custody unless the proposed custodial arrangement is not in the best interests of the child; (14) the child's cultural background; (15) the effect on the child of the actions of an abuser, if any domestic violence, as defined in section 46b-1, has occurred between the parents or between a parent and another individual or the child; (16) whether the child or a sibling of the child has been abused or neglected, as defined respectively in section 46b-120; and (17) whether the party satisfactorily completed participation in a parenting education program established pursuant to section 46b-69b. The court is not required to assign any weight to any of the factors that it considers but shall articulate the basis for its decision."

[33] The Family Court System in the State of Connecticut does not provide litigants with the right to counsel or the right to

proceedings as they do in the Criminal Justice System in the State of Connecticut.

13. The Family Court System[34] in the State of Connecticut regularly will ignore many, if not all of the 17 factors laid out in 46b-56(c) of the Connecticut General Statutes and will oftentimes deny litigants due process, the right to counsel, the right to a trial, the right to cross-examine witnesses or family relations, the right to utilization of services, the right to enter in and present evidence, the right to be heard, and the right that parents have to the academic and medical records of their children under CGS § 46b-56(e)).[35]

14. The Defendants and others who are involved in the acts and omissions described within this Complaint have engaged in the use of child custody as a veil for child trafficking, by allowing the state of Connecticut, through its agencies, to intentionally place minors in abusive environments.

15. Defendants have consistently and repeatedly engaged in a complete manipulation of the child custody and family court system in an effort to conceal the trafficking of minors for financial gains. Judges will regularly make deals with attorneys in order to "sell" custody of children to the highest bidder in high-conflict custody and divorce battles, oftentimes leading children directly into the path of harm's way and overlooking the risks of long-term physical and psychological harm.

16. Further, many of the defendants that are or are associated with several non-profit and not-for-profit organizations within the state have been engaging in a racketeering pattern of acts and omissions that consists of money laundering through the tax-exempt networks.

17. Many of the non-profit entities regularly will misuse the funds received from the federal government,

_____

counsel being appointed or the cost of said appointed counsel being waived during proceedings as they do in the Juvenile Court System in the State of Connecticut.

[34] The Family Court System in the State of Connecticut does not provide litigants with the right to counsel or the right to counsel being appointed or the cost of said appointed counsel being waived during proceedings as they do in the Probate Court System in the State of Connecticut.

[35] By law, a parent not granted custody of a minor child has the same right as the custodial parent to the child's academic, medical, hospital or other health records, unless otherwise ordered by the courts (CGS § 46b-56(e)).

particularly from federal grants, and typically said funds are laundered through an intricate matrix of shell companies, nonprofits, and quasi-official entities. This intricate RICO system allows the state to disguise illegal gains while facilitating further exploitation of both government resources and taxpayer dollars.

18. Defendants have also enabled[36] systematic and statewide gender discrimination and suppression that extends to every branch, arm, and leg of the state of Connecticut, and has become deeply entrenched[37] within society as a whole on a statewide level.

19. The Plaintiff was born in New Haven, Connecticut and has resided in Connecticut within New Haven County for the past 32 consecutive years.

20. The Plaintiff has documented disabilities which are protected under the *Americans with Disabilities Act* which include ADHD and PTSD that was caused by intense and severe levels of exposure to childhood trauma that included sexual abuse, homelessness, victimization[38] by the criminal justice system, and living in poverty.

21. The Plaintiff was, as the late Honorable Judge Richard Damiani stated, repeatedly "victimized by our system[39]" and as a result possesses a remarkably intuitive perspective and inside knowledge and exposure to the ongoing RICO scheme and for-profit judicial system operations being orchestrated by

---

[36] Defendants, in concert with one another and as part of the RICO enterprise under the State of Connecticut, promote policies and programs that systematically marginalize women. Efforts to expose these alleged wrongdoings or seek redress are met with state-sanctioned intimidation, legal barriers, and unjust legal actions.

[37] Several revered and reputable institutions within the State of Connecticut such as Defendant Yale have also been co-opted into this network, providing a veneer of legitimacy to the state's actions, and creating an environment where children are being exploited, silenced, trafficked, harmed, and ultimately stripped of all of their rights without recourse.

[38] Plaintiff was also repeatedly victimized by the very system that was federally incentivized, funded, and designed to theoretically protect her at the hands of the Connecticut Judicial System, DCF and other defendant state agencies who further exacerbated the trauma she was forced to endure so they would continue to act toward the furtherance of the RICO scheme that has also victimized countless others within the state of Connecticut for decades.

[39] Defendant Diamanto Antonellis (hereinafter "Antonellis") lost custody of plaintiff when plaintiff was fourteen years old, forcing her to then live under the care and custody of Antar, who then proceeded to neglect plaintiff for the four years he was acting as her sole custodial guardian. Antar deprived plaintiff of basic necessities like food, water, and shelter, while simultaneously making millions of dollars through a series of intricate RICO schemes that he orchestrated, all by and through business ventures in the State of Connecticut.

the state and has suffered tremendously as a result[40].

22. DCF, the State of Connecticut Judicial System, the State of Connecticut Division of Criminal Justice, and many of the programs and organizations that receive funding[41] through the federal government designed to help victims of abuse and domestic violence all collectively failed the plaintiff and directly added to her lifelong trauma, pain, and suffering[42]. This is hallmark of the State of Connecticut's longstanding for-profit judicial system and the pattern of due process violations, misuse of federal funding, extortion, bribery, money laundering, racketeering, human trafficking, and obstruction of justice[43].

23. The State of Connecticut has the fourth highest per capita income in the United States with the mean household income at $115,337 per year, yet some of the most vulnerable women and children in the state continue to be repeatedly subjected to widespread violations of laws which were enacted to protect them and to ensure for each of them an opportunity for a safe and healthy childhood and a permanent family.

24. Plaintiff seeks to challenge various unlawful practices and policies of the defendant officials of the State of Connecticut concerning various state operations such as the operation of Connecticut's child welfare system, family court system, criminal justice system, probate system, and juvenile justice system as it affects the daily lives of millions of individuals similarly situated to plaintiff and her minor

---

[40] See *State of Connecticut v. Christopher Katagis*, NNH-CR-07-0075571T.

[41] In spite of this, New Haven Superior Court, New Haven Child Support Enforcement Services, Connecticut Child Support Enforcement Services, and The Department of Social Services all failed to comply with federal requirements regarding the enforcement of child support, which ultimately left plaintiff to continue to suffer in poverty.

[42] The Defendant Abdelghany Antar (hereinafter "Antar"), historically took advantage of and exploited several of these systematic RICO schemes in order to fraudulently obtain benefits through the DSS, reduce or eliminate child support obligations through fraudulently fabricated financial statements submitted in the New Haven Superior Court in an effort to defraud CCSES and in turn deprive the plaintiff of her right to the benefits of his financial support under federal laws as her biological father.

[43] The State of Connecticut Department of Children and Families also failed to properly protect plaintiff when she was a minor, leaving her in a dangerous and neglectful environment with no adult supervision, access to services, financial support, or means of survival. Plaintiff was not only abandoned by Defendant Antonellis and then by Defendant Antar, but ultimately it was the Department of Children and Families who abandoned plaintiff and failed to protect her from the ongoing harm.

children.

25. Plaintiff contends that the defendants have failed to provide adequate protective services to children who are abused, neglected, or who are at risk of abuse, neglect, and maltreatment, including their failure to ensure that all reports regarding these children are investigated and responded to promptly by caseworkers who are trained adequately and appropriately.

26. Furthermore, defendants have collectively engaged in a systematic failure to make reasonable efforts to keep families together and have failed to adhere to federal laws and guidelines mandating the continued eligibility of federal funding incentives.

27. The state of Connecticut and defendants have failed to ensure minimally-adequate and appropriate care is given to all children involved in contested custody disputes or juvenile proceedings and fail to adhere to federal guidelines in maintaining sibling relationships, fail to ensure children receive adequate medical and mental health assessments pursuant to their age and abilities, and fail to ensure that children receive consistent parenting and nurturance in accordance with their individualized needs.

28. The Department of Children and Families receives billions of dollars in grants from the federal government that is supposed to go toward the protection of children, however every single day children like plaintiff and plaintiff's minor daughter A.L. continue to be victimized, and then re-victimized by the system. The ongoing systematic intricately woven RICO[44] systems that all fall under the overarching blanket of the State of Connecticut is longstanding, deeply ingrained, and highly corrupted[45].

---

[44] Plaintiff witnessed Defendant Antar speak openly regarding the various RICO schemes being orchestrated by the State in an effort to let the "poor get poorer", which most people in the state just accept as normal life in Connecticut, which has one of the highest discrepancies between the rich and the poor in the country. Between 1989 and 2016, income inequality between the richest and poorest families in the United States **doubled.**

[45] Many, if not all, of the programs, commissions, coalitions, foundations, and other "non-profit" organizations that are part of

29. The reality for many children growing up poor was similar to that of the plaintiff as a child[46].

30. The state of Connecticut's child welfare system and family court system endangers the children that it is charged to protect, causes harm to children it is charged to help, and has been allowed to deteriorate to a state of systemic, ongoing crisis that has become a key piece in a nationwide—if not worldwide—humanitarian crisis that needs immediate resolution.

31. This ongoing crisis has spanned for decades, and continues to cause irreparable injury to plaintiff, her minor children, and thousands of other men, women, and children involved therein.

32. As such, Defendant Antar further engaged in repeated violations[47] of state and federal laws including wire fraud and mortgage fraud in obtaining multiple fraudulent mortgages and then intentionally defaulting on the loans while continuing to collect rent from tenants and failing to pay anything toward the mortgages.

33. Defendant Antonellis, the plaintiff's mother, was an immigrant from Greece who had no college education or clear understanding of how to handle real estate transactions. Antar extorted her and fraudulently told her he would marry her and convinced her to use $150,000 of her money from a wrongful death settlement from her father as a down payment on a single-family residence[48] in Bethany, CT, which Antar secured under his name under the guise that he would pay the mortgage.

---

the *Non-Profit Sector RICO operation,* which report to the IRS that they are charitable organizations that exist to help the poor, disabled, abused, uneducated, and otherwise disadvantaged people of society who lack the means and opportunities to ever have a level playing field with their peers and colleagues.

[46] The only difference is that although plaintiff was initially with Antonellis who genuinely was unable to financially provide for her, Antar *was* able to provide and was making *millions of dollars through his own series of RICO enterprise schemes but* chose to abuse and neglect the needs of plaintiff and her three siblings that are also his children instead financially. Antar was able to take advantage of the system and exploit the RICO enterprises for years without the State ever holding him accountable for anything.

[47] Antar orchestrated various schemes throughout the years and ultimately after being indicted on federal charges for conspiracy to commit wire fraud, he "pled guilty on July 19, 2011, to an information charging him with one count of conspiracy to commit wire fraud under 18 U.S.C. § 371 for his leadership role in a mortgage fraud scheme involving 21 homes in greater New Haven." See *United States of America v. Abdelghany* Antar, 3:11-CR-00123-CFD

[48] This house, located at 151 Cheshire road in Bethany, CT, was where the plaintiff resided from her birth in September of 1991 through March of 1996. Plaintiff lived there from the ages of 0-4.

34. On December 11, 1995, after Antar missed a substantial number of mortgage payments on the property, the New Haven Superior Court issued a judgment of strict foreclosure against the defendants Antar and Antonellis. See *First Trust National Association v. Ali Antar, et al,* NH-CV-94-0356294-S

35. After receiving initial notice of judgment of foreclosure on January 22, 1995, and a subsequent 30-day extension of the February 13, 1996, ejectment date, on March 13, 1996, plaintiff and her family were forcibly evicted[49] from the home and given only 24 hours to vacate the premises.

36. From March of 1996 until August of 2001 the plaintiff was also sexually abused by the defendant Katagis while under the care and custody of the defendant Antonellis. This abuse took place in houses in West Haven, New Haven, and Bethany, CT when plaintiff was between the ages of four and nine years old.

37. DCF was summoned to the plaintiff's home on numerous occasions during this time based on allegations of abuse and neglect being called in by third parties, yet DCF failed to intervene in any of said calls, which is paramount to their ongoing pattern of ignoring abuse and neglect while still exploiting federal funding in a RICO scheme that has spanned for decades[50].

38. In 2001, plaintiff attempted to disclose the sexual abuse to Defendant Antonellis, but rather than be supportive or report the abuse to authorities, Antonellis instead chose to cover up the abuse and accuse plaintiff of lying.

39. Plaintiff then was forced to continue to live in the same home[51] with Defendant Katagis after he was

---

[49] Plaintiff and her family experienced homelessness and lived in a homeless shelter in Waterbury, CT immediately after being evicted from the house in Bethany before finally moving into a rental house in West Haven, CT.

[50] DCF, which exists as a sub-organization within the overall organization of the State of Connecticut, has a longstanding history of failing to protect children within the state and allowing them to continue to be abused, neglected, and at times even murdered. DCF is misusing and fraudulently laundering federal funding. The State of Connecticut DCF currently has a federal Administration on Children and Families ACF grant along with other grants from additional federal funding sources. In spite of this, they have failed repeatedly to intervene in the ongoing case of plaintiff's minor daughter A.L. being sexually abused.

[51] Defendant Antonellis regularly would leave Defendant Katagis in charge of the home, and he regularly paid the majority of the bills for the home. Defendant Antonellis had almost nothing in her name while Defendant Katagis owned and paid for everything.

informed that she disclosed the sexual abuse to their mother Defendant Antonellis, and due to the request of Defendant Anastasia Ganim, plaintiff was even forced to share a bedroom with Katagis and two of her other siblings for several years so that Defendant Anastasia could have the luxury of having her own bedroom.

40. From 2001 until 2005, while living in a rented home in Woodbridge, CT, the plaintiff experienced significant amounts of physical abuse[52] by the Defendant Katagis, against her and against her brother Antonios Antar who is mentally disabled and has profound Downs Syndrome and is completely nonverbal.

41. In 2006, plaintiff reported to the Woodbridge Police Department in Woodbridge, CT, that she had been sexually abused as a minor by Katagis from the ages of four to nine, after Defendant Antonellis had called the police to the home in Woodbridge in an effort to "have plaintiff arrested".

42. After plaintiff brought up the sexual abuse to Antonellis in the presence of three officers from the Woodbridge Police Department, said officers instructed plaintiff to come with them to the police station for further questioning[53].

43. After several hours of questioning and the police taking a verbal statement from plaintiff, they instructed plaintiff to use the phone at the police department to call Antonellis to come pick her up. Antonellis answered the phone and swore at plaintiff and told her that she would not be coming to pick her up since she "tried to put her kid in jail" and hung up the phone[54].

---

[52] On one occasion, Katagis threw a plastic lawn chair at plaintiff's face with all of his force and strength and hit her in the face and broke her nose because he was angry. On another occasion, Katagis came home angry and upset that plaintiff's brother Antonios had an accident on the floor in the home and, as a cruel and unusual punishment, he smashed Antonios's face in his own feces to punish him for having an accident.

[53] Plaintiff, at the age of fourteen years old with no attorney or parent or legal guardian present, then went to the Woodbridge Police Department where she gave a very detailed and lengthy statement to the Woodbridge police which included very intrusive and detailed questioning by the police for several hours.

[54] Plaintiff was then informed by the Woodbridge Police Department that if she could not get her mother to come and pick her up that she would have to call Defendant Antar to pick her up or else she would be forced to go into the custody of the Connecticut Department of Children and Families.

44. Plaintiff was released to Defendant Antar from the Woodbridge Police Department and a DCF investigation commenced. Defendant Antonellis lost custody of plaintiff and she lived in various apartments after that in West Haven, East Haven, New Haven, and Woodbridge, CT.

45. The Woodbridge Police Department contacted the Connecticut State Police Troop I in Bethany, CT and informed them that the sexual abuse occurred in three separate towns and that it did not occur in the Town of Woodbridge. CSP Troop I stated that it would be in the plaintiff's best interest if she were to come to the barracks in Bethany and give her statement one more time, in lieu of having to give three more statements[55] to Bethany, New Haven, and West Haven.

46. Defendant Antonellis told plaintiff that Defendant Katagis asked her to try to convince plaintiff not to go to the CSP Troop I in Bethany to give this statement, and Antonellis and Katagis worked together in concert with one another to try to obstruct justice and bribe[56] plaintiff into staying silent about the sexual abuse.

47. Plaintiff refused this bribe and insisted on going to the police to give the statement. Plaintiff gave the statement to the police at CSP Troop I in Bethany and verbally gave her statement while a trooper typed what plaintiff was saying on a laptop. Antonellis, despite driving plaintiff there, told troopers that she did not believe plaintiff and that she was not supporting plaintiff in any way and that she felt plaintiff was lying about the abuse[57].

48. On December 24, 2007, the Connecticut State Police Troop I Bethany left a voicemail on Defendant

---

[55] The statement alone is extremely traumatic as the police at the time would ask extremely invasive and detailed questions about the abuse which can be very difficult to talk about in such detail, especially when victims are only fourteen years old like plaintiff was at that time.
[56] Defendant Antonellis told plaintiff that Katagis said that she could "name her price" and that whatever amount of money she wanted in lieu of going to the police would be secured.
[57] The trooper told Antonellis that "kids don't just make this stuff up" and attempted to get Antonellis to understand the severity of the issue, but Antonellis was more concerned with protecting her son as she had already told plaintiff that she "wasn't her kid anymore."

Antonellis's home phone in which they stated that they had a warrant for the arrest of Defendant Katagis and that he was required to turn himself in for his arrest and was being charged with risk of injury to a minor, unlawful restraint, and sexual assault, for the incidents which took place during plaintiff's childhood.

49. Defendant Antonellis then became enraged and told plaintiff "thanks for the Christmas present" and continued to retaliate and intentionally inflict emotional distress and pain on plaintiff in retaliation for the prosecution and arrest of her son Defendant Katagis.

50. Antonellis regularly admitted that, despite having five total children, that Katagis was her favorite child as he supported her financially, did not have any Egyptian blood like plaintiff and her siblings, and because he was the first-born[58].

51. Antonellis allowed plaintiff to become homeless and plaintiff was forced to find ways to survive without any money, food, housing, transportation, income, or family or emotional support.

52. Plaintiff was also expected to maintain taking honors and advanced placement rigorous courses in high school and prepare for college, all without any guidance or assistance from anyone.

53. At one point, plaintiff was even forced[59] to go into the custody of the State of Connecticut Department of Children and Families and lived in a foster home in Shelton, CT after Defendant Antar had plaintiff living in an apartment with no heat, no hot water, no food, and several building code violations.

54. Plaintiff also was involved in an unhealthy relationship with an individual that involved extreme levels of domestic violence and abuse from 2007 until 2009, which resulted in plaintiff being arrested

---

[58] Antonellis would often treat plaintiff as a scapegoat and blame plaintiff for all of the issues and problems in her life, using plaintiff as a verbal punching bag in order to take her frustrations out on and feel more justified in her decision to completely abandon her own daughter.

[59] The West Haven Police Department and DCF told Defendant Antar that they "wouldn't even let their cat step foot in the apartment" but scolded him asking how he could "let his daughter live here". Plaintiff became accustomed to living in environments as a teenager that had none of the basic necessities like food, shelter, and water. Plaintiff was left to figure out ways to survive on her own without any parental or adult supervision or guidance, while trying to manage being in high school and preparing for college.

numerous times for assault, breach of peace, disorderly conduct, and at least three felony violation of protective order charges[60].

55. Plaintiff experienced extreme violations of her Constitutional rights by judges in the New Haven Superior Court when dealing with many of these criminal charges as a juvenile. Plaintiff was given several cruel and unusual punishments and continues to suffer trauma as a result.

56. After violating the state-imposed protective order for the third time in December of 2008, plaintiff posted a $250.00 bond to the Woodbridge Police Department and was released from jail. Plaintiff was supposed to go to court the next day, but there was a snowstorm and court was cancelled, and plaintiff was told that she would get a new court date in the mail.

57. On January 15, 2009, plaintiff appeared for her arraignment in New Haven Superior Court at 121 Elm Street, New Haven, CT, to be formerly arraigned on a felony violation of protective order charge. Plaintiff was seventeen years old at the time and was represented by the late public defender Janet Perrotti and Defendant Antar was also present for the proceeding.

58. The New Haven Superior Court Judge arraigned plaintiff on the charges and immediately said to plaintiff "This is your third time violating this protective order, the protective order says no contact. No contact means no contact. Clearly you do not understand what a court order is."

59. At that point, the judge then stated that he was "raising [plaintiff's] bond to a $25,000 CASH ONLY bond and continuing the case until January 20, 2009.

60. Plaintiff was then immediately placed into handcuffs and shackled and taken into custody of judicial marshals and brought into the basement of the New Haven Superior Court GA5 to be held in a holding cell and await the arrival of employees of the Department of Correction.

---

[60] Both plaintiff and this individual were arrested numerous times together and the State of Connecticut domestic violence laws at the time required that both parties had to be arrested and required that restrictive protective orders be forcibly imposed on both parties regardless of their wishes.

61. Plaintiff was then chained to several other female prisoners and taken to Union Avenue jail at the New Haven Police Department before being escorted into another van that ultimately took plaintiff to York Correctional Institution in Niantic, CT.

62. Plaintiff was placed into the custody of the Department of Correction and was forced to stay inside of a cell with three other juvenile defendants in which plaintiff was locked in said cell for a total of 23.5 hours a day for five consecutive days.

63. On January 20, 2009, plaintiff was then escorted by the DOC to court where she was released from custody and her case was dismissed.

64. The judge stated that he imposed the 5-day 23.5 hour/day imprisonment in a maximum-security women's prison for plaintiff in order to "teach [plaintiff] a lesson" and stated that the imprisonment was a fair punishment for plaintiff's technical violation of a restrictive state-imposed protective order that neither plaintiff nor the protected party wanted[61].

65. That same month, in January of 2009, plaintiff was also scheduled to appear as a witness in the trial of State v. Katagis, in which Defendant Katagis had plead not guilty after turning himself in on the warrant one year prior.

66. Plaintiff was the only witness[62] that the State of Connecticut had in the case. There was no DNA evidence, no forensic interview, no eyewitnesses, and no other evidence at all other than the statement that Plaintiff gave to CSP Troop I Bethany in the summer of 2006.

67. Plaintiff was informed that Katagis would be taking a guilty plea and receiving, in lieu of the ten-year imprisonment he would have received if he was found guilty at trial, five years of probation and five

---

[61] The domestic violence laws, statutes, and administrative practices that exist within the state of Connecticut are biased against women, discriminatory, and allow for cruel and unusual punishments to occur without any protections of constitutional rights or equal protection.

[62] As soon as Katagis saw that plaintiff showed up to the trial and was prepared to testify, he immediately told his attorney that he wanted to cancel the trial and take the guilty plea instead.

years of a suspended sentence, and that if he had had been convicted, he would have received ten years in prison[63].

68. Katagis was sentenced on June 4th, 2009, during which the judge stated "There's not much I can say about this, this case was around for quite some time. We discussed it at great length. My major concern in this matter was really not you; it was really the young girl, the alleged victim in this matter. The dynamics of your family came into play. I knew you were going back into the house when the young girl left the house. That was done so that you could work and support the family rather than see the house go into foreclosure."

69. The Judge, the late Honorable Richard Damiani, also put it on the record that it was not until a GAL was appointed to intervene in DCF's failure to protect plaintiff and her rights as a crime victim, and he noted that "the young girl was not only victimized once with you, but she was again being victimized by our system. And I think everyone did work very hard . . . worked very hard to resolve it, and really, somehow to enumerate the traumatic impact on the young girl. And I'm glad she's graduating from high school, and I hope she goes on to college[64]. But she has quite a load to haul around with her now."

70. On June 24, 2009, plaintiff graduated from Amity Regional Senior High School in Woodbridge, CT at the age of seventeen with her high school diploma.

71. Antonellis suggested that plaintiff invite Antar to the graduation, despite his unstable relationship with plaintiff and inability to be a consistent father figure for plaintiff or any of her siblings, which plaintiff reluctantly did.

---

[63] The States Attorney John Waddock at the time repeatedly asked plaintiff what she wanted to see happen to Katagis in the case and plaintiff repeatedly said that she didn't want prison time to be part of the sentence as plaintiff wanted to ensure that the rest of her family would not become homeless if he were to be incarcerated since he was paying the mortgage.

[64] Plaintiff not only went on to college, but graduated at the top of her class with a BA in political science and is currently a 2L law student at the University of Connecticut School of law as a candidate for her JD.

72. Antar did not attend the graduation, however he did show up to the dinner afterwards where he ended up getting upset at the price of the bill which was a total of $60.00 for seven people and covered the price of three large pizzas. He did not pay for any of the tax or tip, expressed his shock at the price, and stated that he was going to the bathroom[65] after throwing the $60.00 cash on the table for the bill.

73. On June 25, 2009, plaintiff then attempted to approach Antar and requested that he provide her with money to purchase food, as she was only seventeen years old at the time and living independently in an apartment that was attached to Antar's office in East Haven, CT, and Antar had agreed to provide plaintiff was a budget of $10.00 per day for food in lieu of buying plaintiff groceries.

74. Plaintiff attempted to ask Antar for the $70.00 for the food and Antar responded by telling plaintiff that things were "going to change now" and told plaintiff that "if she wanted food she can go get a job and work" and told plaintiff that "she can get a job somewhere else and not work for him" and also informed plaintiff that she would be evicted from the apartment in ten weeks once she reached the age of eighteen, despite plaintiff having nowhere to go and no income, car, or financial support[66].

75. Plaintiff got upset with Antar and contacted the State of Connecticut Department of Children and Families care line and made a report that her father was refusing to provide her with food or water or money to purchase said necessities, and DCF contacted Defendant Antar a few days later.

76. Antar then retaliated against plaintiff for contacting DCF, and he called the East Haven Police Department and wrote a statement against plaintiff claiming that he allegedly saw plaintiff vandalizing his car days prior, despite there being no vandalism or damage to the car at that time.

---

[65] Antar never returned from the bathroom, and plaintiff began to grow suspicious because he had not returned, which led plaintiff to look in the parking lot to see if he was at his car. When plaintiff went outside, she saw Antar was attempting to leave in his car without saying goodbye and without giving her anything as a gift for her high school graduation. Plaintiff attempted to approach Antar as he was trying to leave, and he nearly ran plaintiff over with his car and sped off and went home.
[66] Antar was supposed to be taking care of plaintiff and providing her with food and shelter, as he had been her primary custodial guardian for the preceding three years, yet Antar insisted on cutting plaintiff off from all food and financial support ten weeks before her eighteenth birthday, despite being legally obligated to provide for her until a minimum of the age of eighteen.

77. The police then secured a warrant for plaintiff's arrest, and plaintiff was arrested and charged with criminal mischief by the East Haven Police Department and was held on a $1000.00 bond.

78. Antar then showed up at the police department and posted the entire $1000.00 bond in full and told plaintiff that he only called the police on her to "teach her a lesson."

79. Plaintiff then, at the age of seventeen, was forced to sleep in her car until she went back to court to ask for the protective order to be modified[67].

80. Plaintiff was arraigned in the New Haven Superior Court by Judge Richard Damiani, the same judge who had sentenced and presided over the criminal case with defendant Katagis and was once again subjected to a cruel and unusual punishment as a minor by the state of Connecticut judicial system.

81. In July of 2009, after already having posted bond and been released and attended at least two separate court appearances in the criminal mischief case, defendant Antonellis received a phone call from the New Haven Superior Court while she and plaintiff were out shopping at the mall.

82. Antonellis stated that the prosecutor from the New Haven Superior Court contacted her and told her that she needed to immediately stop what she was doing and drive to the New Haven Superior Court on 121 Elm Street in New Haven, CT, so that plaintiff could meet with her.

83. The prosecutor did not explain to Antonellis why plaintiff was being summoned to court via a phone call without any prior notice, however she complied and immediately brought plaintiff to the courthouse.

84. Upon arrival, the prosecutor presented plaintiff with an ultimatum: 1) leave the courthouse that same day with the Department of Children and Families and go directly into the custody of the State of

---

[67] Plaintiff was then told by the East Haven Police Department that, despite the fact that plaintiff resided in an attached apartment of the same building that Antar resided in, that it was still considered the same home and that she would have to find somewhere else to go since they were issuing a full no-contact protective order that barred plaintiff from being near Antar or his residence.

Connecticut and live in foster care for a minimum of ten weeks until her eighteenth birthday or 2) leave the courthouse that same day with the Department of Corrections and go directly into the custody of the DOC and live at York Correctional Institution in Niantic, CT for a minimum of ten weeks until her eighteenth birthday.

85. The prosecutor gave plaintiff no alternative option and told plaintiff she needed to give an immediate answer and decide on the spot which she preferred.

86. Plaintiff then, after having been extremely traumatized from her prior experience while in the custody of the Connecticut Department of Children and Families while living in foster care, informed the prosecutor that she would not be going back into foster care.

87. The prosecutor then told plaintiff to go into the courtroom and see the Honorable Judge Richard Damiani, who then issued another cruel and unusual punishment against plaintiff[68].

88.  Judge Damiani immediately stated that he was raising plaintiff's bond again and raised plaintiff's bond to $5,000 CASH ONLY, however he also imposed a restriction that the bond could "only be paid at the next court date" which was scheduled for three weeks away.

89. In doing so, the judge not only issued a cruel and unusual punishment without any notice or due process protections for plaintiff but did so without any scheduled court proceeding or giving plaintiff the opportunity to be heard. This also prevented plaintiff from being bonded out at all by post-dating the bond by three weeks, meaning that it was the equivalent of plaintiff being held without bail, as she had no legal option to bail out regardless of how much money she had access to.

90. This was a cruel and unusual punishment against plaintiff, as she had already been imprisoned in York

---

[68] Judge Damiani passed away several years ago so it will remain unclear if he was aware that plaintiff was the same victim in the State v Katagis matter but plaintiff was unaware that he presided over the Katagis case at the time and had no knowledge of his connection to the matter or his awareness and knowledge of the facts surrounding plaintiff and her residency status at that time.

CI six months prior during that same year as a cruel and unusual punishment in the violation of protective order case. Both times, plaintiff already bailed out and posted a bond to get out of jail upon being arrested, and both times the judges unexpectedly "raised her bond" without notice.

91. The January 2009 bond that was an ultimatum of $25,000 cash or five days in prison was an attempt at extortion of Defendant Antar. Plaintiff had informed her public defender that she brought Antar to the proceeding as he had promised that he would "get plaintiff out" in the event that her bond was raised "regardless of how high the bond would be."

92. Although Antar made this promise, he was not willing to pay $5,000.00/night for five nights to get plaintiff out of prison when the alternative was allowing her to sit in prison for five nights and get out for free afterwards.

93. The second time in July of 2009, plaintiff was still a juvenile and only seventeen years old and was being punished for not wanting to go into the care of DCF, despite it being an established fact that DCF had done a poor job of handling plaintiff's case for several years prior.

94. The $5000.00 cash only bond that could only be paid three weeks later was the same as imposing that plaintiff be held without bail[69] for three weeks.

95. Plaintiff eventually turned eighteen and experienced additional homelessness and moved around a significant number of times from the years 2009 through 2014 when plaintiff had her first child J.V. with defendant Viglione.

96. Plaintiff became pregnant with J.V. during her senior year of college while pursuing an undergraduate Bachelors of the arts in political science from Southern Connecticut State University. Plaintiff

---

[69] Plaintiff had no legal way to get out of prison and was once again forced to be incarcerated just because her parents were deemed to be unfit, and the state was failing to protect her. Plaintiff's rights have been violated as a result of systematic failures within the state of Connecticut judiciary, DOC, DCF, and any and all other involved defendants listed in this action.

graduated with her B.A. in Political Science when she was nine months pregnant with J.V. and was able to complete her undergraduate college educate prior to having her first child.

97. Plaintiff then attempted to take the LSAT in February of 2015 to pursue her lifelong dream of becoming an attorney, but ultimately did not score well due to having no actual time to devote to studying as she was raising J.V. with no assistance of childcare[70].

98. Plaintiff had a cumulative GPA from SCSU of close to a 3.875, yet plaintiff's LSAT scores were more considered "average" and did not reflect plaintiff's true academic capacity or abilities and were more the result of plaintiff not being able to study at all and taking the exam without any preparation.

99. Plaintiff decided to temporarily abandon her goal of being an attorney and decided to focus on trying to obtain full-time employment instead.

100.    Plaintiff also was in an extremely abusive domestic violence situation with defendant Viglione who subjected plaintiff to physical violence and domestic abuse before, during, and after her pregnancy with J.V.

101.    Plaintiff stayed with Viglione in spite of the abuse due to the fact that plaintiff had nowhere else to live and was unable to financially support herself on her own.

102.    Eventually, plaintiff finally called the police in April of 2016 to report the abuse after Viglione violently strangled plaintiff and threatened to murder her while in the presence of their then nineteen-month-old daughter J.V. before fleeing the scene.

103.    Viglione was arrested on strangulation charges and a protective order was put in place to protect plaintiff. Plaintiff was also able to get a temporary restraining order through the New Haven Superior Court which was ultimately extended for over a year.

---

[70] Plaintiff attempted to apply to Defendants Yale University School of Law, Quinnipiac University School of Law, and University of Connecticut School of Law in 2015 and was not admitted at any law school in the state.

104.    Viglione was prosecuted on the domestic violence charges and was convicted. Plaintiff established

that she would have sole legal and sole physical custody of J.V. as of 2016 and has maintained said

sole custody of J.V. to this day.

105.    Plaintiff was able to eventually purchase a home in December of 2017 in the Town of Orange

where she was able to provide a stable home for herself and J.V. without the financial help of a man

for the first time in her life.

106.    Plaintiff eventually met Lodice as he was a former coworker of hers and plaintiff became pregnant

with A.L. unexpectedly in September of 2018.

107.    Lodice was enraged when he learned of plaintiff's pregnancy and stated that it would be in

everyone's best interest, particularly that of his sons D.L. and S.L., if plaintiff were to abort A.L. in

lieu of going through with the pregnancy.

108.    Plaintiff and Lodice were never in a relationship and never officially lived together. Lodice made

it clear that he was not interested in any type of romantic relationship with plaintiff and that if plaintiff

insisted on keeping the baby that he would attempt to get along with plaintiff but that he would never

be interested in a relationship or marriage or anything more with plaintiff.

109.    A.L. was born in May of 2019 and the state of Connecticut initiated a support action against Lodice

as a result of A.L. and plaintiff receiving SNAP and Husky assistance through the State of Connecticut

and a court date was scheduled with the IV-D magistrate support court at New Haven Superior Court

to be heard on November 5, 2019.

110.    During this time, Lodice was also on probation as he was arrested in December of 2017 for two

counts of felony risk of injury to a minor for leaving D.L. and S.L. alone while he went out with a

former girlfriend for the day.

111.    Lodice was convicted in 2018 of reckless endangerment after taking an Alfred plea in order to

avoid going to trial on his felony risk of injury counts.

112.    Lodice was ultimately found to have substantiations of abuse/neglect with the Connecticut Department of Children and Families due to the incident in December of 2017 involving his two children with defendant Perez.

113.    Defendant Perez repeatedly made multiple statements under oath and under penalty of perjury in which she stated that Lodice was abusive toward both her and the children and that he was a domestic abuser.

114.    On October 2, 2019, Defendants Lodice and Perez appeared in New Britain Superior Court for a hearing on Defendant Perez's application for emergency ex-parte order of custody regarding concerns about Lodice's failure to properly parent their minor children defendants S.L. and D.L.

115.    In accordance with court filings in New Britain Superior Court, Perez indicated that Lodice would tell her that she could only get child support if she had sexual intercourse with him, that he would only sign for the children to get passports if she had sexual intercourse with him, and that he threatened to sue the psychiatrist who was prescribing his son ADHD medication and forced Perez to seek an emergency ex-parte custody order to avoid the children having to abruptly stop the medication that they had been on for a long-term period of time.

116.    Lodice was arrested numerous times for domestic violence offenses involving Perez and Perez's former fiancé, who Lodice regularly threatened.

117.    On numerous occasions, Lodice also secretly filmed himself having sexual intercourse with Perez and other unknown women, none of which were aware that they were being filmed or that Lodice was sharing said footage with other defendants such as Josh Lambo.

118.    Josh Lambo would also share footage and nude photographs of Defendant Jamie Hobart Lambo with Lodice, and Lodice possessed many nude photographs of Defendant Jamie Hobart Lambo on his

computer that he alleged were sent to him and shared with him by Josh Lambo[71].

119.    Lodice would regularly mock and ridicule Jamie Hobart Lambo, particularly regarding the fact

that she would regularly use her resources available as a former police officer for the Waterbury Police

Department and a state marshal and daughter of a state marshal to be able to stalk and keep tabs on

defendant Lambo who Lodice claimed was repeatedly unfaithful, including during a vacation when

Jamie Hobart Lambo forced Lambo to return to Connecticut after cloning his iCloud and stalking him

and seeing through his messages that he was going to pay a prostitute for sexual intercourse.

120.    Lodice repeatedly stated that, although he knew that Jamie Hobart Lambo disliked him due to his

negative influence on Lambo, that he chose to remain close to them and their circle due to their status

as public, state, and municipal officials and ability to assist him in any criminal, civil, or family matters

he was facing. Lodice repeatedly stated that it was Jamie Hobart Lambo, more so than Josh Lambo,

who was "well-connected" within the state and able to misuse her authority and act under color of law

to accept bribes on his behalf[72].

121.    On November 5, 2019, plaintiff and Lodice appeared for their first hearing in the IV-D magistrate

court in New Haven Superior Court regarding the State of Connecticut opening a case seeking that he

pay child support for A.L. since both plaintiff and A.L. had been receiving assistance from the state

of Connecticut in the form of SNAP benefits and HUSKY health insurance coverage.

122.    During said hearing, Lodice repeatedly committed perjury and lied under oath and maintained that,

despite his former boss providing a signed document that stated that Lodice was receiving a salary of

---

[71] Lodice also would regularly discuss the affairs of Lambo and Jamie Hobart Lambo and regularly would bring up the fact that he chooses to maintain ties with the Lambo, Hobart, Rosa, Ingala, and other associates of said families due to their involvement as employees of DOC, law enforcement, state marshals, and other connections.

[72] Lodice would regularly spend every holiday and special occasion with the Lambo/Hobart/Rosa/Ingala family, even more so than his own family, and maintained that he wished to fit in with them as he felt that the protection he could receive from their intricate connectiveness with the state was enough to make the maintaining of ties with them a big priority for him.

$70,000/year, that he claimed to only have an annual income of $12,000.00 after tax deductions which were also falsely deducted from his schedule C in an effort to commit tax evasion and fraud.

123.    Lodice then also told the court that $8,000.00 out of his $12,000.00 annual income goes to Perez for child support for S.L. and D.L., and the court stated that he would be responsible for $30.00 per week in child support obligation to plaintiff as a result of his fraudulently represented income figures.

124.    Plaintiff stated that, as a coworker and manager of the company that Lodice worked for, that she was able to obtain concrete evidence proving that Lodice had perjured himself regarding his income, and the court stated that they would have to schedule a continuance date for plaintiff and Lodice to return for a "special hearing" to determine the correct amount that should be paid for child support.

125.    On November 7, 2019, 2 days later, plaintiff and Lodice then appeared again at New Haven Superior Court again for a date in Family Court, in which plaintiff had filed another action seeking orders defining custody and visitation for A.L.

126.    Ultimately, on November 7, 2019, plaintiff and Lodice were able to reach a mutual agreement on custody, visitation, and child support which was entered in as a final order, and the case went to final judgement on that date. It was ordered that Lodice and plaintiff would share joint custody and plaintiff would have primary residency of A.L. and Lodice's visits would be "worked out with plaintiff on a week-by-week basis" due to his erratic and unpredictable work schedule and his inability to commit to a regular schedule with A.L.

127.    From November of 2019 through June of 2020, Lodice continued to try to coerce plaintiff into a being in a relationship with him and even attempted to attend coparenting and relationship therapy sessions to try to save the relationship. Ultimately, there was no saving the relationship and Lodice stated he was permanently giving up on trying to be with plaintiff on Father's day of 2020.

128.    In December of 2020, Lodice admitted that he had been having an affair with defendant Maybeck,

who was A.L.'s daycare teacher at defendant Woodbridge Child Center Inc., and was supervised by defendants Lettelier, Purcell and Moretti. Plaintiff became aware of this affair and the fact that WCC was regularly allowing Maybeck to take A.L. home without notifying the center or plaintiff.

129.   Maybeck was only eighteen years old at the time and Lodice was 37 years old. Despite the fact that Lodice was almost twenty years older than Maybeck and despite the fact that she was A.L.'s daycare teacher and was in a committed long-term relationship with another man, Lodice continued to have sexual relations with and pursue a relationship with Maybeck.

130.   Maybeck ultimately ended the sexual relationship with Lodice after she was terminated from WCC and after plaintiff removed A.L. from WCC due to the traumatic impact she suffered from the betrayal of the center and Maybeck and the safety issues with the center allowing teenage employees to transport infants and toddlers without the knowledge or consent of the parents.

131.   From January of 2020 through October of 2021, plaintiff did not send A.L. to daycare and instead spent every day with A.L. herself and would bring A.L. with her to work on days she needed to be in the office to ensure that A.L. was not being cared for in negligent situations such as the one she was exposed to with WCC.

132.   In April of 2021, Lodice started his company, defendant Whole House Remodeling Company LLC with the assistance of defendant DiCosmo providing him with a minimum of $10,000.00 in cash as an initial startup investment to start the company.

133.   Lodice deposited this money in his personal bank account and never reported it as business income.

134.   From April of 2021 through June of 2021, Lodice continued to try to beg plaintiff to be in a relationship with him, and he continued to try to bribe plaintiff and tell plaintiff he would pay her cash payments daily plus child support if she agreed to let him live with her.

135.   When plaintiff attempted to tell Lodice that she was only interested in a coparenting relationship

with him and that she did not want to continue sexual relations, Lodice became enraged and began to

abuse plaintiff even more continuously verbally and emotionally.

136.    In June of 2021, plaintiff and Lodice officially modified the order and created a schedule that they

both agreed on which was entered in as a final order of the court through a motion to approve the

agreement without a court appearance.

137.    In July of 2021, Lodice then gave plaintiff an ultimatum stating that she had two options: 1) agree

to be in a relationship with him and allow him to move back in with her in her home, or 2) Lodice

would "make sure" that he got sole legal and sole physical custody of A.L. by paying off members of

his family and friends who are state and public officials and would "make sure" that I would have to

pay *him* child support.

138.    In August of 2021, plaintiff informed Lodice that she did not wish to be in a relationship and

Lodice promised that he would take A.L. away from plaintiff permanently and that he would force

plaintiff to have to pay him child support in retaliation for plaintiff rejecting his offer to be in a sexual

cohabiting relationship.

139.    From March of 2020 through September of 2021, Lodice also collected pandemic unemployment

compensation insurance while also acting as a full-time owner/operator of Whole House Remodeling

Company LLC and received a minimum of $800.00 in weekly unemployment income from the

department of labor which was funded by federal funding due to emergency COVID relief.

140.    Lodice committed unemployment fraud and fraudulently collected unemployment benefits, SNAP

food stamp assistance, and husky medical from defendant Access Health International Inc., all while

the state of Connecticut, DSS, and CCSES ignored the fact that he had multiple bank accounts with

various assets and that he was operating a lucrative construction operation in his name.

141.    New Haven child support enforcement services was taking plaintiff's child support directly out of

Lodice's unemployment benefit each week. Plaintiff only received child support in 2021 from that which was directly a result of an income withholding from the DOL and CCSES. Lodice paid $0 willingly of his court ordered $120.00 per week child support obligation and $0 willingly of his 50% childcare obligation per court order during this time.

142.    A.L. attended defendant Tiny But Mighty Childcare from October of 2021 until December 31, 2021, when defendant Alexis Stamos stated that unless A.L. was able to receive a flu shot prior to December 31,2021, that she would be forcibly removed from the center due to the unconstitutional state law that states that children under the age of five must get an annual flu shot in order to attend care.

143.    Defendant Alexis Stamos stated that if A.L. did not receive this vaccine prior to the end of 2021 that she would be terminated from Tiny but Mighty Childcare. Defendant Preferred Pediatrics stated that they had no flu vaccines in stock and stated that the soonest that A.L. could get the vaccine was in March of 2022.

144.    As such, plaintiff was forced to remove A.L. from care at Tiny but Mighty due to the ultimatum of vaccination or termination that Stamos provided plaintiff.

145.    Defendant Lodice then committed perjury and stated under oath that Stamos terminated A.L. due to plaintiff allegedly "picking her up late" and stated that the vaccine was not the reason.

146.    Lodice testified under oath under penalty of perjury that Stamos terminated A.L. from the center due to plaintiff allegedly being late, when this was never once stated as a reason by Stamos to plaintiff or risk of being potentially discharged from the center.

147.    On December 28, 2021, Stamos stated "I would love to keep her but state regulations are what runs my business and having her in care without a flu vaccine is unfortunately not in compliance. I have reached out to my licensor and she told me I need to comply with the regulations and I cannot

accept any unvaccinated kiddos in care."

148.   In spite of this, Lodice testified under penalty of perjury that Stamos terminated the relationship between A.L. and Tiny But Mighty Childcare due to plaintiff and due to plaintiff's alleged tardiness.

149.   In December of 2021, plaintiff also filed a motion for contempt against Lodice in the New Haven Superior Court due to his nonpayment of child support and due to his failure to comply with the court-ordered agreement that they had signed six months prior that was entered in as an order. A court date was set for February of 2022.

150.   Upon receiving notice that plaintiff had filed said contempt motion against Lodice, Lodice then proceeded to threaten plaintiff and tell her that he would no longer be paying any of the court ordered support or childcare to plaintiff and stated that he would instead be planning on taking sole custody of A.L. and removing his child support obligation and instead make it so plaintiff would "have to pay him child support."

151.   Lodice then did not pay any child support at all from December of 2021 until June of 2022.

152.   The child support IV-D magistrate court date that was originally scheduled for February of 2022 was continued until March of 2022 and the family court date was continued until April of 2022.

153.   On March 9, 2022, Lodice appeared in front of Defendant Aguilar and again lied under oath and committed perjury and claimed that plaintiff had "abandoned" their then 2-year-old daughter A.L. Lodice brought A.L. with him to the court date, and the court allowed him to proceed with the minor A.L. present, despite plaintiff personally witness the court instruct litigants that minor children were not allowed in court proceedings.

154.   Aguilar made an exception for Lodice. Aguilar also gave Lodice legal advice on the record. She asked him if he wanted sole custody and instructed him as to which motions to file and what to in order to secure that and then continued the case until June 1, 2022.

155.    Plaintiff was approximately 10-15 min late to said hearing as plaintiff had an issue finding parking

in order to attend court in New Haven Superior Court[73], which has no parking and is in the middle of

a busy downtown city, unlike the Milford Superior Court[74] which is the proper court for plaintiff's JD.

156.    After Lodice lied and told defendant Aguilar that plaintiff abandoned A.L., plaintiff attempted to

tell the judicial marshal that she was there for the hearing and explained that she had the parking issue,

but Aguilar instead scolded plaintiff and told her that the hearing starts at the exact minute it is

scheduled for, and stated that she would have to wait three more months before the case could be

continued and stated that she intentionally continued it to June 1, 2022 so that they could first "get an

update from what happens in family court."

157.    On April 8, 2022, plaintiff appeared in front of Defendant Grossman for the first time ever, for a

hearing on an application for emergency ex-parte custody.

158.    Plaintiff filed said motion in February, however the motion was not scheduled to be heard until

April 8th, 2022, despite it being filed as an emergency ex-parte motion and despite the law stating that

said motions needed to be heard *no later than fourteen days after the application is filed.*

159.    On April 8, 2022, plaintiff and Lodice appeared in front of Grossman and plaintiff's rights were

violated completely[75] and absolutely.

160.    On the same day, immediately after court ended, plaintiff then attempted to ask Lodice to

reasonably work with her and pick up A.L. from defendant Antonellis's house instead of meeting at a

gas station as it said in the order from June of 2021.

161.    Lodice had not met at that gas station in months, but as a form of abuse and coercive control he

---

[73] Plaintiff's rights have been repeatedly violated consistently without any sign of stopping in New Haven.

[74] Plaintiff had tried to transfer her cases to Milford on numerous occasions and was denied this right. Plaintiff has been repeatedly told that any and all of her cases can only be heard in New Haven JD, despite Lodice residing in Waterbury JD and plaintiff residing in the Ansonia-Milford JD.

[75] See transcript from 4/8/22 hearing in NNH-FA-19-5046828-S

would pick and choose when to insist on meeting at "the gas station or nothing" and would say that if

plaintiff was not at gas station that he would then file that she abandoned the child and take A.L. away.

162.    Lodice refused to make this reasonable modification to the pick-up location and instead stated that

he would either meet plaintiff at the gas station or not at all and if plaintiff wasn't at the gas station

that he would not be taking A.L. for his court-ordered scheduled weekend visitation.

163.    Lodice did this despite plaintiff repeatedly telling him that she had a work appointment in a

different town at the same time and that A.L. was with Antonellis and not plaintiff.

164.    Plaintiff then contacted Defendant New Haven Police Department and attempted to document the

issue. Lodice then wrote a statement against plaintiff in which he also lied under oath and claimed that

plaintiff was doing and saying things that did not occur.

165.    Defendant Aviles of the New Haven Police Department then coerced plaintiff, gave her legal

advice, and instructed her to write a statement but specifically told plaintiff to **_only include_**

**_information about the family court issue and not to include anything else about threats or anything_**

**_else that I had already told him verbally._**

166.    Plaintiff followed these instructions and did as she was told by Aviles.

167.    On April 11, 2022, Lodice then began to taunt and laugh at plaintiff during an exchange of A.L.

stating that plaintiff had a "warrant for her arrest" and that he "couldn't wait for plaintiff to be arrested

on the warrant" and that he "hoped that plaintiff would get locked up in front of him during their

family court proceeding" so that he could "watch and laugh" and repeatedly said how it would be "so

great."

168.    Plaintiff attempted to ask Lodice why he was insisting that she had a warrant and Lodice stated

that he would not give plaintiff anymore information. Plaintiff attempted to contact the New Haven

Police Department who stated that there was no such warrant.

169.   Plaintiff then attended a proceeding with Lodice the next day in New Haven Superior Court with defendant Price-Boreland. During said proceeding, Lodice and plaintiff met with family relations, signed an agreement, and agreed to modify their parenting plan/agreement.

170.   Price-Boreland stated that plaintiff would be permitted to have a hearing scheduled on plaintiff's motion to transfer the case to the Ansonia-Milford JD, however she then denied plaintiff's motion without giving plaintiff said hearing or scheduling it.

171.   Price-Boreland ordered that the parties were to only have contact within the OurFamilyWizard app and stated that neither party was to make any disparaging statements about the other party during said calls with A.L.

172.   Plaintiff was then arrested several weeks later on a warrant from the New Haven Police Department and charged with "breach of peace" and "false reporting of an incident" and, upon the advisement of Defendant Raniel Smith, retained defendant Zingaro, Cretella, & Rasile LLC after speaking with Defendant Gene Zingaro who then referred the case to Defendant Don Cretella.

173.   Defendant Cretella was able to get the case "nolled" after plaintiff successfully completed an anger management program that had been pre-approved by the New Haven Superior Court at 121 Elm street, in New Haven, CT.

174.   The parties then appeared on June 1, 2022 for the continued IV-D magistrate contempt proceeding in which defendant New Haven Child Support Enforcement Services was also present.

175.   Lodice was found in contempt[76] of court on June 1, 2022, after a hearing in which plaintiff was able to successfully prove that Lodice had lied under oath, misrepresented his income and finances, and that he was clearly capable of paying the order but still willingly chose not to pay.

---

[76] Lodice stated that he "did not have the money" but was still somehow able to pay the full amount and get released from prison after less than 24 hours in custody.

176.    A purge was set on June 1, 2022, and Lodice was taken into the custody of the Department of Corrections. Lodice was told that he would have to pay approximately $2200.00 to be released from prison.

177.    Immediately upon being taken by the judicial marshals, Lodice then approached one of the judicial marshals and attempted to solicit business from him. Lodice gave the John Doe judicial marshal a business card for his business Whole House Remodeling Company LLC and said judicial marshal immediately contacted plaintiff and informed her of such.

178.    Lodice never willingly paid anything else for the remainder of 2022 absent the purge and other involuntary interception of his state and federal tax returns.

179.    Lodice also continued to engage in money laundering, racketeering, bribery, fraud, wire fraud, tax evasion, and other crimes under federal and state law.

180.    Lodice continued to maintain that his connections with multiple other defendants named in this action gave him security and the ability to "pay people off" to "force them to do what he wanted" and to "make sure plaintiff never saw A.L. or received any child support payments from him again."

181.    Lodice continued to tell plaintiff that if she resumed having sexual intercourse with him on a regular basis that he would "call off all court motions" but stated that if plaintiff refused, that he would "move forward with causing plaintiff to lose everything."

182.    Lodice also colluded with defendant Elizabeth Protzman, who also called the Department of Children and Families on plaintiff in 2022 and made a false report in an effort to harass plaintiff and to try to defame and slander plaintiff.

183.    The report that Protzman made was unsubstantiated after an investigation by DCF.

184.    Lodice also colluded with defendant Andrew Marshall in 2021, who also called the Department of Children and Families on plaintiff and made a false report in an effort to harass plaintiff and try to

defame and slander plaintiff.

185.    Both Marshall and Protzman followed Lodice's instructions and made false reports to DCF to try to get plaintiff to lose A.L. and J.V.

186.    Lodice also made his own false report to DCF in 2021 as well. All three DCF reports that were made against plaintiff by Marshall, Lodice, and Protzman were all dismissed and found to be unsubstantiated.

187.    DCF consistently stated that they had no concerns of abuse or neglect by plaintiff and affirmed their opinion that plaintiff was entirely fit to parent both A.L. and J.V.

188.    On June 28, 2022, plaintiff appeared for the second time ever in front of Defendant Grossman for a hearing on "pending motions" which included multiple motions for modification and contempt that had been pending and all scheduled to be heard on the same date.

189.    Defendant Grossman showed extreme levels of bias during said hearing and denied plaintiff her procedural due process rights and rights under the ADA and rights as one not represented by counsel.

190.    Plaintiff attempted to state on the record that she needed additional time to hire adequate counsel, but Grossman denied plaintiff that right and insisted that plaintiff does not have the right to an attorney in a family proceeding.

191.    After this proceeding, plaintiff immediately filed a motion for disqualification of judicial authority, as well as a complaint against Grossman with the defendant Judicial Review Council.

192.    After filing said complaints, Grossman then began to retaliate against plaintiff and attempt to violate plaintiff's rights further.

193.    In August of 2022, after defendant Cretella had gotten the criminal case nolled for plaintiff, plaintiff had a consultation with Cretella regarding the possibility of him representing plaintiff in the family matter now that the criminal matter had been resolved in plaintiff's favor.

194.   Cretella stated that he was an experienced attorney who had been doing family law for "more than twenty years" and stated that he would "guarantee" that plaintiff would "never lose custody" and stated that he could "guarantee" that he could also get attorneys fees, a child support increase, and fix loopholes in the schedule with plaintiff and Lodice.

195.   Cretella stated that the only way that he would represent plaintiff was if plaintiff paid him a flat rate in full at the time of signing the retainer for $15,000.00.

196.   Cretella stated that everything would be included through a trial and that he would guarantee the aforementioned resolutions.

197.   Cretella stated that he could not guarantee that plaintiff could gain sole legal and sole physical custody of A.L. like she desired, however stated he could guarantee that he could maintain her having primary residency and joint custody and resolve the issues regarding loopholes in the schedule, attorneys fees, child support, and arrears.

198.   Plaintiff, who as a single mother of two that had not received child support in months, hired Cretella and put the entire amount of the retainer on a credit card, as plaintiff did not have the funds at the time.

199.   As soon as Cretella got paid, he immediately started to make it clear that he was not willing to put any effort into actually helping plaintiff or doing anything that he said he would do. Cretella essentially committed fraud and extorted plaintiff for the $15,000.00 knowing plaintiff was afraid of what Grossman, who was showing clear bias, would do.

200.   Cretella told plaintiff that "complain or asking Grossman to recuse herself would only cause her to retaliate further" and stated that he has known her for more than twenty years, teaches as an adjunct professor with her at Quinnipiac University School of Law, and that he attended law school with her at QU School of Law.

201.   Cretella stated that plaintiff would "be fine with Grossman" and stated he would be withdrawing the recusal motion and withdrawing plaintiff's motion to transfer.

202.   Plaintiff then appeared again in the magistrate court in front of defendant Aguilar who then, at the request of Cretella, chose not to hold Lodice in contempt for failing to pay any child support from June 1st of 2022 until September 1st of 2022.

203.   Cretella then served Lodice with a deposition notice and a request for production of documents in discovery and the matter was continued to November of 2022.

204.   In October of 2022, A.L. began making disclosures of sexual abuse and implicated that D.L. and S.L. were the perpetrators while she was in the care of Lodice during his parenting time.

205.   Upon advisement of defendant Lancia Blatchley who instructed plaintiff to contact DCF, plaintiff reported said abuse to DCF.

206.   Defendant Yale Child Abuse Clinic conducted a "forensic interview" in which they immediately closed the police investigation and ended the interview after A.L. stated that she did not have any private parts.

207.   Plaintiff was told that the interviewer is "not allowed to ask the child any leading questions" during this interview and that the "interview is the same for all children ages of three through seventeen"

208.   After this, plaintiff was told she had no choice to resume sending A.L. to Lodice's home each weekend for unsupervised visitation.

209.   Plaintiff followed the instructions of DCF, New Britain Police Department, and Cretella, and did as she was instructed without objecting.

210.   Cretella then marked off the motion for contempt for Lodice's nonpayment of child support as well as the motion for modification to increase child support and told plaintiff that they would be continued to a later date, but in actuality marked them off entirely.

211.     Cretella also attempted to file for a motion for a GAL to be appointed to represent A.L. and cited the fact that plaintiff had attempted to get A.L. services through defendant BHcare which were blocked by Lodice as a reason for the court to intervene.

212.     Defendant Preferred Pediatrics also provided a letter stating the medical necessity of A.L. receiving treatment through a mental health professional.

213.     On December 1, 2022, Plaintiff then appeared with Cretella in front of Grossman again. Lodice failed to appear but nobody held it against him in any way.

214.     Grossman then ordered that plaintiff had to sign medical protected releases to her mental health and A.L.'s mental health and DCF records and stated plaintiff would be punished if she did not comply.

215.     Plaintiff did as ordered, and was thorough and made sure to include any and all providers she had seen in the five years immediately preceding that date. Lodice was told by defendant Dennis Reilly that he was required to also comply, yet he refused to sign releases.

216.     Lodice was not held accountable for refusing to show up for mediation, refusing to sign releases, or refusing to comply with request for production as served.

217.     Neither Defendant Grossman nor Defendant Griffin held Lodice accountable for this.

218.     Lodice also continued not to pay child support. No judge in New Haven Superior Court ever once held him accountable for this.

219.     Defendant Gregory Gallo, who was renting Lodice an apartment during this time, continued to provide Lodice with off the record legal advice and use his connections with individuals such as Pellegrino, Grossman, Cretella, and other named defendants to allow Lodice to initiate a transaction in which Grossman "sold custody of A.L." to Lodice.

220.     On January 27, 2023, Lodice was arrested by the Orange Police Department on a warrant for harassment in the second degree based on a statement that plaintiff had written in November of 2022.

221.    Lodice posted bond and was released with conditions that stated he was not to contact, assault, interfere with, stalk, harass, abuse, follow, or harm plaintiff in any way.

222.    After Lodice was released, plaintiff was contacted by defendant Fernandes who informed plaintiff that Lodice indicated that he would have defendant Karen Bowers transport A.L. to Saint Barbara Greek Orthodox Church on January 29, 2023 so she could attend her mandatory religious education class pursuant to the family court order that was issued by defendant Grossman.

223.    On January 29, 2023, Lodice violated the order by interfering with plaintiff and refusing to bring A.L. to her religious education class at Saint Barbara Greek Orthodox Church in Orange, CT.

224.    Plaintiff was one of the Sunday School teachers for defendant Saint Barbara at this time, and plaintiff was also A.L.'s teacher and was assigned as one of the teachers to the three-year-old preschool class.

225.    At this time, there was a court order by defendant Grossman in effect that stated that Lodice was "required to bring A.L. to Sunday School and special religious events."

226.    After Lodice never showed up and did not bring A.L. or arrange for Bowers to bring A.L. to church, plaintiff then went to the Orange Police Department and made a report regarding the violation of conditions of release with Defendant Officer Lane of the Orange Police Department.

227.    Defendant Lane took plaintiff's written statement and issued a case number of 23-3324. Defendant Lane refused to make an arrest against Lodice and instead stated that he would simply call Lodice and ask him why he did not follow the court order and why he interfered with plaintiff in direct violation of his conditions of release.

228.    Ultimately, defendant Lane refused to do anything and did not make an arrest against Lodice, despite there being probable cause and clear evidence that Lodice violated the conditions of his release.

229.    On January 30, 2023, Lodice was arraigned at the Derby court and a formal protective order was

issued which stated that it was a full no-contact protective order but that it allowed for Lodice to "contact the plaintiff in the OurFamilyWizard app regarding the affairs and visitation of A.L" and for him to "initiate/facilitate contact with plaintiff for the purpose of contact with A.L." and that "exchange of the minor child must be pursuant to the most recent civil family order[77]."

230.    On February 1, 2023, A.L. began to make disclosures of sexual abuse. She was doing sexual motions on a stuffed animal and when plaintiff asked what she was doing, her response was "I am doing what D.L. does to me."

231.    Upon advisement of defendant Alexandra Warzocha, plaintiff then contacted DCF, who once again contacted defendant New Britain Police Department who then again assigned detective Steeves to the investigation.

232.    The New Britain Police Department, Cretella, and DCF all advised plaintiff not to send A.L. to Lodice for any of the weekend visits during the duration of the investigation. The investigation commenced on February 1, 2023, and a forensic interview was scheduled for March 3, 2023 at Yale Child Abuse Clinic.

233.    Plaintiff asked Cretella if he was going to be filing an emergency ex-parte motion to stop Lodice's visits and Cretella stated that it was "not necessary" and stated that "no judge would ever hold you in contempt for keeping your child safe."

234.    Lodice continued to violate the protective order on numerous occasions beginning in February 2023 and running through July 24, 2023. Plaintiff reported over 100 violations of the protective order to multiple departments with solid proof in the form of video and audio recordings and witnesses. No police department was willing to arrest Lodice.

---

[77] The court put these terms in effect in contrast to what plaintiff had requested which was that exchanges be conducted by a third party and that the communication be strictly limited to the app.

235.   In February of 2023, plaintiff attempted to contact her minor daughter A.L. while she was with Defendant Lodice, and Lodice repeatedly spoke to plaintiff on the phone in direct violation of the criminal order of protection that stated he was to have no contact with plaintiff outside of the OurFamilyWizard app.

236.   Lodice violated this protective order numerous times, including on one occasion[78] when plaintiff was in Middlebury, CT.

237.   When Plaintiff called to follow up afterwards, she was told by the Middlebury Police Department that the states attorney in Waterbury Superior Court stated that, despite plaintiff providing the police with a recording of Lodice violating the no-contact order, the court claimed there "wasn't any probable cause" to make an arrest and refused to charge Lodice[79] with the felony violation of protective order charge.

238.   On June 28, 2023, plaintiff attempted to go to the FBI office in New Haven, CT and gave the FBI a statement about criminal activity involving Lodice. Plaintiff informed the FBI that she would also be able to produce a flash drive with the evidence to back up the claims in the statement and told them that the statement was something she wished them to review in the meantime.

239.   The FBI agent that plaintiff spoke to informed plaintiff that she could come back when she had the chance to meet with them to discuss and provide evidence and indicated that the best time to come was around 12:00PM-1:00PM in the afternoon.

240.   Plaintiff indicated that she would try to return and provided the agents with her phone number and

---

[78] Plaintiff recorded Lodice speaking to her on the call and went to the Middlebury Police Department and spoke to Defendant Gusto who stated that he would be applying for a warrant for Lodice's arrest for the violation of protective order. A report was made under case number 23-27033.

[79] This was part of a pattern where Lodice continued to violate the terms of the no-contact order but the police refused to make an arrest. This is an example of the discriminatory treatment that plaintiff has been experiencing when dealing with the police and asking for them to enforce the protective order.

asked that they take the time to review her statement which was detailed and lengthy.

241.    Plaintiff did not have the opportunity to return and never heard back from the FBI regarding the information that she did provide despite plaintiff informing them that there was a substantial amount of information in the complaint that had never before been reported to any law enforcement agency.

242.    From June 28, 2023, through July 24, 2023, Lodice violated the full no-contact protective order more than seventy times, all of which plaintiff recorded on video and audio. Plaintiff attempted to report this to the police on numerous occasions, but officers from the Connecticut State Police Troop I Bethany, New Britain Police Department, Waterbury Police Department, Middlebury Police Department, Wallingford Police Department, New Haven Police Department, Woodbridge Police Department, and Milford Police Department all refused to arrest Lodice for violating the protective order.

243.    On July 24,2023, after defendants Bellucci, Jones, Hillis, Barry, DeLeo, Grossman, and Lodice all conspired together to violate plaintiff's rights as a crime victim under state and federal law, Lodice's case was dismissed after plaintiff was denied the right to be heard or to have knowledge of a prior plea deal being offered to Lodice by the State.

244.    Plaintiff received an email from Hillis, who was not representing her as the victim in the State v. Lodice matter, who attempted to intimidate and coerce plaintiff into "not objecting" to the state of Connecticut giving Lodice a conditional nolle for his harassment charge.

245.    Hillis told plaintiff, in an effort to intimidate her, that he "strongly suggested that she did not object to this" and stated that if plaintiff did that then maybe "she could ask the state to give her similar treatment in return in the very near future."

246.    Plaintiff never authorized Hillis to be involved in the State v Lodice case of which she was the victim, nor did she authorize him to attend in lieu of herself at the sentencing hearing which was never

announced as a sentencing hearing.

247. Plaintiff was left completely in the dark and rather than help plaintiff, Hillis made ex-parte secret arrangements and deals with defendants Jones, Bellucci, and Barry in order to secure a full dismissal of charges for Lodice.

248. Lodice showed the court order that Grossman had written to Barry and she stated that, as a result of the order that Grossman imposed that completely slandered plaintiff, that she no longer was going to let plaintiff be a witness and stated that she "would not put plaintiff on the stand as a witness" and stated that she was calling plaintiff's credibility into question.

249. As such, rather than issue a full nolle, the state of Connecticut completely dismissed Lodice's case, despite him having a long history of violent crime and criminal convictions involving defendants Perez, D.L., and S.L.

250. On July 25, 2023, plaintiff contacted the Orange Police Department to report that Defendant Lodice was continuing to harass her during phone calls with her minor child A.L.

251. Plaintiff supplied defendant Fernandes of the Orange Police Department with video evidence of the phone call in which Lodice attempted to beg plaintiff to speak to him, instructing plaintiff to "not be a child" and asking plaintiff to "just talk to him" repeatedly.

252. Lodice did this while also knowing that there was a protective order in effect that barred plaintiff from having any contact with her outside of the OurFamilyWizard app. Plaintiff told Fernandes that she wished to press charges against Lodice for harassment and Fernandes told plaintiff that the case number would be 23-23037.

253. Plaintiff asked Fernandes if he agreed that if plaintiff responded to any of Lodice's taunts during the call that it would be considered a violation of the protective order and Fernandes agreed.

254. Plaintiff then asked Fernandes why, when she had made numerous statements to the Orange Police

Department over the immediately preceding six months and supplied video evidence of Lodice speaking to her during calls, was he not arrested or charged with a felony violation of protective order charge.

255.   Fernandes then claimed not to know why and stated that he thought the order was different at the time, however the order was exactly the same. When it was imposed on Lodice, the Orange Police department said he could speak to me as much as wanted in person or on the phone, so long as it was about our child.

256.   The Orange Police also told plaintiff that if she did the same, she would be arrested for a felony charge, which is a clear example of the discriminatory, misogynistic attitude that exists within the Town of Orange and the Orange Police Department.

257.   The Orange Police Department fails to properly train their officers and the Town of Orange, and first selectman James Zeoli fail to ensure that the public is safe from emotional and physical harm and threats such as domestic violence as defined under state and federal law.

258.    On August 30, 2023, plaintiff attempted to call the Milford Superior Court to inquire whether or not her filing was received via fax and spoke to Defendant Clerk Magdala who claimed that the court "doesn't confirm faxes" and claimed that she was unable to confirm whether or not plaintiff's filing was received via fax[80].

259.   Plaintiff then asked Magdala to transfer her to someone who was in the Milford clerk's office and Magdala gave plaintiff an extremely difficult time and put plaintiff on hold and demanded that she provide the docket number first rather than just transferring plaintiff to the office like she requested.

260.   On August 31, 2023, plaintiff attempted to contact the Derby GA court clerk's office and spoke to

---

[80] This was in spite of the fact that plaintiff had already received a fax confirmation for a different filing on the same day and had received fax confirmations from the court on numerous past occasions, as well.

Defendant Linda Doe. Defendant Clerk Linda refused to provide plaintiff with her last name and claimed that there was no supervisor available or present to speak with plaintiff regarding plaintiff's concerns.

261.    Defendant Clerk Linda Doe then proceeded to give plaintiff faulty legal advice, and advised plaintiff not to file an appearance in the case, was extremely hostile and rude to plaintiff, and claimed that plaintiff's motions had not been received by the court, despite plaintiff receiving confirmation that they had[81].

262.    On Sunday October 8th, 2023, the Defendant Matthew Lodice was arrested and charged with felony risk of injury to a minor and resisting arrest/interfering with an officer for his failure to comply with a wellness check on the minor child A.L..[82]

263.    The Defendant Karen Bowers fraudulently forged documents to the hospital stating that she was the "legal guardian" of the minor child A.L., despite her having no legal rights, visitation, or custody with the child.

264.    The actions of all of the defendants combined allowed for the minor child A.L. to be then taken in for medical treatments without plaintiff's knowledge or consent, all of which plaintiff is still waiting to receive records on as plaintiff now has to prove to the defendant Saint Mary's Hospital that she is in fact the legal guardian of her child.

265.    On October 18th, 2023, plaintiff received a phone call from the Suspected Child Abuse Network of Hartford Children's Hospital requesting that an appointment be made for A.L. to come in for an appointment based on the incidents of October 8th, 2023.

---

[81] This is characteristic of the ongoing bias, unequal treatment, and other negative experiences that plaintiff has encountered by the defendants, especially when dealing with those working within the state of Connecticut judicial branch.

[82] The Defendant Lodice was taken into police custody and nobody from DCF, The Waterbury Police Department, or any of its third-party vendors, employees, or other associated state actors or employees of Trinity Healthcare/Saint Mary's hospital ever contacted plaintiff.

266.   Plaintiff scheduled said appointment for A.L. and then contacted Defendant Preferred Pediatrics in order to follow up to inquire when A.L. was scheduled to be coming in for a physical appointment for her annual checkup that was six months past-due.

267.   Defendant Vanessa from Preferred Pediatrics confirmed that A.L. had an appointment that same day of October 18th at 11:30AM.

268.   Plaintiff informed Vanessa that she planned to attend said appointment as it is her legal right to be present at A.L.'s pediatric physical, and plaintiff had not seen A.L. in two months due to Defendant Lodice's ongoing isolation and alienation of A.L.

269.   Vanessa stated that plaintiff could come to attend said appointment and informed plaintiff that she could also obtain records that defendant Renee Casey had previously stated plaintiff could obtain. Under Connecticut state law, even a non-custodial parent has the right to obtaining medical and educational records for their child[83].

270.   Plaintiff then began to get ready and prepared some snacks, toys, and other gifts to surprise A.L. with and plaintiff was happy to hear that she could possibly get a chance to be reunited with her minor child A.L. and be present at the medical appointment.

271.   Defendant Vanessa then called plaintiff back and informed plaintiff that she contacted defendant Lodice to inform him that plaintiff would be at the appointment and defendant Lodice immediately demanded that defendant Vanessa forbid plaintiff from attending.

272.   Defendant Vanessa stated that Lodice informed her that there was a "restraining order in effect" that allegedly prevented plaintiff from being present at the appointment for A.L.

273.   Plaintiff then informed Vanessa that there was no such restraining order in effect and reiterated the fact that she legally is allowed to be at the appointment and obtain medical records for A.L.

---

[83] See C.G.S. § 46b-56(e)).

274.    Defendant Vanessa then hung up on plaintiff, and plaintiff contacted defendant Orange Police Department to call and inquire whether any new restraining order protecting A.L. was in effect.

275.    The Orange Police Department confirmed that the only order in effect was one which plaintiff was already aware of which only protected Lodice that did not state that plaintiff had to stay 100 yards away from Lodice and only stated that plaintiff could not contact Lodice outside of the parenting app OurFamilyWizard and that plaintiff could initiate/facilitate contact with Lodice for the purpose of contact with A.L. and that exchange of A.L. had to be pursuant to the "most recent civil/family order."

276.    In accordance with the terms of this protective order, there was nothing that indicated that plaintiff was to have no contact with A.L., nothing that indicated that plaintiff could not be within a certain vicinity of Lodice, and nothing that indicated that plaintiff could not be present for A.L.'s scheduled appointment.

277.    Plaintiff then called Preferred Pediatrics back again and informed them that the Orange Police Department confirmed that only the aforementioned protective order that did not prevent plaintiff from having any contact or access with A.L. or being present at the appointment or obtaining medical records was in effect, and plaintiff stated that she would be coming to the appointment to see A.L. and wanted to make sure that was fine before going all the way there.

278.    Dione from Preferred Pediatrics then stated that was fine and plaintiff packed several snacks, toys, and gifts for A.L. and drove to the appointment.

279.    At 11:30AM on October 18, 2023, plaintiff attempted to walk inside the building to accompany A.L. to the appointment, and plaintiff noticed that Lodice's vehicle was nowhere in sight. Plaintiff assumed that maybe Lodice had canceled or rescheduled the appointment upon learning that plaintiff was going to be there.

280.    Plaintiff attempted to enter the office of Preferred Pediatrics, and the door was locked. Plaintiff

then sat in the hallway and waited on a bench for a few minutes before seeing several other parents

walk in, go to another door, knock a few times, and then get let in.

281.    Plaintiff asked a Jane Doe employee of Preferred Pediatrics if she had to enter from that door, and

the employee stated that she would check in plaintiff and instructed plaintiff to continue to wait in the

hallway.

282.    Plaintiff was then arrested by the Milford Police Department and charged with felony violation of

protective order.

283.    The Milford Police refused to protect plaintiff's rights, used excessive force, and ridiculed and

mocked and taunted plaintiff in retaliation.

284.    Plaintiff repeatedly asked for help from numerous defendants in this action and they either denied

plaintiff help or intentionally harmed plaintiff to protect either Lodice or their own personal or

financial interests or reputations.

285.    Plaintiff was denied due process on numerous occasions, including on October 23,2023, when

Defendant Griffin refused to allow plaintiff to show evidence, did not allow plaintiff to cross-examine

Lodice, and engaged in numerous retaliatory acts, including denying plaintiff accommodations under

the ADA or VAWA.

286.    Defendant Griffin told plaintiff that it was completely reasonable for Lodice to withhold A.L. from

plaintiff for two consecutive months and it was completely reasonable for Lodice to terminate all

access and contact between plaintiff and A.L. and told plaintiff there is nothing wrong with Lodice

only giving plaintiff two days of visitation in a period of five months.

287.    Griffin stated that plaintiff has no rights and stated that, despite never being proven unfit, that

Grossman's orders gave plaintiff no rights and that Lodice was not coercively controlling or isolating

or abusing A.L. by isolating her from plaintiff and her sibling.

288.     Plaintiff has exhausted all remedies and the entire state of Connecticut and judicial system is biased against plaintiff and there will never be any appearance of an unbiased tribunal in any venue in the state of Connecticut due to plaintiff being "blacklisted" as several named defendant attorneys have claimed.

289.     Plaintiff has been told repeatedly also that now that she has filed this action that "no attorney will ever help her" and plaintiff has been denied access to ever get A.L. back.

290.     Plaintiff's rights have been grossly violated on all levels and now she is experiencing defamation, slander, and retaliation.

291.     Defendant Protzman then proceeded to slander plaintiff to others, such as Jessica Doe, who she then stated lies about plaintiff in retaliation for being named in this suit.

292.     Defendant CPM and Betsy, Casey, and Jill of CPM also publicly posted stating that they were not supporting plaintiff.

293.     Plaintiff asked every non-profit listed in this action for help. Collectively they have received billions yet not one was willing or able to help plaintiff. The same goes for the courts and DCF and all other defendants.

294.     The policies and procedures and practices implemented and utilized within the State of Connecticut does not protect children, encourages the likelihood of children continuing to suffer from abuse and neglect, and continues to misuse federal funding incentives. DCF fails to adhere to guidelines set forth in federal laws such as CAPTA and VAWA and other federal laws which mandate their participation and involvement in cases that include investigations into the welfare of children[84].

---

[84] In spite of the defendant Lodice being a registrant on the DCF abuse and neglect registry for substantiations of neglect and abuse involving defendants D.L. and S.L., and despite his long history of violent crime and domestic violence, he was only released with a $1500.00 bond and as soon as he got out he proceeded to threaten to "have plaintiff arrested" if she ever tried to contact him, defendant Karen Bowers, or A.L. again.

295.   Defendant Grossman modified[85] plaintiff's custody/access/visitation agreement on 5/25/23 after

denying plaintiff her right to be sworn in, right to due process, right to counsel, right to cross-examine

the defendant, and right to speak and show evidence, and entered in an order that grants plaintiff no

"actual parenting time," i.e., no "care, custody and control[86]" of her child A.L. while also forcibly

separating A.L. and J.V. from each other and terminating their sibling relationship[87].

296.   Defendant Lodice has even gone so far as to inform his extended family members that the same

power can be conferred on to them at his command[88].

297.   Plaintiff has **never had her parental rights terminated, never had her legal guardianship**

**terminated, and has always been the biological mother, primary caregiver, and legal guardian of**

**her minor child A.L.** In spite of this, the State of Connecticut Judicial System, Defendant judges, and

other defendants have all conspired to continue to violate plaintiff's right to the care, custody,

---

[85] Plaintiff has not seen A.L. in 8 weeks straight, and prior to that only saw her for less than 2 total days in a period of 20 straight weeks. Plaintiff is considered to be a "fit" parent and has sole legal and sole physical custody of her minor daughter J.V. and has had said sole custody since 2016.

[86] See *Troxel v. Granville,* 530 U.S. 57(2000). Troxel v. Granville, 530 U.S. 57 (2000), was a significant case in the United States Supreme Court that dealt with the rights of parents to direct the upbringing of their children, specifically in the context of grandparent visitation rights. The case involved a Washington State statute that allowed any person to petition a court for visitation rights at any time and authorized the court to grant such visitation rights whenever visitation may serve the best interest of the child. The grandparents of two minor children petitioned for visitation rights under this statute, against the wishes of the children's mother, who was their sole legal parent. The mother did not oppose visitation entirely, but wanted to limit the amount of visitation. The Supreme Court held that the Washington statute was unconstitutional because it infringed on the fundamental right of parents to make decisions concerning the care, custody, and control of their children. The Court recognized that parents have a fundamental right to make decisions concerning the rearing of their children, and that the Due Process Clause of the Fourteenth Amendment protects this right. Justice O'Connor, writing for the plurality, stated that "the interest of parents in the care, custody, and control of their children - is perhaps the oldest of the fundamental liberty interests recognized by this Court." The Court emphasized the importance of deferring to parental decisions and providing significant protection for parental rights. The Troxel decision underscored the fundamental nature of parental rights but also acknowledged that states have a role in protecting the health and well-being of children, and that third parties may sometimes have interests in a child's well-being. However, any law that allows a court to override parental decisions must not do so lightly, and must give significant weight to the parents' choices. It is important to note that the decision did not establish a specific test for evaluating parental rights claims, and the justices wrote multiple concurring opinions expressing different views on how such cases should be analyzed. The decision left many questions unanswered, and the legal landscape regarding third-party visitation rights and parental rights continues to evolve.

[87] Plaintiff has not been able to have any contact with A.L. since 10/8/23, as Defendant Lodice, who claims that his official capacity and state authority comes from Defendant Grossman, says that he has the authority and power to terminate any and all contact, access, and visitation between plaintiff and A.L.

[88] Defendant Lodice instructed Karen Bowers to lie and say she was the legal guardian of A.L., and both Lodice and Bowers told the Waterbury Department Officer Seeger that plaintiff allegedly had "no legal rights" and was "not the guardian" of A.L.

education, and control of her minor daughter. Plaintiff's rights were never terminated. Plaintiff was never proved unfit[89]. Plaintiff has sole legal and sole physical custody of her 9-year-old child and has never had any substantiations of abuse or neglect.

298.     One of the biggest aspects of the RICO scheme is that the standard of proof in family court is a preponderance of the evidence standard, and the statutes on the "Best interest of the Child" standard in the State of Connecticut are unconstitutional.

299.     A big part of the scheme[90] is that the state, and all of its associated non-profit organizations and other tax-exempt entities, receive billions of dollars every year from the federal government, and many times they deny individuals like plaintiff any access[91] to the law at all.

300.     Not only did Defendant Grossman violate every single one of plaintiff and her minor children's rights, but she did so strategically, in a targeted, orchestrated method that involved many of the defendants in this action and involved financial incentives offered by Defendant Lodice and Defendant Whole House Remodeling Company LLC, with the assistance of his strong connections with individuals such as Defendants Gallo, Lambo, and Jamie.

301.     Furthermore, the DSS and CCSES fail to comply[92] with federal laws that mandate them to collect child support from noncustodial parents and to enforce orders for failure to pay, which allows them to continue to receive federal funding without actually using any of the money to help people obtain their

---

[89] Defendant Lodice has several substantiations of abuse, neglect, and criminal convictions, however the fact that he has now been charged with his third felony risk of injury to a minor charge is still not enough for the courts to allow plaintiff any access at all or any contact at all with her minor child.

[90] The Memorandum of Understanding that the State of Connecticut has signed, as well as many of their administrative rules and policies, discriminate against mothers, women, those who are poor, and those who are uneducated or disabled. The State, and all associated defendants, have regularly and repeatedly engaged in conduct that violates the plaintiff's fundamental, constitutional, federal, and state law mandated rights.

[91] Plaintiff has only seen her minor four-year-old child for less than 2 days in 6 months, despite trying to file multiple motions for contempt, modification, emergency ex parte custody, motion to reargue. See NNH-FA-19-5046828S.

[92] CCSES discriminates and violates the equal protection and due process rights of recipients in that only those who have jobs "on the books" get the orders enforced, which creates an incentive for individuals such as defendants Antar and Lodice to avoid working conventional jobs and to instead work in self-employment in an effort to further commit fraud, embezzlement, tax evasion, and evasion of child support duties, all of which amount to obstruction of justice.

unpaid support[93].

302.    CCSES and DSS work in concert with one another in order to protect and further their own

interests within the RICO scheme since only recipients who are receiving cash assistance in the form

of welfare payments through the DSS are able to get full enforcement of the orders[94], including

garnishment of bank accounts.

303.    Furthermore, the defendant DSS regularly will make access difficult[95] or impossible for those

seeking services. The RICO scheme is able to continue to be furthered in that these organizations such

as DSS and Husky receive federal funding incentives and grants from the federal government which

are designed to help low-income individuals who may need the resources[96].

304.    Plaintiff is involved multiple pending civil lawsuits at this time including in the Superior Court for

Juvenile Matters in Waterbury, CT regarding a petition for termination of parental rights of the

Defendant Lodice, a child support magistrate IV-D support suit in the New Haven Magistrate Court

in New Haven, CT, a custody/visitation case in the New Haven Superior Court for family matters, and

three appellate matters regarding the aforesaid suits and other related suits.

305.    Plaintiff is also involved in a pending criminal action[97] in the Derby Superior Court in Derby, CT

---

[93] For instance, the New Haven Child Support Enforcement Services stated that their policy is that even if a non-custodial parent is a business owner and has multiple business and personal bank accounts with thousands of dollars in available balances, that as long as they pay a minimum of $1.00 every 6 months, then NHCSES will not take any action to garnish said parent's bank account for the arrears. However, this is unconstitutional in that it violates equal protection since those who have child support orders against those who are not self-employed are able to get wage executions implemented by CCSES.

[94] CCSES will garnish bank accounts and seize assets if the money is owed to the State of Connecticut, but if the money is owed to an individual who is not receiving cash assistance, CCSES does nothing to enforce the order, in direct violation of federal laws and incentives which fund their very existence. This is a RICO scheme which allows them to do little to no work and refuse to collect payments unless they are being directly reimbursed to the state.

[95] The regional offices often have lines out the door, with those working in the offices showing little to no interest in their jobs, which is a hallmark of the bureaucratic attitude of most employees who have the State of Connecticut as one of their employers.

[96] Not only does the State of Connecticut, by and through its agents, completely limit and create extreme obstacles and hurdles to those seeking its services, but they simultaneously further their RICO scheme by providing sizeable salaries and pensions to their employees complete with full state benefits, while many times denying indigent applicants services such as cash assistance or SNAP due to them exceeding federal poverty limits by amounts sometimes as low as $4.00.

[97] Plaintiff is involved in another pending criminal action in Milford Superior Court in Milford, CT which Plaintiff has filed to remove to the federal district court based on extreme violations of constitutional rights and an inability to enforce said rights

126- COMPLAINT FOR FRAUD, RACKETEERING, ABUSE OF PROCESS, AND CIVIL CONSPIRACY

which Plaintiff has filed to remove to the federal district court based on extreme violations of constitutional rights and an inability to enforce said rights in the state court due to the unprecedented and extraordinary nature of the circumstances surrounding the overall case and controversy[98].

306.    Defendants, by their actions[99] as officers of the court in the above-referenced case, are endangering the lives of the minor children and Plaintiffs. Specifically, the Petitioner/Father is abusive to the parties' minor child, who will do anything to maintain his control of the situation[100].

307.    Defendants were cognizant[101] and knew beyond a reasonable doubt that their actions violated Plaintiff's constitutional rights yet continued to violate said rights in an effort to silence and prevent Plaintiffs from obtaining justice[102].

308.    This lawsuit concerns the need for equal justice and fairness that is demanded by the United States Constitution[103]. Furthermore, all individuals and citizens within the State of Connecticut are

---

in the state court due to the unprecedented and extraordinary nature of the circumstances surrounding the overall case and controversy.

[98] This action arises from Defendants, acting in concert with one another, to engage in a series of overt, arbitrary, corrupt, and improper actions such as: (1) adjudicating actions without proper notice and due process for Plaintiff; (2) colluding with other court appointees and/or representatives without the Plaintiff's approval; disseminating information in a manner that places the minor children's lives in danger; (3) lending a "blind eye" to the irrefutable evidence and allegations that the minor child A.L. is in extreme danger and doing nothing to substantiate same; (4) ignoring numerous reports of the abusive father and sexual abuse allegations against the father's son D.L.; and (5) collective conspiracy and acts to systematically attempt to discredit and defame the plaintiffs in a targeted attempt at covering up this abuse.

[99] Defendants are _failing_ to allow critical evidence that will substantiate Plaintiff's claims of abuse, battery, personal assaults and psychological assaults, neglect, the allowance of sexual abuse and exposure to sexual acts, and coercive control of the minor children.

[100] In the above-referenced civil "domestic relations" case, the minor child of the parties Lodice and Plaintiff is in grave danger. Defendants simply ignore this fact and "lends a deaf ear" to Plaintiff's repeated pleas for help.

[101] Defendants are _not_ entitled to any type of "qualified immunity" from liability while performing discretionary functions because their conduct _clearly violated_ established statutory and/or constitutional rights of which a reasonable person would have known." _Harlow v. Fitzgerald,_ 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396,410 (1982).

[102] Moreover, a qualified immunity defense cannot be invoked by officials who **knew that they were violating the Constitution** (subjective bad faith), or who should have known that they were transgressing a clearly established constitutional rule (objective bad faith).

[103] Additionally, 42 U.S.C. § 1983 (1976) provides: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or uses to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. IO 403 U.S. 388 (1971) (violation of fourth amendment).

guaranteed constitutional protections under federal law[104]. These Defendants *willfully* violated federal laws[105] with impunity[106].

309.    Since Congress has not specified the damages recoverable in section 1983 and Bivens litigation, the courts have drawn upon the common law of damages to fashion remedies for deprivations of constitutional rights[107].

310.    Defendants have *failed* to allow[108] the Plaintiff to specifically testify about the current dangerous living situations while her minor daughter A.L. is in Defendant Lodice's custody.

311.    The associated state agencies and nonprofits and those who work and are associated with said organizations and associations systematically use their roles in order to misappropriate funding, deny citizens their rights and access to services, and continue to receive federal funding[109] that is intended to protect children, support families, and offer legal assistance, while denying individuals those services.

---

[104] In 1871, Congress created a cause of action,' now codified in 42 U.S.C. section 1983, to redress the violation of constitutional rights by persons acting under color of state law. Subsequently, in a fitting centennial celebration of section 1983's enactment, the United States Supreme Court, in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* recognized a comparable cause of action against federal officials implicit in the Constitution.

[105] *In Carey v. Piphus* [435 U.S. 247 (1978)] the Court ruled that while presumed compensatory damages may not be awarded in a section 1983 action for a violation of procedural due process, nominal and proven compensatory damages are appropriate to redress such a grievance.

[106] Plaintiff has sustained general and compensatory damages. *See, e.g., Monroe v. Pape,* 365 U.S. 167, 187 (1961). The principal purpose of general compensatory damages is to put the Plaintiff in the same position as the Plaintiff would have been but for the Defendant's breach of a legal duty. By placing the costs of breach on the wrongdoer, compensatory damages. also perform a deterrence function.

[107] Civil rights and civil liberties play an important role in today's society. It impacts our daily lives. Civil right is the basic right to be free from unequal treatment, based on a certain religion, culture, gender, disability, and race. The freedom of assembly, freedom of speech, voting rights, and equal protection under the law are examples of civil rights. These rights give all citizens the opportunity of" ...life, liberty, and the pursuit of happiness."

[108] The new generation of judges, court actors and mental health professionals too often act like accomplices to pedophile criminals, acting in accordance with each other in an overall scheme akin to "cash for kids" allowing the enablers of the accurately accused criminals they declare to be acceptable custodians of the most vulnerable of our populations.

[109] The memorandum of understanding that exists in the State of Connecticut regarding the fathers' rights initiative, Title IV-D federal funding incentives, and lack of statewide training and resources has created a dangerous situation where individuals such as the plaintiffs are being deprived of their legal rights and property.

312.   The RICO enterprise scheme, over the last two decades, has caused harm to millions of other victims and has irreparably harmed the plaintiff[110] both personally and as legal guardian of her minor children.

313.   The State of Connecticut has been misappropriating billions of dollars in federal funding for a minimum of two decades, giving rise to an outstanding level of fraud, racketeering, money laundering, abuse of process, civil conspiracy, human trafficking, extortion, and other crimes under federal and state laws[111].

314.   Specifically, Plaintiffs bring this action against the aforementioned Defendants pursuant to substantial violations to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Connecticut Code of Judicial Conduct, 42 U.S.C. § 1983, Child Abuse Prevention and Treatment Act, Title II of the American with Disabilities Act, Adoption and Safe Families Act, Keeping Children and Families Safe Act, Family Educational Rights and Privacy Act, United States Ethics Rules for Judges, The Convention Against Torture, Code of Conduct for Judges, 5th Amendment to the United States Constitution, equal protection rights under the 14th Amendment to the United States Constitution, deprivation of parental rights, Title IV-D of the Social Security Act, 1st Amendment to the United States Constitution, Freedom of Assembly, Freedom of Speech, Free Exercise, The Establishment Clause, Family First Prevention Service Act, Fostering Connections to Success and Increasing Adoptions Act, 28 U.S.C. § 1253, Victims of Child Abuse Act, False Claims Act, 31 U.S.C. 3729, U.S.C. 2461, Rules Governing the Courts of the State of Connecticut, The Violence Against Women

---

[110] Plaintiff has been repeatedly and systematically been victimized by the RICO scheme and fraud of the defendants both personally and as a victim of the RICO scheme, and as such have suffered substantial injuries to their person, business, and property as a result of being victimized by the fraudulent racketeering corrupted scheme set forth by the defendants.
[111] The State of Connecticut, and those working as its actor, vendor, agent, employee, or representatives, whether lawfully or unlawfully, has exploited the underprivileged and disadvantage people in society in order to orchestrate, implement, and perpetuate a scheme that involves fraud on massive levels and billions of dollars in federal funding.

Act, various additional violations of civil rights, various other violations of rights as crime victims, restrictions of constitutional rights, violations of fundamental unenumerated rights under the United States Constitution, due process violations, violation of various state and federal criminal statutes, and otherwise malfeasance acting under the color of law[112] by either direct, indirect, or through association and conspiracy and other applicable state and federal laws. There is no adequate remedy by appeal or other action that will ensure that the Plaintiff's constitutional rights are protected in this matter. The plaintiff also has uncovered a series of unconstitutional practices, policies, laws, and/or statutes that need careful judicial analysis and review to answer unprecedented and unclear questions of law involving fundamental rights which will significantly impact the public in a widespread capacity.

315.    In furtherance of the RICO scheme and their own personal, social, and financial gains, the Defendants, in conspiracy and in conjunction with each other, have deliberately and repeatedly acted under the color of law while annihilating the Plaintiffs' right to due process defined by the Fifth, First, and Fourteenth Amendments of the United States Constitution. This Complaint will affirm acts of encroachment under 42 U.S. Code § 1983 and the Racketeer Influenced and Corrupt Organizations Act (RICO). Plaintiff is seeking injunctive relief, compensatory damages, punitive damages, costs, treble damages, and declaratory judgment from defendants for said violations of rights.

316.    Plaintiff files this Complaint pursuant to the Judicial Conduct and Disability Act of 1980, 28 U.S.C. § 351-364 against Defendant Grossman and all other Defendant Judges, Defendant Clerks,

---

[112] A civil rights complaint is used to bring claims that seek relief for the violation of a person's federal or constitutional rights. Title 42 § 1982 (the civil rights statute) does not confer rights, but instead allows individuals to enforce rights contained in the United States Constitution and defined by federal law. To state a claim under § 1983, the person seeking relief (a plaintiff) must allege (1) a violation of rights protected by the Constitution or created by federal statute (2) proximately caused by conduct of (3) a person (4) acting under color of state law (a defendant). *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Under this law, a person who acts under color of state law to violate another's constitutional rights may be liable for money damages, declaratory relief (a court declaration that a violation is occurring), or injunctive relief (an order for the defendant to act or stop acting in a particular way).

Defendant Judicial Marshals, and any other employees of the Defendant State of Connecticut Judicial System named in this complaint for their involvement and misconduct in multiple cases involving the plaintiffs, including but not limited to the following cases relevant to Plaintiff:

1. *Theodora F. Antar v. Matthew J. Lodice,* Docket No. NNH-FA-19-5046828-S

2. *Theodora F. Antar(ST/CT) v. Matthew J. Lodice*, Docket No. NNH-FA-19-6096801-S

3. *Theodora F. Antar v. Matthew J. Lodice*, Docket No. NNH-FA-22-5055233-S

4. *Theodora F. Antar v. Gerald Viglione Jr.*, Docket No. NNH-FA-16-4068691-S

5. *Angelina M. Lodice PPA Theodora Antar v. Matthew J. Lodice*, Docket No. AAN-FA-23-5023487-S

6. *Theodora F. Antar v Matthew J. Lodice*, Docket No. NNH-FA-23-5057106-S

7. *Theodora F. Antar v Matthew J. Lodice*, Docket No. NNH-FA-22-5052817-S

8. *Mark Wachter v. Theodora F. Antar*, Docket No. NNH-FA-23-5056534-S

9. *Theodora F. Antar v. Scott Lodice*, Docket No. NNH-FA-23-5057984-S

10. *Theodora F. Antar v Matthew J. Lodice*, Docket No. NNH-FA-23-5057371-S

11. *Theodora F. Antar v Matthew J. Lodice*, Docket No. AAN-FA-23-5023887-S

12. *Theodora F. Antar v Matthew J. Lodice*, Docket No. AAN-FA-23-5023124-S

13. *Angelina Maria Lodice PPA Theodora F. Antar v. Dominic Lodice*, Docket No. AAN-FA-23-5023488-S

14. *State of Connecticut v. Matthew J. Lodice*, Docket No. A05DCR-23-0190622-S

15. *State of Connecticut v. Theodora F. Antar*, Docket No. A05D-CR23-0191150-S

16. *Theodora F. Antar v. Elizabeth Protzman,*

17. Any other associated dockets including any labeled *State of Connecticut v. Theodora F. Antar* that have no public record and any in which have resulted in full dismissals.

317.    Plaintiff alleges that Defendants[113], individually and as a collective, within their sub-organizations but as members of the overall organization based on associations, acts, and omissions, conspired to and engaged in acts or omissions to further the goals of the RICO scheme, which has been impacting victims for decades.

318.    Furthermore, several of the other Defendant state actors have engaged in numerous instances of judicial and/or official legal misconduct including, but not limited to racketeering, fraud, bribery, extortion, tampering with witnesses, and obstruction of justice. Plaintiff will show that Defendants' actions caused the deprivation of Plaintiff and Plaintiff's minor children's constitutional rights[114].

319.    Plaintiff also seeks the court to take judicial notice of plaintiff's challenge to the federal rule of civil procedure which dictates that a pro-se parent plaintiff does not have the right to include their children as a plaintiff on a federal lawsuit, and that the minor child must be represented by counsel in order to be part of the lawsuit. However, there is no right to counsel, and no right to paid counsel for minor children in said cases, which is a violation of the constitutional right to due process and equal protection.

320.    If an indigent parent plaintiff is unable to find an attorney willing or able to represent their children in a lawsuit, that plaintiff must then be forced to exclude said children and the child is then deprived of their constitutional right to equal protection and due process of the law.

321.    Plaintiffs are required to meet 2 barriers: 1. They must find a civil attorney that will agree to

---

[113] The Defendant Grossman, the leader of one of the such sub-organizations, and member and affiliate with several of the other sub-organizations, also abused her authority and conspired with other defendants and orchestrated an intricate scheme involving obstruction of justice, tampering with witnesses, intrinsic fraud upon the court, and other acts in violation of state and federal laws, including but not limited to bribery, racketeering, and trafficking of children into homes where they were more likely to experience sexual abuse in an alarming pattern and trend. Defendant Grossman knowingly and deliberately violated laws while acting in her official and individual capacity and has consistently and repeatedly violated the Canons of the Code of Conduct for State Judges, namely Cannons 2A and 3.

[114] See 42 U.S.C. § 1983; *Arnold v. International Business Machines Corp.,* 637 F.2d 1350, 1355 (9th Cir. 1981).

represent their minor child(ren) in the civil lawsuit, which may not be an easy task if the claims are against the state actors that many attorneys work with regularly and 2. They must be able to afford said attorney[115].

322.    Plaintiff further contends that the Defendants, in conspiracy with and in collusion with one another, and as part of a longstanding RICO scheme[116] involving the misappropriate of federal funding from Title IV-D of the Social Security Act, CAPTA, VAWA, and other corrupt acts acted knowingly, improperly, and with deliberate indifference to the Plaintiffs' established constitutional and civil rights acting under the color of law[117].

323.    Defendants, collectively and in conspiracy with one another, have violated the rights of Plaintiff under the Fourteenth Amendment of the Constitution of the United States of America, the Due Process Clause of the Fifth and Fourteenth Amendments to the Constitution of the United States of America, and the Equal Protection Clause. "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws[118]."

---

[115] Many attorneys do not take cases on a contingency basis, and many attorneys shy away from controversial cases in an effort to protect their reputation and careers and avoid retaliation or backlash by members of the Bar or the community. Plaintiff feels this is unconstitutional and wishes to include both her minor children A.L. and J.V. as plaintiffs on this action, yet per rules of procedure is barred from doing so. This rule violates the equal protection clause of the United States Constitution and should be revised to allow indigent parent plaintiffs whose children's rights have been violated to file pro-se lawsuits on their children's behalf without an attorney, otherwise they have no access to law and risk losing the chance to ever bring the claims in the future.

[116] This lawsuit concerns the need for equal justice and reform to the entire structure of the family court system in order to remedy the unconstitutional and damaging trends, patterns, and practices that have been denying countless parents and their children the fairness which is demanded and entitled to them by the United States Constitution. All non-custodial parents within the State of Connecticut are guaranteed constitutional protections under federal law. Collectively, these Defendants are systematically furthering their RICO scheme in an effort to continue the tradition of embezzling federal funding while simultaneously depriving citizens of their lawful rights and violating federal laws daily under the guise of sovereign impunity.

[117] *See West v. Atkins,* 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania,* 36 F.3d 1250, 1255-56 (3d. Cir. 1994).

[118] The Fourteenth Amendment, ratified in 1868, uses the same eleven words, called the Due Process Clause, to describe a legal

324.    The Defendants have caused irreparable harm[119] to plaintiff, her minor children, and millions of other people who have suffered similar or comparable harm at the hands of the defendants and all other unnamed members and participants in the RICO scheme by a multitude of overt acts which have spanned decades.

325.    Plaintiff continues to suffer[120] the results of the extensive abuses she was subjected to by the Defendants. This is an action for damages and other relief arising under the United States Constitution and the laws of the United States.

326.    Plaintiff has suffered from violations of her rights under state laws, under federal laws, under acts of Congress, under ratified U.S. treaties, and under fundamental rights guaranteed to her as living breathing human being, and as said rights apply to her children.

327.    The Defendants are all associated[121] with one another in a specified way or associated with the overall case and controversy and as such they have all played a unique, yet crucial role in the furtherance and perpetuity of the overall RICO scheme in systematically depriving the Plaintiff of her rights[122] under federal law and the United States Constitution.

---

obligation of all states. These words have as their central promise an assurance that all levels of American government must operate within the law ("legality") and provide fair procedures.  The Fifth Amendment's reference to "due process" is only one of many promises of protection the Bill of Rights gives citizens against the federal government. Originally these promises had no application at all against the states (see *Barron v City of Baltimore* (1833)). However, this attitude faded in *Chicago, Burlington & Quincy Railroad Company v. City of Chicago* (1897).

[119] Defendants' collective, repeated, and intricately orchestrated conduct was so obviously violative of Plaintiff's rights and Plaintiff's resulting injuries are so severe that it is shocking to the conscience and can only be described as a sadistic form of torture.

[120] The plaintiff has sustained injuries and psychological harm amounting to irreparable and permanent harm as a proximate result of Defendants collective actions and systematic fraud and misconduct. These Defendants and other legal court representatives and associated state actors should be voluntarily removed by self-recusal or involuntarily removed by this Court and criminal indictments on federal charges should be levied upon them to ensure the public trust in the judiciary and to ensure the fraudulent scheme will not continue indefinitely into the future without oversight.

[121] The defendants, in conspiracy with one another and through carefully planned and orchestrated acts, omissions, and associations, have aided and abetted and conspired to partake in, invest in, and otherwise involve and associate themselves in an ongoing and systematic corrupt organization deeply embedded within the State of Connecticut involving welfare fraud, misappropriation of federal funding delegated to the states through Title IV-D of the Social Security Act, deprivation of rights, torture, human trafficking, and engaging in acceptance of bribery and other illegal acts in a systematic scheme that has been exploiting citizens, including the Plaintiff, for several decades.

[122] This lawsuit is an attempt to stop the corruption in the State of Connecticut, particularly within the criminal justice and

328.     The Defendant Grossman orchestrated[123] a scheme that included a massive obstruction[124] of justice

and tampering with witnesses in which she instructed and delegated to others to engage in acts or

omissions in an effort to facilitate in trafficking the Plaintiff's minor child A.L. into the hands of her

alleged sexual abuser in an effort to protect the Defendant Lodice or his minor child D.L. from any

potential criminal charges or liability related to such allegations of sexual abuse.

329.     The Defendants who are associated with the Defendant Lodice, including those who are or were

state actors, have engaged in the acceptance of bribes, obstruction of justice, and other acts and

omissions in an effort to further attempt to discredit the Plaintiff and her minor child A.L. and isolate

Plaintiff and her minor daughter from one another for the purpose of obstructing justice regarding the

allegations of sexual abuse[125] by the defendant D.L.

330.     Defendant Grossman, who has repeatedly refused to recuse herself or allow any other judicial

authority preside over any matter involving the Plaintiff, is also an adjunct professor at Quinnipiac

---

family branches of the judicial system and to end the ongoing corruption going on within the State of Connecticut by and through its actors, agents, associates, affiliates, and those acting through powers delegated either directly or indirectly through an arm of the state or anyone else given said powers or control. The Defendant Grossman, in conspiracy with multiple other Defendants, intentionally deprived and encouraged many of the other defendants to personally attack and deprive the Plaintiff of her constitutional, federal, state, and crime victim rights in an effort to cover up the ongoing molestation and sexual abuse of the Plaintiff's minor child A.L.

[123] The Defendant Grossman further engaged in a longstanding pattern of fraud, misappropriation of federal funding, racketeering, and other illegal acts. She is also a member of, affiliated with, or has a substantial influence over several of the other defendants named in this lawsuit, and has shown herself to repeatedly exhibit cruel and unusual punishments in an intentional scheme to further the sexual abuse of children and engage in human trafficking in violation of federal and state laws. She has violated rights guaranteed within several U.N. treaties that have been ratified by the United States and has maliciously and in an effort to retaliate against anyone who complains about her forced litigants to be permanently blocked from accessing the judicial system as a result of her influence, control, and leadership role within the overall RICO scheme. She also violated multiple judicial canons, deprived Plaintiff of both substantive and procedural due process, the right to counsel, and rights entitled through the Americans with Disabilities act, VAWA, CAPTA, and the United States Constitution, among others.

[124] Many of the Defendants, either directly, indirectly, or through acts, omissions, or association, have repeatedly violated laws in order to further their own financial gains and obstructed justice, engaged in taking or offering bribes, money laundering, fraud, racketeering, and abuse of children through deprivation of liberty against the Plaintiffs.

[125] The Plaintiff's minor child A.L. has on multiple occasions, made disclosures regarding the sexual abuse that she has experienced at the hands of the Defendant Lodice's minor child D.L., however this has been twisted to be used as a justification in the eyes of Defendant Grossman to deprive Plaintiffs of all legal rights and access to the justice system without protecting any of Plaintiff's constitutional or due process rights.

University School of Law, sits as one of the executive board members of the New Haven County Bar Association, worked as a criminal judge in New Haven, a support magistrate judge in New Haven, Waterbury, and Bridgeport, and was a staff attorney with New Haven Legal Assistance Inc. for more than a decade, representing low-income[126] individuals in primarily family, criminal and housing matters.

331.    Defendant Grossman had no qualms about removing the Plaintiff's minor child A.L. from the loving arms of the Plaintiff/Mother, while also separating her from her minor sister J.V., only to give custody to the abusive father under the sole reasoning of Defendant Grossman's baseless[127] accusations that the Plaintiff was "lying" about the sexual abuse allegations[128].

332.    Furthermore, Defendant Grossman failed to protect the constitutional rights of the minor child A.L. when delegated any and all of her judicial authority to the Defendant Lodice, forcibly alienating the Plaintiff from her minor child and essentially removed all edicts regarding constitutional parental rights and federal laws regarding domestic violence, child protection, and the fundamental rights of parents.

---

[126] She is well aware of the challenges that low-income individuals face when being denied access to the law and being unable to obtain proper legal representation due to the furtherance of the RICO scheme. Defendant Grossman received her bachelor's degree from Quinnipiac University in Psychology and received her law degree from Quinnipiac University School of Law. She has many personal friendships and relationships with the other named Defendants in this action and as such has influenced the acts and omissions of said Defendants. Her history has also exposed her to extrajudicial facts, information, and knowledge regarding the plaintiff due to the plaintiff's history.

[127] The Defendant Steeves claimed to have investigated the abuse, but never even met the minor child A.L. Defendant Grossman made a ruling with no notice, no due process, and without even swearing the plaintiff in, and traumatically ordered that the minor child A.L. be unexpectedly and immediately transferred to the sole legal and sole physical custody of the Defendant Lodice without proving the plaintiff to be unfit. Defendant Grossman ordered on May 25, 2023 that the plaintiff would only be allowed to see the minor child A.L. "as determined by the father" and "supervised by a third party designated by the father" which essentially delegated her power as an arm of the state to the Defendant Lodice, who then subsequently delegated that power to many of the other defendants within the sub-organization that he leads within the overall RICO scheme.

[128] The Plaintiff submitted over 70 videos to the New Britain Police Department and to the Department of Children and Families, specifically to Defendant Plummer, and to Defendant Steeves, all of which included video evidence in which the plaintiff's minor daughter A.L. repeatedly discloses details regarding the fact that she is claiming to have been sexually abused by the Defendant Lodice's minor son Defendant D.L. on a regular basis over the past year and a half. The Defendant Grossman never saw a single one of the videos, nor did she ever see any evidence regarding said abuse.

333.     The State of Connecticut[129] and its associated arms, affiliates, and actors has engaged in a systematic pattern[130] of allowing accused and adjudicated batterers to receive joint or sole custody surprisingly often.

334.     The family court system[131] in the state of Connecticut is unconstitutional in that it does not allow or afford litigants the right to counsel if they are indigent.

335.     Several attorneys named in this complaint have denied the plaintiff legal representation[132], intentionally given the plaintiff dangerously reckless legal advice, and have played a role in the overall corrupt scheme which has been going on for decades within the state.

336.     The hurdles[133] to address areas of misconduct are many times insurmountable due to many of the entities designed to investigate having been proven to be ineffective, shielded by a cumbersome process and system of procedures that filter out many legitimate cases of wrongdoing brought to the attention of such groups. Not to mention most of these groups do not have the authority to initiate investigations.

---

[129] The State of Connecticut RICO enterprise, by and through its agencies, commissions, departments, and other arms and legs and agents and actors, has exploited the poor by fraudulently obtaining billions of dollars in federal funding to create child protection, domestic violence, social services, and legal and mental health services to the poor to then deny the same poor indigent citizens of the State any such relief. Each defendant played a role in one way or another and is liable.

[130] The state of Connecticut and its associated arms, affiliates, and actors has engaged in a systematic pattern of allowing a clear and documented gender bias against women in custody litigation that has also been implemented in the criminal justice system and law enforcement agencies throughout the state.

[131] There is a systematic statewide embezzlement scheme occurring within the state of Connecticut, and many lawyers who practice in and out of the same courtrooms as the judges in this action will almost never report such behaviors including obstruction of justice, bribery, and the concealment of sexual abuse as they have to practice in front of the same judges and the same opposing lawyers on multiple occasions.

[132] This creates situations where attorneys who may want to do the right thing by representing those who have been victimized by the system or reporting such violations are put in a place where they are forced to weigh the possible retaliation by judges and players that could adversely affect them and future clients. The other concerns for them are the forms of blackballing by peers that sometimes goes on against those lawyers blowing the whistle within this industry.

[133] The City of New Haven and the New Haven County Bar Association, along with the Judicial Review Council have influenced the local media silence on family court corruption and the local media is completely silent about the ongoing scandal in its Superior Court Judicial District of New Haven. The New Haven Superior Court, city of New Haven, New Haven County Bar Association, and all those Defendants named in this action who have some association in the controversy are all engaged in corrupt activities and have continued to engage in statewide widespread corruption with no oversight.

337.    The Judicial Review Council, which is made up of some of the same judges and lawyers who are part of the same Bar Organization and circle of friends and social circle, all protect each other[134].

338.    The State of Connecticut has an unconstitutional[135] practice in that it does not allow attorneys to appear Pro Hac Vice for litigants who seek counsel that are not part of the corrupt organization unless the Pro Hac Vice attorney has a Connecticut Attorney who can endorse them and appear and at any and all court proceedings[136].

339.    Defendant Grossman[137] in accordance with multiple lawyers and psychologists has engaged in racketeering cohorts effectively marshal her victims- children and their protective parents-down the assembly line supervised by the local law enforcement and powered by money.

340.    Several of the defendants, in conspiracy and conjunction with one another, particularly Jane Grossman, as well as other defendant judges and state actors and their associates are engaged in witness tampering, suppression of evidence, and abuse and violation of Due Process[138].

---

[134] The University of Connecticut School of Law pushes an agenda on students that everything is about networking and "who you know" and as such creates a dangerous situation where those within the judicial system, attorneys, and members of the bar organization in the state of Connecticut handle cases by exchanging funds, favors, campaign dollars, or engaging in extrajudicial relationships, ex-parte communications, and back door deals in order to ensure that litigants are exploited financially as much as possible.

[135] The State of Connecticut has an unconstitutional practice in that it does not allow foreign attorneys to appear as a foreign legal representative as counsel for clients in Connecticut, but only allows said individuals to consult with individuals regarding the laws of their respective nation, unlike the neighboring state of New York which allows them to be full counsel.

[136] This is all part of the systematic structured gate-keeping scheme in order to monopolize the cash for kids for federal dollars and abuse of federal funding for personal wealth gain that has been ongoing in the state for decades.

[137] Many of the judges, particularly Defendant Grossman, have shown an indifference (enjoyment) of obvious suffering, concomitant lack of empathy, manipulation and humiliation of children and protective parents in an effort to extort funds and misappropriate funding to infiltrate the process of court proceedings.

[138] The Connecticut Judicial system, through its family courts are operating a money laundering and trafficking operation in total secrecy under the color of law. Without oversight by the public and the media, there is no hope that any of this will change. The state hides under the guise of sovereign immunity and judicial immunity, and the Judicial Review Council will systematically ignore any and all valid complaints while intimidating and encouraging attorneys not to make complaints.

341.    Indeed, several allegations contained in this Complaint clearly indicate that Plaintiff's civil rights claims against the state actors themselves are independent and directed not at the State of Connecticut; rather, at the Defendants[139] as individual "state actors."

342.    To begin with, the law of judicial immunity has long distinguished between retroactive and prospective remedies. In general, suits seeking prospective remedies are *not* barred by the doctrine of judicial immunity. *Pulliam v. Allen,* 466 U.S. 522, 541-42 (1984) ("judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity")[140].

343.    In the instant case, Plaintiff seeks, *inter alia,* declaratory[141] and injunctive relief[142] against Defendants[143].

344.    A judge enjoys protection from suits under 42 U.S.C. § 1983 **_only_** to the extent that he/she acts "as a neutral and impartial[144] arbiter of a statute," making no decisions of his/her own in the application of a statute of policy.

---

[139] For example, this Complaint asserts that Defendants "have acted under the color of the law while annihilating the Plaintiff's right to due process defined by the Fifth and Fourteenth Amendments of the United States"; that Defendants "have engaged in numerous instances of judicial misconduct"; and that Defendants "aimed and purposefully directed their illegitimate actions while sitting on the benches of the Superior Courts of Connecticut.

[140] Although the scope of *Pulliam* was narrowed by a 1996 amendment to 42 U.S.C. § 1983, declaratory relief remains exempt from judicial immunity under the clear terms of the statute. *See Kampfer v. Scullin,* 989 F. Supp. 194,201 (N.D.N.Y., 1997).

[141] This Complaint explicitly "requests that the Court enter an award in Plaintiff's favor declaring that any and all of the Defendant judges orders in regard to cases involving the Plaintiffs violate the Fourteenth Amendment civil rights and are thus devoid of any legal force and effect."

[142] Under the terms of the Third Circuit's ruling in *Allen v. DeBello, supra,* such relief is certainly not barred by the doctrine judicial immunity.

[143] A judgment stating that unconstitutional custody and relief from abuse orders issued in continuing litigation are "devoid of any legal force and effect" is relevant to every custody-related ruling that will arise in the future course of litigation; it is aimed at the "threat of repeated injury in the future" by preventing the state court from applying an illegal ruling at any step between the issuance of the declaratory judgment and a final order. Such prospective declaratory relief is not barred by judicial immunity.

[144] As the Third Circuit Court of Appeals has emphasized, "a judge who acts as an enforcer or administrator of a statute **_can_** be sued under Section 1983 for declaratory or (if declaratory relief is unavailable) injunctive relief." *Allen v. DeBello, supra,* 861 F.2d at 440 [emphasis added]. *See also Supreme Court of Virginia v. Consumers Union of the United States, Inc.,* 446 U.S. 719, 736 (1980) (judges acting in an "enforcement" capacity are "proper Defendants in a suit for declaratory and injunctive relief, just as other enforcement officers and agencies [are]"); *Georgevich v. Strauss,* 772 F.2d 1078, 1088 (3rd Cir., 1985) ("Where a suit challenges statutes related to the judicial process or statutes previously enforced by the particular judge against the Plaintiff, judges are proper parties" in a civil rights suit) [internal quotation marks omitted].

345.    In this case, Plaintiff does not solely seek relief from the Defendant judges as "neutral arbiters" of a statute or policy. Rather, the Complaint alleges that "Defendants' conduct reveals a widespread RICO scheme that allows for a systematic culture of corruption, retaliation, racketeering, fraud, and deliberate indifference within the judicial system of the Connecticut court system, particularly within the Family Court system, and "a staggering failure of judicial self-governance[145] institutional system." These allegations[146] reflect the sort of "enforcement" role that renders a judge a "proper party" in a civil rights action under Third Circuit precedents such as *Allen* and *Georgevich.*

346.    Plaintiff's allegations, therefore, are directed, at least in part, against Defendants in their *personal,* not their official[147], capacity[148].

347.    Despite all of the abusive conduct by the father, Defendants transferred sole legal and sole physical custody to the violent and sadistic father who is on the DCF abuse and neglect registry and has no stable home of his own or adequate ability to care for said child. Collectively, the Defendants actions reap of collusion[149] with the cruel and abusive father.

---

[145] On numerous occasions Plaintiff, has filed complaints against the Defendants for unfair, unjust and prejudicial conduct. Plaintiff has received no meaningful response to any of these complaints.

[146] Plaintiff alleges that Defendants have both misapplied the law in issuing their rulings and have systematically and repeatedly enforced illegal policies prevalent in the Connecticut courts. It follows that Defendants are a proper party to this action, and that no doctrine of judicial or sovereign immunity bars Plaintiff's attempt to seek relief from Defendants' collective administration and enforcement of wrongful judicial and statewide policies and RICO schemes.

[147] As the U.S. Supreme Court has emphasized: Personal-capacity suits... seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, "[o]n the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Hafer v. Melo,* 502 U.S. 21, 25 (1991), *quoting Kentucky v. Graham,* 473 U.S. 159, 166 (1985) [emphasis in original]. Defendants have collectively engaged in copious additional patterns of retaliatory conduct, such as setting Plaintiff up for constant violations of court orders under credulous and false pretense.

[148] This is precisely the nature of Plaintiff's allegations in this case. And such claims are not barred by the Eleventh Amendment. "[T]he Eleventh Amendment," the Supreme Court has clearly stated, "provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law." *Id.,* 502 U.S. at 30, *quoting Scheuer v. Rhodes,* 416 U.S. 232,237 (1974). Thus, any attempt to establish immunity from suit under the Eleventh Amendment- based as it is on a misrepresentation of Plaintiff's allegations - *must fail.*

[149] Inasmuch, Defendants are unwilling to protect the minor child A.L.'s safety; rather, they are willing to go extraordinary lengths to track down a protective parent like a common criminal and to separate the minor children from their primary loving and caring mother indefinitely with no clear path of reunification and no legal method of modification of any such orders. The Defendants' actions give credence and credibility to the likelihood that Defendants are colluding, aiding and abetting, and obstructing justice in an effort to further the overall goal of financial gain and the obstruction of justice in prevention of criminal

348.     Defendants conduct reveals a widespread culture of retaliation, racketeering, trafficking, money laundering, misuse of federal funding, torture, deprivation of rights, concealment and enabling of sexual abuse of children, bribery, and deliberate indifference within the judicial system of the Connecticut judicial system and its associates.

349.     The conduct of the Defendants also represents a staggering failure of the judicial self-governance[150] institutional system.

350.     The State of Connecticut, and its associated departments, actors, and other arms of the state, does not maintain broad immunity in cases that involve police misconduct. Furthermore, municipal governments are also liable[151] for instances of negligence of their employees.

351.     This does not completely bar litigants from bringing claims[152] against state officials for violations of their constitutional rights.

352.     Municipal governments are also subject to a greater level of liability that the State, and under Connecticut law plaintiffs can hold municipalities liable for certain instances of negligence. The law also requires that municipalities indemnify their employees for liability[153] from actions within the scope of employment unless the damage is "the result of any willful or wanton act."

---

charges being initiated against the defendant Lodice and his minor son D.L.

[150] The Connecticut State judiciary will not police itself voluntarily. This is a set of facts that calls for personal liability, punitive damages, systemic injunctive relief, and external intervention and oversight of the Defendants and the Connecticut State judiciary. A phrase that Theodore Roosevelt made popular should be stated here: "No man is above the law and no man is below it; nor do we ask any man's permission when we ask him to obey it."

[151] The Supreme Court for the State of Connecticut also held that "[no] state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment."

[152] The State of Connecticut also passed a law in 2020 that allows plaintiffs to bring civil actions for equitable relief or damages for police misconduct, including for constitutional violations, which states that "No police officer, acting alone or in conspiracy with another, shall deprive any person or class of persons of the equal protection of the laws of this state, or of the equal privileges and immunities under the laws of this state, including, without limitation, the protections, privileges, and immunities[152] guaranteed under article first of the Constitution of the state."

[153] All state and municipal officers and employees named in this action engaged in willful and wanton acts and omissions that were done intentionally in order to harm the plaintiff and her minor children while protecting the financial and legal interests of the defendant Matthew J. Lodice and defendant D.L.

353.   So, while the American system of government is primarily democratic or majoritarian, it is not purely so. The Constitution[154] of the United States creates a government that operates as a limited democracy or what is at times referred to as a constitutional democracy because it places constitutional limits upon the authority of the government.

354.   Most of these limits[155] can be found in the Bill of Rights of the Constitution, which states, for example, that Congress shall make no law abridging freedom of speech, and that no state shall deprive any person of life, liberty, or property without due process of law or deny to any person the equal protection of the laws.

355.   As a society, we should demand a higher threshold when it comes to our children. Sadly, these issues come back to parental rights and the fact that the family court system places a higher priority on parental rights than what is truly in the best interest[156] of our children.

356.   Expensive attorneys have perpetuated this problem and need to be held accountable, too. Most of the time, these abusers just want to get off the hook of paying child support. Even worse is when they seek revenge by attempting to make the other parent pay *them* child support. Abusers do this by attempting to win full custody. Sadly, many times, this trick works! It is happening every day[157] across America. It is a dirty tactic, and it needs to not only be stopped but prevented!

---

[154] United States Constitution is based on one rather undemocratic idea, the idea that there is a need for protection against a tyranny by the majority. The Constitution recognizes that, while there should be majoritarian control of the government, there also should be some form of restraint upon the majority, because majorities can be selfish and oppressive or tyrannical, and some rights are so important that they should belong to everyone, even if the majority does not think so.

[155] Even if Congress and the President, which after all are elected by the people, decided unanimously to abridge someone's freedom of speech, they are proscribed from doing so by the Constitution. Even if a state legislature and governor voted unanimously to deny a person or group the equal protection of the laws, the state is prevented from doing so by the Constitution. The Constitution itself limits the authority of the Congress, the President, and the states to deprive individuals of their rights.

[156] Abusers routinely use family court as a weapon to punish their ex-spouses. The family court system has become a sword and not a place for fairness, justice, or child safety. It is appalling that courts are unable to detect who the high conflict party is, often lumping the victim into the mix. We need to raise awareness for all the parents who have lost custody battles and for the children who get caught in the crossfire.

[157] Our national statistics show that over a hundred children per year are killed by the parent that the judge mistakenly placed them with following a trial. This is a complete and tragic failure of the family courts. It's also the personal failure of the judges who are not able to detect immediate threats to children's safety. While some courts tunnel vision on assigning parents' rights

357.    Plaintiff and her minor child A.L. are among the millions of other similarly situated victims of

family court and has suffered relentless abuse by her child's father. Each year, he has threatened the

Plaintiff and given her an ultimatum of ongoing sexual relations or complete loss of custody[158], he has

violated any and all court orders, filed countless, senseless motions and lied under oath repeatedly in

order to obstruct justice and coercively control and punish the plaintiff indefinitely through the justice

system.

358.    As we all already know, major portion of our legal system's failure[159] to protect abused[160] children

occurs in state family courts.

359.    Traumatized originally by the perpetrator, the child is victimized again by the legal system

designed to protect him/her[161].

360.    Fundamental to understanding why we are failing[162] the abused child is the fact that children who

are victims of crimes are treated differently from all other victims of crimes. Only in instances of

---

to their children, the more important concern of a family court should be to protect the children. Child safety should come first! Money should not buy sole legal custody. Money-hungry, unethical lawyers shouldn't help beat up an ex who is just trying to be a good, loving mother and get away from an abuser.

[158] Defendant Lodice stated he would "guarantee" that the minor child A.L. be transferred into his custody and cited his relationship with several of the defendants as his connection and ability to bribe, secure, and guarantee said transfer of custody despite his concerning record of violence and abuse.

[159] Understandably, when the abuser is a parent of the child and the other parent is innocent of any complicity in the abuse, the "protective parent" often seeks to dissolve the relationship, or, if the abuse is discovered post-separation, seeks to restrict or eliminate visitation privileges. Unfortunately, the judicial system from which the protective parent and child are seeking justice and protection is comprised of judges and court personnel who lack sufficient training in child abuse issue and are often indifferent to the child's allegations of abuse, particularly allegations of sexual abuse.

[160] Mental health professionals and attorneys' ad litem are often appointed by judges in return for campaign favors and tend to be mere puppets of the court. Further, critical court decisions can be based more on personal relationships with lawyers than on sound legal principals. As a result, the protection of the child and any due process to which the child is entitled is given little or no consideration and the abuser is frequently given unrestricted visitation with the child, if not outright possession. Child abuse, whether sexual or physical, and child protection becomes only incidentally a custody question.

[161] This legal system was originally put into place in order to identify children who had been abused or severely neglected by their parents or caretakers, remove those children at risk of further abuse or neglect and place them in protective custody (or terminate parental rights and place the child with adoptive parents), and bring perpetrators of child abuse and criminal neglect before the bar of justice. However, since its creation, this system has devolved into one where incompetent, ineffective, overwhelmed, and sometime corrupt government officials and entire bureaucracies, who are accountable to no one, are making decisions resulting in abused and neglected children being left in dangerous homes.

[162] Although an alarming picture of the family courts' failure to protect children has already developed, the best evidence in support of this, particularly in cases involving parents attempting to save their children from further abuse, often involves court proceedings wherein the records have been sealed. Allegations of altered transcripts altered or destroyed government

143- COMPLAINT FOR FRAUD, RACKETEERING, ABUSE OF PROCESS, AND CIVIL CONSPIRACY

crimes against children does our law enforcement establishment allow DCF, a social service agency, lacking law enforcement training, experience, and priorities to receive the initial report of abuse, to perform the initial "civil" investigation of the crime, and dictate the progress of the criminal case.

361.    Only in cases of child abuse is a victim forced by the state to live in the same home with his or her abuser. And, only in cases of child abuse is a person denied the right to be safe[163] in his or her own home. This points out a fundamental issue involving the rights of children: They have no rights. Because children cannot speak for themselves, they are denied access to justice and equal protection[164] under the law.

362.    This family preservation bias has been strongly motivated by federal funding which has required, as a condition to receipt of the funds, that local DCF agencies demonstrate that "reasonable efforts" have been made to preserve the family. Not surprisingly, when the vulnerable child abuse victim is kept in the same home with the person whom they may testify against and perhaps send to prison, the child often forgets or "recants" the allegations[165].

363.    As various parts of the country have experienced "system failures" with DCF, a national consensus[166] has developed that this family preservation agenda is risky and unworkable, and that

---

documents, ex parte' communications, and hearings held and orders issued without court reporters are not limited to the few highly publicized child abuse cases which make national news but are being heard throughout nation. Statistical data in support of this failure and its impact on our nation is overwhelming.

[163] Worse yet, DCF lacks the victim's perspective of law enforcement (whose complaining witness must be protected to preserve the criminal case). DCF's "client" is not the child, but the family. Their goal is to rehabilitate the perpetrator and preserve the "family unit"; to perform a social experiment at the child's expense. Unfortunately, few of such experiments have shown to be successful. Rates of re-abuse in such homes are astronomically high.

[164] Allowing DCF to control the criminal investigation and the determination of when or if to remove the child from harm's way has proved to be a fatal error by law enforcement. The statewide systematic approach to investigating allegations of childhood sexual abuse in the state of Connecticut not only silences young victims of abuse but also eliminates due process and violates the constitutional rights of crime victims.

[165] This would be no different than forcing an adult victim of rape or battery to live with their rapist or batterer during the pendency of the criminal investigation, except that children are placed in even greater danger. It is inherently contradictory to have the same agency responsible for the investigation of a crime and protection of the child, on the one hand, and the preservation of the abusive family on the other! Despite the best intentions of the most dedicated social worker, a child cannot be protected in an abusive home.

[166] While some efforts to rehabilitate parents who neglect or abuse their children have been successful, the results have never

children must be removed from homes whenever they are abused or neglected. This attitude is strongly supported by research from the social sciences.

364.    The standard for disqualification for bias or prejudice is fundamentally an objective one. It represents a legislative judgment that, due to the sensitivity of the question and inherent difficulties of proof, as well as the importance of public confidence in the judicial system, the issue is not limited to the existence of the actual bias. Rather, if a reasonable person would entertain doubts concerning the judge's impartiality, disqualification is mandated[167].

## COUNT ONE Violations of 18 U.S.C. § 241 Conspiracy Against Rights

365.    Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

366.    U.S.C. Section 241 "makes it unlawful for two or more persons to agree to injure, threaten, or intimidate a person in the United States in the free exercise or enjoyment of any right or privilege secured by the Constitution or laws of the United States or because of his or her having exercised such a right.

367.    Defendants, in concert with one another and through acts, omissions, and associations, conspired to infringe on plaintiff's federally protected rights and those of her minor children A.L. and J.V.

368.    Violations of §241 do not require[168] the element of a commission of an overt act. Violations of

---

been predictable. In fact, the overwhelming statistical and clinical evidence indicates that most child abusers will continue to abuse, regardless of rehabilitation programs. Dr. Michael Stone, Ph.D., a nationally recognized expert on family violence and formerly one of the strongest proponents of family preservation, has stated that the evidence is in, and the policy of family preservation has been an abysmal failure.

[167] To ensure that the proceedings appear to the public to be impartial and hence worthy of their confidence, the situation must be viewed through the eyes of the objective person. The standard indicates that the decision is not based on the judge's personal view of his own impartiality, and also suggests that the litigant's necessarily partisan views do not provide the applicable frame of reference. Rather, the judge ought to consider how his or her participation in a given case looks to the average person on the street.

[168] In these situations, "the offense is always a felony, even if the underlying conduct would not, on its own, establish a felony violation of another criminal civil rights statute. It is punishable by up to ten years imprisonment unless the government proves an aggravating factor (such as that the offense involved kidnapping, aggravated sexual abuse, or resulted in death) in which case it may be punished by up to life imprisonment and, if death results, may be eligible for the death penalty."

145- COMPLAINT FOR FRAUD, RACKETEERING, ABUSE OF PROCESS, AND CIVIL CONSPIRACY

§241 are applicable to the law enforcement misconduct and hate crime prosecutions and "was historically used . . . in human trafficking prosecutions."

369. The actions of the defendants described herein constitute egregious violations of plaintiff's constitutional rights, especially plaintiff's rights to due process, equal protection, and freedom from gender discrimination.

370. Defendants conspired to deprive plaintiff of her natural relationship with her minor daughter A.L. in an effort to protect the interests of Lodice. Defendants did this in contrast to the decision held in *Santosky* which affirmed that "until the state proves parental unfitness, the child and his parents share a vital interest in preventing erroneous termination of their natural relationship."

371. Defendants conspired to interfere with and terminate the natural mother-daughter and sibling relationships between A.L., J.V. and plaintiff in order to further their own financial and personal interests and attempt to violate plaintiff's rights under color of law.

372. Defendants conspired to accept bribes and financial incentives, obstruct justice, attempt to silence and retaliate against plaintiff, and agreed with one another as co-conspirators to infringe upon plaintiff's federally protected rights by preventing plaintiff from being able to aid in the prosecution of the defendant D.L. for allegations of sexual abuse in an effort to protect defendant Lodice.

373. Defendants engaged in multiple overt acts, such as making and accepting bribes, engaging in ex-parte communications, diverting funds designated for protection from relief from abuse, denying plaintiff the right to address grievances with law enforcement and through the judicial system, and engaging in wire fraud.

374. Defendants engaged in a pattern of overt acts for several decades in furtherance of the conspiracy to deprive plaintiff and her children of their federally protected rights as crime victims, rights to family integrity, and rights to equal protection under the law.

375.     Defendants violated the plaintiff and her minor children's rights under the 1st, 4th, 5th, 14th, 10th, 9th Amendments and under numerous federal statutes and acts of Congress by denying plaintiff the right to equal protection, the right to be heard, the right to the free exercise of religion, the right to address grievances with the government, and many other fundamental enumerated and unenumerated and unalienable rights that the plaintiff and her minor children are undeniably entitled to.

376.     Defendants used their positions within non-profit and not-for-profit organizations, law enforcement agencies, state agencies, and those working in political positions to further the goals of the defendant Lodice to ensure that plaintiff would be likely to never regain any contact or reunification with her minor daughter A.L. and completely and permanently sever the mother-daughter and sibling relationship that A.L. shared with plaintiff and J.V. for perpetuity in an effort to obstruct justice and protect D.L. from criminal charges for sexual assault of a minor.

377.     Defendants acted willingly with the intent to deprive plaintiff and her minor children of numerous federal rights in the interest of their own financial gains by acceptance of bribes, misuse of federal funding, tax evasion, money laundering, and fraud.

378.     Defendants collectively as conspirators conspired and agreed among themselves to deprive plaintiff of her federally protected rights, specifically the right to equal protection under the law, freedom of speech, freedom of religion, the right to a trial, the right to due process, and many other federally protected rights.

379.     In furtherance of this conspiracy, the conspirators committed several over acts, including money laundering, denying plaintiff the right to file motions in her custody/visitation/child support case, denying plaintiff the right to press charges or write statements against those violating laws and rights of the plaintiff, denying plaintiff the right to the free exercise of her religion, denying plaintiff the right to cross-examine witnesses and the defendant, denying plaintiff the right to counsel, and other

inalienable rights such as denying plaintiff the right to equal protection under the law and discriminating against plaintiff as a result of her race, socioeconomic status, education level, gender, and other factors as compared to defendants Viglione and Lodice in equal, if not identical and comparable situations.

380.   Other overt acts committed by the conspirators include perjury, witness tampering, making false statements, fabricating evidence, and unlawful detainments.

381.   The conspirators acted willfully and with specific intent to deprive plaintiff and her minor children of their federally protected rights.

382.   As a direct and proximate result of the conspirators' unlawful conspiracy and acts, omissions, and associations of the defendants, plaintiff and her minor children A.L. and J.V. have sustained irreparable harm and damages that include damages to business, property, reputation, and person and include emotional, physical, psychological, and financial injuries and damages as a result of the intentional conspiracy to deprive plaintiff and her minor children of various federally protected rights.

383.   All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.


**COUNT TWO Violations of 18 U.S.C. § 242 Deprivation of Rights Under Color of Law**

384.   Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

385.   18 U.S.C. § 242 makes it a crime for "someone acting under color of law[169] to willfully deprive a person of a right or privilege protected by the Constitution or laws of the United States. It is *not*

---

[169] Defendants act under color of law when they wield power vested by a government entity. Those prosecuted under the statute typically include police officers, sheriff's deputies, and prison guards. However other government actors such as judges, district attorneys, other public officials, and public school employees can also act under color of law and can be prosecuted under this statute.

necessary that the offense be motivated by racial bias or by any other animus."

386.    . The Department of Justice has previously "prosecuted public officials for thefts, false arrests, evidence-planning, and failing to protect someone in custody from constitutional violations committed by others."

387.    The facts within this complaint affirm and demonstrate a clear violation of 18 U.S.C. § 242.

388.    On numerous occasions, including on Friday, October 13th, 2023, the plaintiff experienced extreme levels of harassment by defendants such as the Orange Police Department and its employees.

389.    Defendant officers, dispatch workers, and other employees of the Town of Orange and the Orange Police Department, as well as other defendants, acted under color of law to deprive plaintiff and her minor children A.L. and J.V. of their rights.

390.    The defendants engaged in numerous overt acts on various occasions under color of state law when these violations occurred. Defendant Dispatcher Salva (hereinafter "Salva") of the Orange Police Department, on numerous occasions, was extremely biased and rude and hostile toward the plaintiff, and treated her with disrespect and attempted to discriminate and deprive plaintiff of her rights to equal protection.

391.    Defendant Lieutenant Kingston of the Orange Police Department also engaged in overt acts on various occasions under color of state law to deprive plaintiff of her right to write a statement and seek the arrest of those who are committing crimes against her.

392.    On numerous occasions, such as on 10/13/23, Defendant Kingston made large efforts to try to coerce plaintiff into not making statements against defendants such as Matthew Lodice, Scott Lodice, Jessica Strusky, D.L., T.L., Scott Lodice, Karen Bowers, Roy Bowers, and others, and spoke to plaintiff on the phone for approximately 30 minutes and attempted to coerce plaintiff not to write a statement and refuse to allow plaintiff to write a statement to seek criminal charges against various

defendants named in this action.

393.    On numerous past occasions, defendants made large efforts to accommodate the wishes of Lodice and Viglione in seeking criminal charges, writing statements, and being involved in civil/custody matters, while simultaneously denying all of these rights to plaintiff.

394.    Plaintiff has been subjected to extreme and severe intimidation, threats, discrimination, violations of equal protection rights, and other violations of my rights as a victim of a crime by the Defendant Police Officers in this action and their respective departments.

395.     Defendant law enforcement officers and law enforcement departments named in this action have systematically and routinely discriminated against plaintiff and subjected her to severe emotional distress and harm.

396.    The Orange Police Department and Waterbury Police Departments have routinely used severe levels of intimidations, threats[170], and attempts to try to coerce[171] plaintiff into not writing a statement or submitting an affidavit for the warrant of the arrest of defendant Lodice for his ongoing abuse and harassment.

397.    The Defendants have been subjecting plaintiff to extreme retaliation[172] and extreme favoritism and protection of defendant Lodice who has a strong network of police and judicial and state marshals and correctional officers.

---

[170] Plaintiff now lives in constant fear of not being able to report crime as the Orange Police Department and their associated officers and dispatchers have subjected plaintiff to discriminatory treatment that violates her rights and those of her minor children.

[171] Lieutenant DeRubeis of the Orange Police Department attempted to intimidate, insult, threaten, scare, mock, and harass the plaintiff when she attempted to write a statement. Plaintiff was told she did not have such right to make a statement and other defendant officers have routinely denied Plaintiff these rights, as well.

[172] Defendant officers from the Orange Police Department and Waterbury Police department have regularly tried to scare and use coercion against plaintiff to try to deter her from making a report, refuse to take the call in from dispatch, refuse to allow plaintiff to have an officer call her back or take her complaint, and laugh, mock, belittle, and intimidate plaintiff to the point where plaintiff no longer feels safe or protected by the law enforcement officers whose job it is to have a duty to protect her and her children.

398.    Defendant officers named in this action have violated[173] plaintiff's rights severely, particularly in the Waterbury Police Department and the Orange Police Department, as well as with the New Britain Police Department.

399.    Plaintiff's rights[174] have been violated so badly that plaintiff can no longer call either department without being treated extremely different than any other civilian, which causes plaintiff extreme level of emotional distress and fear.

400.    Multiple defendants that are state officials, police, law enforcement agencies, and state marshals have repeatedly deprived plaintiff of her rights, privileges, and immunities secured by the Constitution and federal laws.

401.    Defendants have engaged in these acts, omissions, and affiliations repeatedly from 2017 until present, with the acts and omissions and overt actions increasing significantly after the birth of plaintiff's minor daughter A.L. and the initiation of court proceedings regarding child support, custody, visitation, and access to A.L.

402.    Defendants actions were done under color of law and violated many of plaintiff and plaintiff's minor children's federal rights as stated within this complaint. The defendants acted willfully and with the intent to deprive plaintiff of her rights and did so knowingly and unlawfully.

---

[173] None of the aforementioned departments or any other officers or departments named in this complaint have conducted investigations in a fair and unbiased manner, but rather have shown extreme bias and retaliation toward the plaintiff for her attempts to try to seek services from the police. None of the aforementioned departments have shown the plaintiff or her minor children any respect and have violated all of our rights under the ADA, CAPTA, VAWA, crime victims' rights, and rights to seek services without being discriminated against in compliance with due process and equal protection rights set forth in the fourteenth amendment.

[174] All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

403.    Defendants violated plaintiff's fundamental right under federal law to family integrity as guaranteed under the United States Constitution.[175]

404.    The 2nd circuit has held that "parents and children share a compelling interest in remaining together as a family unit[176].

405.    The Supreme Court also held in *Santosky* that "the child and his parents share a vital interest in preventing erroneous termination of their natural relationship."

406.    Defendants colluded with and acted in concert with one another under the color of law to unlawfully strip plaintiff of her rights under constitutional and federal law and in accordance with Supreme Court precedent.

407.    Defendants, while acting under color of state law as law enforcement, public officials, state employees, or under influence of anyone with such authority, deprived plaintiff and her minor children of their rights, privileges, and immunities secured by the Constitution and laws of the United States, specifically the rights to equal protection and due process, the right to be free from unreasonable searches and seizures, the right against cruel and unusual punishments, as well as rights under the 1st, 5th, 4th, 14th, 9th, 10th, amendments and various federal laws and U.S. treaties.

408.    In doing so, defendants engaged in conduct that included racketeering activity, bribery, fraud, extortion, retaliation, and discrimination against plaintiff including, but not limited to, unlawful search and seizure, using excessive force, denying access to counsel, and refusing to allow plaintiff access to the courts.

---

[175] In *In re Zakai F.*, 336 Conn. 272, (2020), the Connecticut Supreme Court explained the protections afforded to a parent under the United States Constitution in relation to her children. The court held that "[t]he fundamental right to family integrity guaranteed by the constitution fits within Connecticut law as follows, 'The right to family integrity . . . encompasses the reciprocal rights of both the parent and the children . . . the interest of the parent in the companionship, care, custody, and management of his or her children . . . and of the children in not being dislocated from the emotional attachments that derive from the intimacy of daily association . . . with the parent." *Pamela B. v Ment*, 244 Conn. 296, 310, 709A. 2d 1089 ((1998).
[176] See *In re Christina M.*, 280 Conn. 474, 486-87, 908 A.2d 1073 (2006).

152- COMPLAINT FOR FRAUD, RACKETEERING, ABUSE OF PROCESS, AND CIVIL CONSPIRACY

409.     Defendants engaged in this conduct and acted willfully and with the intent to deprive plaintiff and
her minor children of their inalienable rights as they are entitled to under federal and state law.

410.     As a direct and proximate result of the conspirators' unlawful conspiracy and acts, omissions, and
associations of the defendants, plaintiff, and her minor children A.L. and J.V. have sustained
irreparable harm and damages that include damages to business, property, reputation, and person and
include emotional, physical, psychological, and financial injuries and damages as a result of the
intentional conspiracy to deprive plaintiff and her minor children of various federally protected rights.

411.     All corporate defendants have the legal capacity to sue and be sued in their corporate name and
are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.


**COUNT THREE Violations of the Fourteenth Amendment of The United States Constitution**

412.     Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

413.     The individual rights protected under the Fourteenth Amendment can be understood in three
categories: (1) "procedural due process;" (2) the individual rights listed in the Bill of Rights,
"incorporated" against the states; and (3) "substantive due process."

414.     "Procedural due process" concerns the procedures that the government must follow before it
deprives an individual of life, liberty, or property[177].

415.     Defendants have constantly ignored evidence that father had coerced, threatened, and
psychologically abused the minor children and made disparaging remarks about the Plaintiff.

---

[177] Historically, due process ordinarily entailed a jury trial. The jury determined the facts, and the judge enforced the law. In
the past two centuries, however, states have developed a variety of institutions and procedures for adjudicating disputes. Making
room for these innovations, the Court has determined that due process requires, at a minimum: (1) notice; (2) an opportunity
to be heard; and (3) an impartial tribunal. *Mullane v. Central Hanover Bank* (1950).

416.    Defendants engaged in collective improper ex-parte' communications with one another in an effort to obstruct justice and ensure personal financial gains and incentives in the above-referenced cases.

417.    Defendants continually treated the Plaintiff in a demonstrably egregious, discriminatory, and hostile manner.

418.    Moreover, Defendants retaliated[178] against the Plaintiff for reporting judicial and state employee misconduct and wrongdoing.

419.    Defendant Grossman goes on to suggest that the mother should have an ... "assessment[179] by psychiatrist with a PhD level to determine" why the mother has allegedly "lied" about the sexual abuse allegations regarding her minor child A.L.

420.    Defendants repeatedly denied plaintiff rights under the equal protection clause of the fourteenth amendment to the United States Constitution through discriminatory actions by state and local government officials.

421.    Defendants regularly deprived plaintiff of her rights to life, liberty, and property, without due process of law.

422.    Defendants' actions and inactions violate plaintiff's rights under the Fourteenth Amendment to the United States Constitution.

423.    Defendants violated the plaintiff's rights under the Due Process Clause of the Fourteenth Amendment which has held that the integrity of the family unit is one that has found protection within.

---

[178] Specifically, Defendant Grossman continues to relentlessly harass the Plaintiff with disparaging remarks, defamatory and slanderous public written opinions, and unfounded accusations. Defendant Grossman jointly with other defendants would openly conspire and collude with one another before, during, and after many of plaintiff's hearings.
[179] Tangentially, the abusive father has never been mandated to likewise have an assessment by a psychotherapist whatsoever. He was also exempt from an order to sign releases for the mental health treatment records from his previous provider, despite the defendant Grossman threatening the plaintiff with adverse legal action if she didn't comply. The hypocrisy is clear and the point well-taken.

424.    Children also have "an additional interest in safety and consistency[180]," which has not been afforded to plaintiff as a result of the defendants' pattern of violating plaintiff's rights without ceasing.

425.    Defendants, through their roles and affiliations as state, municipal, and government officials acted as judges, state appointed counsel, representatives of DCF, representatives of DSS, representatives of Yale, representatives of various non-profits, law enforcement, state marshals, judicial marshals, and other affiliates and accomplices abused and exploited their official roles and capacities in an effort to violate plaintiff and her minor children's rights under the fourteenth amendment.

426.    The actions of the defendants were done while they were acting under color of state law and defendants violated plaintiff's rights to equal protection and due process of law on numerous occasions as stated herein within this complaint.

427.    Defendants, in their capacity as state, municipal, local, and other officials, while acting under color of state law, deprived plaintiff and her minor children of their rights under the fourteenth amendment to the United States Constitution, specifically the right to equal protection under the law by engaging in systematic discriminatory actions, policies, and decisions that violated plaintiff's rights under federal law, thereby treating plaintiff differently than other similarly situated individuals without a legitimate governmental interest or rational basis.

428.    Defendants also violated plaintiff's right to due process by depriving plaintiff of life, liberty, and property without adequate legal procedures or protections.

429.    As a direct and proximate result of the conspirators' unlawful conspiracy and acts, omissions, and associations of the defendants, plaintiff, and her minor children A.L. and J.V. have sustained irreparable harm and damages that include damages to business, property, reputation, and person and include emotional, physical, psychological, and financial injuries and damages as a result of the

---

[180] See *Osborne v Ohio*, 495 U.S. 103, 109, 110 S. Ct, 1691, 109 L. Ed. 2d 98 (1990)

intentional conspiracy to deprive plaintiff and her minor children of various federally protected rights.

430.   All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.

**COUNT FOUR Civil Action for Deprivation of Rights - Retaliation 42 U.S.C. § 1983**

431.   Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

432.   Several defendants, including those associated with the Connecticut Judiciary and those who are involved in law enforcement, in collaboration with other entities, have sought to suppress plaintiff's revelations by imposing legal barriers, initiating retaliatory legal actions, and fostering an environment of fear and intimidation.

433.   Defendants associated with The Orange Police Department and The New Britain Police Department unlawfully retaliated against Plaintiff for opposing them and filing complaints against them.

434.   The aforementioned conducts of the Defendants collectively constitute a "pattern of racketeering activity." Their actions are not isolated incidents but are intertwined in a complex tapestry of illicit financial transactions, deliberate misconduct, and systemic corruption.

435.   Plaintiff asserts that the defendants, in concert in one another and through their actions and policies, have infringed upon her fundamental and constitutional rights, as well as those of her minor children.

436.   Defendants have engaged in blatant gender-based discrimination, which stands as a testament to their egregious breaches of both due process and equal protection mandates.

437.   Defendants' retaliations deprived Plaintiff of her right to equal protection guaranteed by the Fourth Amendment to the United States Constitution.

438.   Defendants' retaliation deprived Plaintiff of her right to due process under the la Defendants' retaliation caused Plaintiff damages enumerated below.

439.   Defendants who are employed by the Orange Police Department and the Town of Orange, on numerous occasions, showed acts of retaliation including but not limited to filing for an arrest warrant against plaintiff on 5/11/23, two weeks after an incident, and mailing a letter on 5/14/23 to plaintiff in retaliation for plaintiff attempting to press charges against Defendant Lodice.

440.   Sergeant DeRubeis and Officer Yelenik coercing plaintiff and trying to intimidate against writing statement.

441.   On numerous occasions  including but not limited to 10/13/23, They refused to make an arrest or do anything regarding various crimes and denied rights.

442.   On 10/13/23, Plaintiff submitted the following statement to Defendant Taylor of the Orange Police Department and Defendant Kirby of the Orange Police Department:

> *"I, Theodora Antar, of 856 Shagbark Drive, Orange, CT, 06477 make the following statement. I am aware that making a false statement is a violation of Connecticut General Statutes Section 53a-157b and is a class A misdemeanor. I would like to press charges against Scott Lodice, Karen Bowers, Roy Bowers, and Matthew Lodice for various crimes. I was told that I need to report these crimes and specifically ask to press charges with The Orange Police Department as I am a resident of Orange and that only Orange will have jurisdiction to be able to press charges and make any arrests for these offenses. Matthew, Karen, and Roy all reside at 48 Quarry Hill Rd, Waterbury, CT, 06706. Scott resides at 59 Cliff street, 2nd floor, Shelton, CT, 06484. For the last 6 months, they have all been psychologically abusing me, harassing me, and using coercion to force me to not be able to see or speak to my child Angelina Maria Lodice. Per court order, Matthew is supposed to give me regular access to Angelina, supposed to give me a schedule with Angelina, and is supposed to allow me to have regular FaceTime calls with her. He has done none of the above. Matthew, Karen, and Roy have been denying me access to my child and completely isolating her from me from 5/25/23 until now. In the past 20 weeks they only let me my 4-yaer-old daughter Angelina Lodice for 1.5 days total. Angelina has repeatedly begged to see me and to come home and to see her sister who I have sole custody of, but Matthew and his accomplices have chosen to instead coerce us to be forcibly isolated from each other. In the past 8 weeks they let me see my daughter for a total of zero (0) days. I have not seen my child in 2 months, and I have not spoken to my child in six days. This is not by choice. I am being forced*

to do this by Matthew, Karen, And Roy. I have repeatedly begged for a chance to have access to my child, and they have all refused to allow me to have any access at all. This is coercion, harassment, and abuse. On 10/8/23, at 4:30PM, I called my child Angelina Lodice, and we had a Facetime call. My nine-year-old daughter was also present during this call and she witnessed the entire thing. The entire call was recorded via a screen recording on my iPhone and the audio was also recorded. I merged the screen recording together with the audio so the entire call if intact for review as evidence. I have previously emailed the call to the Orange Police Department, as well as to the Waterbury Police Department, and I am providing a flash drive today with the full 29-minute recorded call inside as evidence. During the call on 10/8/23, Matthew was on the bed drunk/passed out/hung over in the dark laying in his bed with the lights off while Angelina was in the room. At one point, he even tried to mount the phone on a tripod that he has mounted to his bed that he regularly uses to record pornography of several different women who he has visit with him there in his mother's basement where he resides. Matthew has  a severe addiction to pornography and he and his brother began showing his son Dominic pornography at the age of 11. During this Facetime call on 10/8/23, Matthew was barely able to keep his eyes open and at several points Angelina puts the camera toward him and shows him on the screen and he looks to be drunk, hungover, and/or under the influence of drugs. Toward the end of the call, Angelina screamed in pain repeatedly during this call, and she said that her "butt hurts" and that her "stomach hurt" as she hurled over in pain repeatedly. I asked her if she was okay, and her response was "Daddy told me not to tell you where Dom works because you might ask." Dom is the 17-year-old son of Matthew Lodice who Matthew, Karen, and Roy regularly instruct to leave Angelina alone with as her "babysitter" while they are not there. I asked my daughter why she was bringing up Dominic when I asked her why her butt hurt, and her response was that "Dadda told me not to tell you things" (See recorded call from flash drive) Angelina has alleged that she was being sexually abused by Dominic for more than a year now, and there has not been a single police officer, DCF worker, social worker, doctor, or anyone else in this entire state that has even once asked her if she was being sexually abused, despite me providing multiple videos to DCF and the New Britain Police Department in which Angelina is making sexual motions/humping her stuffed animals and toys and when asked what she is doing, she says she is "doing what Dom does to me." In other videos she explicitly states that "Dominic puts his penis on her butt and her vagina" that "Dominic will do it on the floor behind the gray couch in the living room" and that "Dominic does this when daddy is at work and he takes Sal with him" and has even said that he witnessed Dominic doing this on camera and that he attempted to yell at Dominic and ask him what he was doing and told him not to do it again. However, she said that he did do it again repeatedly and that Matthew is aware and does nothing. I reported the abuse to DCF, and they assigned New Britain Police to the case but all they did was sent her to the Yale Child Abuse Clinic on 10/31/23 and on 3/3/23 in order to do a "forensic interview" where on the first day they asked her "is there any place on your body nobody else is allowed to touch?" and her answer was "no." They then immediately ended the interview and closed the police investigation. The detective assigned to the case never even once met my child yet claimed to have "investigated" the crime. On 3/3/23, my

158- COMPLAINT FOR FRAUD, RACKETEERING, ABUSE OF PROCESS, AND CIVIL CONSPIRACY

*child disclosed in her second forensic interview at Yale that Dominic "sits on her" and that he has her "sit on him" and that during this interaction he "tickles her belly". Despite having many videos in which she was humping her stuffed animals and saying "I'm sitting on them like Dom sits on me", the detective said that none of that mattered, and said their entire investigation was solely restricted to the interview with the social worker at the Yale Child Abuse clinic, and that they had no ability to investigate further, despite her making those disclosures. Angelina continued to make more graphic and detailed disclosures after that. I have provided several of the videos on a flash drive for the police to see exactly what I am talking about. I am making it very clear that I want to press charges against Matthew for risk of injury to a minor for intentionally leaving her alone with Dominic, I want to press charges against Dominic for the sexual assault of my daughter since he is 17 years old and is fully competent to understand. I also want to press charges on Matthew for 53a-73a for sexual assault in the fourth degree because on 9/14/21, Matthew sexually assaulted me at 755 Hill Street, Hamden, CT, and subjected me to sexual intercourse and accomplished the sexual contact without my consent while I was supposed to be meeting him to pick up fliers to distribute for his company Whole House Remodeling Company LLC. Matthew told me that I could come to the residence listed in Hamden where he was working remodeling a bathroom. The homeowners were not there. I went in there and as soon as I walked inside, Matthew grabbed me, pulled my pants down, bent me over on to the stairs, and penetrated me and forcibly had sex with me even though I repeatedly told him to stop. Matthew continued and did not stop until he was able to ejaculate. When he finished he got up, went back to working on the bathroom, and acted like nothing happened. The entire thing lasted less than 5 minutes. He told me that he could do whatever he wants to me anytime that he wants and that he has the right to have sex with me as he pleases, and told me if I didn't do what he wants he would not give me any child support, and that he would go after me in court to try to take my children away. I have been emotionally and psychosocially abused by him financially and sexually abused and subjected to torture from him since 2018 and he has always threatened to retaliate against me. I am fearful of him and he has tried to destroy my life. On 10/8/23 he was arrested for risk of injury to a minor, interfering with an officer, and resisting arrest. On 10/9/23 he told me if I called his phone, his mothers phone, or his work phone to try to contact my child that he would "have me arrested" for violating a protective order. The protective order says I can speak to my child, the court order says I can facetime her. He has threatened me with arrest and said if I try to see or speak to my child he will "have me arrested" and has said that his relationship with police, state marshals, judges, correctional officers, and other state actors will ensure this to occur. He has not let me see my child in 2 months and I contacted him on 10/9/23 asking to see her. He refused again and said to me that he would not let me see her again unless he could "go to a judge and say how I am hurting my child" I have repeatedly tried to call him, his mom, and his work phone and he blocked me on all of the calls. I try to call from restricted and his mom wont answer. Matthew answers and then tries to say hello hello but doesn't give the phone to Angelina and knows that I can not speak to him outside the app. He does this intentionally to harass me. His brother Scott Lodice was told by the Wallingford Police Department that if he had any more contact with me that he would be arrested,*

*and he has continued to harass me and so has Matthew. Scott Lodice repeatedly spoke to me on the phone on 8/12/23 when I attempted to talk to my child and Matthew told him he could harass me as long as there was no protective order, even though Officer Minnitor from the Wallingford Police Department told him it would be an arrest if he did again. Scott will also try to go in Angelina's room during facetimes and intentionally talk to her and get her not to talk to me and stand in front of the camera to intimidate me. Matthew speaks to me on calls constantly to harass me as well. He has not let me see or speak to Angelina and now it has been 6 days and I have no way to see or speak to my child despite court orders saying I can. I told him not to threaten me and he still does. He said I will not be seeing or talking to her until he can make up lies to a judge. His mother also fraudulently told Saint Mary's hospital that she was the legal guardian for my child, took her there, wrote herself as legal guardian and instructed them not to list me as guardian and consented to treatments on my child. This is fraud. When I last called Waterbury pd on Wednesday they said my child was not with the father and was with Roy and Karen. None of them will let me see or speak to her. Matthew has at least 2 registered guns. I feel harassed. I want to press charges for 53a-73a, 53a-151a, 53a-165aa, 53a-302, 53a-97, 53a-156, 53a-167, 53a-180aa, 53a-192, 53a-73a, 43a-98, 53a-64, 53a-183, 53a-181e."*

443.   Shortly thereafter, Defendant Taylor then called plaintiff to inform her that Orange had "no jurisdiction" over any of the crimes and that she would "speak to the court" regarding the possibility of just a coercion charge but said she "couldn't make any promises" and that the policy was that the police had to "refer everything to the court".

444.   She suggested that plaintiff call the Assistant Chief's Office to request that one detective be assigned to the case.

445.   Defendant Taylor also stated that she would "speak to the court regarding the possibility of a warrant for Defendant Lodice's arrest for coercion under C.G.S. § 53a-192" but stressed that she "couldn't make any promises" and that the official policy for the Orange Police Department is that they "refer everything to the court and allow the court to determine the outcome of if someone is arrested or not."

240.   All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.

**COUNT FIVE Civil Action for Deprivation of Rights - Freedom of Speech 42 U.S.C. §1983**

446.    Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

447.    Plaintiff engaged in constitutionally protected speech on matters of public concern, including but not limited to, speech concerning ongoing corruption, harassment, and retaliation by Defendants and within the Connecticut court system.

448.    Defendants' retaliation deprived Plaintiff of her right to equal protection guaranteed by the Fifth Amendment to the United States Constitution.

449.    Defendants' retaliation caused Plaintiff damages enumerated below.

450.    All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.


**COUNT SIX Violations of 18 U.S.C. §§ 1961-1968 – Racketeering activity**

240. Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

241. The described activities of Defendants exhibit a "pattern of racketeering activity," fulfilling the necessary elements for a civil RICO claim.

242. The defendants have collectively engaged in well over two acts of racketeering activity within a 10-year period from 2013-2023.

243. Defendants have repeatedly engaged in racketeering activity including fraud, bribery, money laundering, child trafficking, and many others.

244. Defendants have engaged in a well-established pattern of racketeering activities that were not isolated events, but instead formed a pattern.

245. The racketeering activity of the defendants has lasted and shown a track record of continuity and

continued growth over time as relevant to the relationship among the activities.

246. As a result of the aforementioned acts, the plaintiff and her minor children have sustained irreparable and extreme levels of injury to their business and property which was directly caused by the racketeering activities of the defendants.

247. The defendants meet the "person" element requirement for a civil RICO claim pursuant to federal law and knew, or should have known, that their acts, omissions, and affiliations were illegal and constitute racketeering activity.

248. Defendants have engaged in offenses such as extortion, bribery, mail fraud, wire fraud, embezzlement, prostitution, and trafficking of persons and children for financial gains as part of the racketeering scheme in violation of RICO.

249. All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.

250. Defendants, in concert with one another, in a deliberate and intricate conspiracy engaged in conduct that constitutes a "pattern of racketeering activity."

451. The statutory elements[181] for a civil RICO claim are satisfied by the defendants' conduct, financial transactions, and concerted actions.

452. The plaintiff, and her minor children, were all injured in their business and property as a result of the pattern of racketeering activity described herein by the defendants.

453. The plaintiff is able to establish that the defendants are "persons[182]" who collectively engaged in

---

[181] In *Sedima, S.P.R.L. v Imrex Company, Inc.*, 473 U.S. 479 (1985), the Court held that neither a prior criminal conviction nor a special "racketeering injury" was required to bring a civil RICO suit. Instead, the plaintiff only needed to show that they were injured in their business or property by a pattern of racketeering activity.
[182] Under RICO, a "person" can include individuals as well as entities like corporations, partnerships, and associations.

the racketeering activity described herein.

454.    All defendants listed herein this action, as well as other persons who are also part of the enterprise, have participating in the racketeering activity. All listed defendants are "persons" as referred to in the RICO statute.

455.    All defendants listed in this action are persons and the facts herein establish a pattern in which said defendant persons conducted and/or participated[183] in the conduct of the enterprise's affairs through a pattern of racketeering activity.

456.    The activities described herein by the persons have significantly effected interstate commerce by causing individuals to remain trapped in the state of Connecticut pending final resolution of ongoing family matters, forcing individuals to only use attorneys licensed in the state of Connecticut or to have said attorneys "piggy-back" off of pro-hac vice out of state attorneys who still need letters of recommendation, permission from a judge, and the guarantee that a Connecticut attorney will be present at all proceedings in order for said attorney to attend.

457.    The activities described herein by the persons have also significantly affected international commerce by eliminating the possibility of an attorney licensed in a foreign country to represent individuals in the state of Connecticut wishing to retain private counsel that is not affiliated with the enterprise. This essentially creates a monopoly where the Connecticut Bar Association essentially eliminates the ability for attorneys in other states to do business with clients in the state of Connecticut, and vice-versa.

458.    All corporate defendants have the legal capacity to sue and be sued in their corporate name and

---

[183] Under federal law, This does not mean that the person needs to have primary responsibility or a formal position within the enterprise, but they must have some role in directing the enterprise's affairs.

are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.

## COUNT SEVEN Obstruction of Justice 18 U.S.C. §1503

459.    Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

460.    All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.

461.

## COUNT EIGHT Accessory after the fact to sexual assault U.S.C. §3, 18 U.S.C. § 2242,

462.    Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

463.    All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.

464.

## COUNT NINE Tampering with a Witness 18 U.S.C. §1512

465.    Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

466.    The University of Connecticut, and the University of Connecticut School of law, engaged in intimidation of a witness, obstruction of justice, violations of Title II of the ADA, discrimination toward the plaintiff, and other civil rights violations, as well as the leaking of confidential information and the engaging in ex-parte communications with Defendant Grossman, in addition to retaliatory treatment, threats, and intimidation.

467.    Furthermore, the University of Connecticut School of law also tampered with and attempted to obstruct the plaintiff's ability to access her UConn email account, UConn Student Admin account, and UConn blackboard account, including but not limited to on October 16, 2023, causing interruptions in plaintiff's ability to continue her education and forcing plaintiff to report the issues to the IT Department for the University.

468.    All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.


**COUNT TEN violations of C.G.S. 17a-101 – Protection of children from abuse, Mandated reporters.**

469.    Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

470.    The state of Connecticut mandates that the public policy for child protection is "to protect children whose health and welfare may be adversely affected through injury and neglect; to strengthen the family and make the home safe for children by enhancing the parental capacity for good child care; to provide a temporary or permanent nurturing and safe environment for children when necessary; and for these purposes to require the reporting of suspected child abuse or neglect, investigation of such reports by a social agency, and provision of services, where needed, to such child and family."

471.    In accordance with Connecticut law, the following people are classified as mandated reporters of child abuse and neglect: 1) Any physician or surgeon licensed under the provisions of chapter 370 2) Any resident physician or intern in any hospital in this state, whether or not so licensed, 3) Any registered nurse, 4) Any licensed practical nurse, 5) Any medical examiner, 6) Any dentist, 7) Any dental hygienist, 8) Any psychologist, 9) Any school employee, 10) Any social worker . . . 14) Any paid administrator, faculty, staff, athletic director, athletic coach or director of a private youth sports

organization, league or team and is eighteen years of age or older . . . 15) Any police officer . . . 18) Any member of the clergy . . . 21) Any optometrist . . . 24) Any mental health professional . . . 29) Any person who is a sexual assault counselor or a domestic violence counselor . . . 30) Any employee of the Department of Children and Families or any person who, in the performance of such person's duties, has regular contact with and provides services to or on behalf of children . . . 31) The Child Advocate or any employee of the Child Advocate . . . 38) Any family relations counselor, family relations counselor trainee, or family services supervisor employed by the Judicial Department."

472.    The family enterprise that consists of multiple named defendants and other unnamed participants conspired and engaged in a RICO scheme in an effort to deliberately obstruct justice and cover up the sexual abuse of plaintiff suffered at the hands of Defendant Katagis[184] for the majority of her formative years.

473.    The entire family before, during, and after the conviction of Defendant Katagis, deliberately engaged in a RICO scheme that involved extortion, obstruction of justice, tampering with and bribing/intimidating a witness, and violation of rights. Many of the individuals either are, or were mandated reporters at the time and still chose not to report the sexual abuse of plaintiff to authorities or to DCF.

474.    As a whole, this sub-RICO enterprise has used their political and state powers as well as their influence with others who are in such positions in order to attempt to pay off plaintiff to silence her regarding the sexual abuse, she suffered because of Katagis.

---

[184] The same family enterprise also refused to intervene or report any abuse or neglect of minor child A.L., despite her being abused, neglected, and uncared for without anyone being able to rescue her from this abuse.

475.    Defendant Antonellis told plaintiff that she could have any amount of cash that she wanted, and

that Katagis would pay, if she agreed not to go to the Connecticut State Police Troop I in Bethany, CT

to provide a second statement to police in 2006 regarding the sexual abuse that occurred in her

childhood.

476.    Plaintiff did not accept this bribe and instead said she was seeking justice, validation, and to be

free from abuse and neglect and sexual assault.

477.    As such, the entire family abandoned plaintiff, continued to harass, intentionally cause emotional

distress and harm[185], isolate, ostracize and discredit plaintiff in an effort to protect defendant Katagis.

478.    From 2009 when Katagis plead guilty, until now, this "family enterprise[186]" has gathered for each

and every special occasions over the last fourteen years while plaintiff was left isolated and alone

without any family, home, money, or support.

479.    The actions of the defendants that are members of this sub-enterprise engaged in organized crime

and violated the RICO act repeatedly through creating an illegal enterprise and a pattern of

racketeering activity that allowed for sexual abuse to continue for two generations through both

plaintiff and her minor daughter A.L.

480.    The actions taken by this enterprise (hereinafter "GAKA") constitute racketeering[187] activity and

are affected by several enterprises affecting interstate commerce, specifically those organized and

operated by defendants Antar and Ganim.

---

[185] Even after defendant Katagis plead guilty to the crimes, the family still treated plaintiff and her minor children as strangers in the family, making sure that neither plaintiff nor either of her two children would ever be invited to any family gathering.
[186] To date, this enterprise of defendant has continued the tradition of obstructing justice and suppressing evidence of sexual abuse, refusing to make mandated reports, and allowing the abuse to continue through acts, omissions, or affiliations in concert with other state actor defendants.
[187] Any and all members of the GAKA sub-enterprise were also acting under the overarching blanket of the State of Connecticut through acts, omissions, and affiliations in order to continue to defame, discredit, torture, and emotionally harm the plaintiff and her children by forcing them to be estranged and isolated from the entirety of the family and excluded from any and all baptisms, weddings, holidays, birthday parties, and other family gatherings.

481.     Further, Defendant Antar conspired with Defendant Joe Ganim, Mayor of Bridgeport, in an effort to conspire against the United States to shorten their sentences while they were both in federal custody of the United States at Federal Correctional Institution Beckley together in Beaver, West Virginia between 2011-2014.

482.     Defendant Anastasia Ganim not only failed to uphold her oath as a state employee and failed to report abuse of plaintiff or her minor child, but she even chose to have defendant Katagis as the honorary "man of honor" at her wedding to Chris Ganim, while excluding plaintiff due to plaintiff expressing discomfort with being in the same wedding party as the individual who sexually abused her for the entirety of her childhood and left her with life-long trauma[188].

251.   All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.

**COUNT ELEVEN Violations of 18 U.S.C. § 250 Civil Rights Offenses Involving Sexual Misconduct**

483.     Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

484.     Section 250 is a "penalty statute that applies to all civil rights offenses but is mostly used in conjunction with violations of 18 U.S.C. § 242, when government actors use their authority to commit sexual assault."

485.     Further, 18 U.S.C. § 250 also states that "every form of sexual assault under color of law [is] a felony"

---

[188] The acts of this family enterprise did, do, and will continue to cause the plaintiff and her minor children irreparable harm in the future. They knew, or should have known, that their actions would cause irreparable harm, yet still proceeded to go forth with said acts, omissions, and affiliations in an effort to harm plaintiff and her minor children.

486.    On March 10, 2023, A.L. was at daycare at Bunny Village in Bethany, CT when the Defendant

Lodice suddenly and without warning, showed up at the daycare, woke up A.L. from her nap, took her

and all of her belongings, and left[189].

487.    Melissa Swan contacted plaintiff on 3/10/23 shortly after Lodice left with A.L. from Bunny Village

to notify plaintiff that he left with the child. Plaintiff had previously requested on numerous occasions

that Defendant Swan the director of Bunny Village notify plaintiff and contact plaintiff directly via

phone prior to allowing Defendant Lodice to take the minor child A.L. or pick her up from the center

without her knowledge or consent.

488.    Plaintiff provided Swan with all of the court documents from the New Haven Superior Court which

indicated that plaintiff had joint custody of the minor child and that she had primary residency, and all

educational decisions were stated to be made by the parents together.

489.    Plaintiff also provided Swan with additional documentation regarding the order of protection

which stated that Lodice could not abuse, assault, follow, stalk, harass, interfere with, or contact

plaintiff outside of the OurFamilyWizard parenting communication platform. Plaintiff had also had a

private meeting with Swan shortly before this occurred regarding the fact that Lodice had failed to

make any of his court-ordered payments toward the childcare of A.L. and that A.L. was at risk of being

terminated from the center if payment was not made.

490.    Plaintiff was forced to incur thousands of dollars in additional debt and had to pay the portion of

Lodice's childcare to prevent their daughter from losing her spot. Plaintiff intended to then address

this in child support court, yet to date Connecticut Child Support Enforcement Services and New

---

[189] This was during an active investigation for sexual abuse being conducted by both DCF and the New Britain Police Department, specifically by Detective Lisa Steeves and her Sergeant Jared Barselau and Lieutenant Prisavage, all of whom were part of the Youth Division Bureau for the New Britain Police Department.

Haven Child Support Enforcement Services has stated that they will not proceed on any contempt or allow any hearing to be scheduled without the explicit consent to do so from Defendant Grossman.

491.    Plaintiff explained to Defendant Swan that she would pay for the balance via credit card and explained that there was a protective order and that Angelina had not been having visits with Defendant Lodice for several weeks upon advisement by DCF, New Britain Police, and Defendant Cretella, the former counsel for the plaintiff.

492.    At approximately 2:18PM on 3/10/23, Defendant Swan called plaintiff and told her that Lodice left with the child and all of her belongings but waited until he had already left to call, rather than calling before allowing Angelina to leave, like plaintiff had requested[190] repeatedly in the past.

493.    Plaintiff immediately hung up the phone and called 911 and reported that Lodice had abducted the child from Bunny Village without any of plaintiff's prior knowledge or consent, thus interfering with her ability to go to a scheduled psychiatric mental health appointment with Jessica Mayo Ph.D. of the Yale Child Study Center in New Haven, CT.

494.    Said appointment was scheduled to take place on 3/10/23 at 4:00PM, and it was supposed to be Angelina's first in-person appointment with Dr. Mayo after a series of virtual appointments that were primarily one-on-one parent sessions between plaintiff and Mayo and a couple sessions with A.L. as well.

495.    Defendant Lodice was notified by Detective Steeves in February of 2023 that it was advised that his weekend visitation with A.L. be suspended until the completion of the investigation into the allegations of sexual abuse against his minor son D.L.

---

[190] Defendant Swan always stated she would comply and communicate with plaintiff prior to allowing any changes to the pick-up schedule for her minor child, however failed to do so on this occasion and on multiple prior occasions.

496.     Detective Steeves notified plaintiff that defendant Lodice stated that he "agreed it was in A.L.'s

best interest for him not to have visits until further notice." Defendant Cretella told

497.     All corporate defendants have the legal capacity to sue and be sued in their corporate name and

are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.

## COUNT TWELVE Violations of the Eighth Amendment to the United States Constitution

498.     Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

499.     Defendants knew that their actions would have a damaging impact on the Plaintiff and her minor

children's lives; and did so as a cruel and unusual punishment in order to inflict suffering and emotional

harm on plaintiff.

500.     Each municipality named in this complaint failed to protect plaintiff and her minor children, failed

to uphold their legal duties, misused federal funding incentives, and directly or indirectly caused abuse,

neglect, and violence to continue in perpetuity.

501.     Each state actor or arm of the state named in this complaint failed[191] to provide services that they

were contracted to provide, violated state and federal laws, and treated plaintiff with an immeasurable

level of bias, discrimination, intimidation, harassment, abuse, and psychological torture[192] over the

course of the past year and a half.

502.      Defendants' actions and inactions violate plaintiff's rights under the Eighth Amendment to the

United States Constitution.

---

[191] There is clear evidence that, within their sub-organizations that are all interconnected with one another, that each of the sub-enterprises created their own RICO scheme that affected interstate and foreign commerce by misuse of federal funding, fraud, tax evasion, and other violations through a clear, longstanding pattern of racketeering activity supported by the intentional lack of oversight in the State of Connecticut.

[192] Each time that a federal court dismisses a complaint that alleges anything to do with family court or the system, it only enables the state courts and state actors to freely dictate the terms of the lives of innocent litigants, many of which are poor, uneducated, and cannot fight against the system that intends to exploit them and their children for what amounts to billions of dollars in federal funding each year.

503.  All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.

504.

## COUNT THIRTEEN Violations of the Fourth Amendment to the United States Constitution

505.  Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

506.  Defendants' actions and inactions violate plaintiff's rights under the Fourth Amendment to the United States Constitution.

507.  All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.

508.

## COUNT FOURTEEN Violations of 18 U.S.C. § 2246 Unsolicited Sexual Acts & Sexual Contact

509.  Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

## COUNT FIFTEEN Violations of 18 U.S.C. §§ 2243(b), 2244(a)(4) Sexual Abuse of a Ward

510.  Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

511.  18 U.S.C. §§ 2243(b), 2244(a)(4) make it a crime[193] under federal law for "corrections officers or other individuals in federal facilities to knowingly engage in sexual conduct (or attempt to do so) with another person who is in official detention and under the custodial, supervisory, or disciplinary authority of the individual so engaging. Consent is not a defense."

---

[193] The penalty for a violation of 18 U.S.C. § 2243(c) is 15 years in prison, whereas the penalty for a violation of 18 U.S.C. § 2244(a)(6) is two years in prison.

**COUNT SIXTEEN Violations of 18 U.S.C. § 245 Federally Protected Activities**

238. Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

239. Subsection (b)(1) of 18 U.S.C. § 245 states the following:

> *"**(b)**Whoever, whether or not acting under color of law, by force or threat of force willfully injures, intimidates, or interferes with, or attempts to injure, intimidate or interfere with—**(1)**any person because he is or has been, or in order to intimidate such person or any other person or any class of persons from . . . participating in or enjoying any benefit, service, privilege, program, facility, or activity provided or administered by the United States; . . . **(D)**serving, or attending upon any court in connection with possible service . . . in any court of the United States; . . . participating in or enjoying the benefits of any program or activity receiving Federal financial assistance; or **(2)**any person because of his race, color, religion or national origin and because he is or has been—**(A)** enrolling in or attending any public school or public college; **(B)** participating in or enjoying any benefit, service, privilege, program, facility or activity provided or administered by any State or subdivision thereof; . . . **(D)** serving, or attending upon any court of any State . . . **(E)** traveling in or using any facility of interstate commerce, or using any vehicle, terminal, or facility of any common carrier by motor, rail, water, or air; **(F)** enjoying the goods, services, facilities, privileges, advantages, or accommodations . . . of any other establishment which serves the public . . . or **(4)**any person because he is or has been, or in order to intimidate such person or any other person or any class of persons from—**(A)** participating, without discrimination on account of race, color, religion or national origin, in any of the benefits or activities described in subparagraphs (1)(A) through (1)(E) or subparagraphs (2)(A) through (2)(F); or **(B)** affording another person or class of persons opportunity or protection to so participate; or **(5)** any citizen because he is or has been, or in order to intimidate such citizen or any other citizen from lawfully aiding or encouraging other persons to participate, without discrimination on account of race, color, religion or national origin, in any of the benefits or activities described in subparagraphs (1)(A) through (1)(E) or subparagraphs (2)(A) through (2)(F), or participating lawfully in speech or peaceful assembly;[194] and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title[195] or imprisoned for any term*

---

[194] opposing any denial of the opportunity to so participate—shall be fined under this title, or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire shall be fined under this title, or imprisoned not more than ten years, or both;

[195] As used in this section, the term "participating lawfully in speech or peaceful assembly" shall not mean the aiding, abetting, or inciting of other persons to riot or to commit any act of physical violence upon any individual or against any real or personal property in furtherance of a riot. Nothing in subparagraph (2)(F) or (4)(A) of this subsection shall apply to the proprietor of

*of years or for life, or both, or may be sentenced to death. (c) Nothing in this section shall be construed so as to deter any law enforcement officer from lawfully carrying out the duties of his office; and no law enforcement officer[196] shall be considered to be in violation of this section for lawfully carrying out the duties of his office or lawfully enforcing ordinances and laws of the United States, the District of Columbia, any of the several States, or any political subdivision of a State."*

252. Defendants have repeatedly violated plaintiff's federally protected rights as defined under this section.

253. Defendants have repeatedly and unlawfully willfully injured, intimidated, and interfered with plaintiff or have attempted to do so by force or threat of force, because of plaintiff's race, color, religion, and/or national origin and because plaintiff has been attending the University of Connecticut School of law, participating, and enjoying services entitled to her under state and federal programs and activities, and engaging in private employment.

254. Defendants have also violated plaintiff's rights by interfering with her ability to attend court proceedings and prepare to attend said proceedings.

255. Defendants have repeatedly attempted to willfully interfere[197] with plaintiff's ability to seek justice for her minor daughter A.L.

256. Defendants have repeatedly attempted to willfully interfere with plaintiff's ability to receive and

---

any establishment which provides lodging to transient guests, or to any employee acting on behalf of such proprietor, with respect to the enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of such establishment if such establishment is located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor as his residence.

[196] For purposes of the preceding sentence, the term "law enforcement officer" means any officer of the United States, the District of Columbia, a State, or political subdivision of a State, who is empowered by law to conduct investigations of, or make arrests because of, offenses against the United States, the District of Columbia, a State, or a political subdivision of a State. **(d)** For purposes of this section, the term "State" includes a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States. (Added Pub. L. 90–284, title I, § 101(a), Apr. 11, 1968, 82 Stat. 73; amended Pub. L. 100–690, title VII, § 7020(a), Nov. 18, 1988, 102 Stat. 4396; Pub. L. 101–647, title XII, § 1205(b), Nov. 29, 1990, 104 Stat. 4830; Pub. L. 103–322, title VI, § 60006(c), title XXXII, § 320103(c), title XXXIII, § 330016(1)(H), (L), Sept. 13, 1994, 108 Stat. 1971, 2109, 2147; Pub. L. 104–294, title VI, § 604(b)(14)(C), (37), Oct. 11, 1996, 110 Stat. 3507, 3509.)

[197] Furthermore, this statute also "prohibits willful interference, by force or threat of force, with a person because he/she is or was participating in, or aiding or encouraging other persons to participate in, any of the benefits or activities listed above—or in any of the federal benefits . . . without discrimination as to race, color, religion, or national origin."

continue to receive federal benefits.

257. Defendants have repeatedly attempted to willfully interfere with plaintiff's ability to continue attending public school at The University of Connecticut School of Law.

258. First selectman office

259. The role and responsibilities of a first selectman can vary depending on the specific statutes, ordinances, and traditions of the jurisdiction in which the position exists. The title "first selectman" is most commonly associated with New England states, especially Connecticut, where it often serves as the chief executive officer of a town.

260. In general, the first selectman is responsible for the day-to-day operations and administration of the town government. Part of this responsibility often involves ensuring the well-being and safety of the town's residents, at least insofar as the functions of municipal government can address these concerns. Specific duties related to safety might include: Oversight of Public Safety Departments: The first selectman may have authority over, or at least work closely with, the town's police, fire, and emergency medical services to ensure they are adequately funded, staffed, and equipped to respond to emergencies and ensure public safety. Emergency Management: The first selectman often plays a role in emergency preparedness, response, and recovery, working alongside other local, state, and federal agencies. Public Health and Welfare: This can include overseeing or liaising with public health departments, ensuring safe drinking water, overseeing inspections, or ensuring that town facilities are safe for public use. Public Communication: Keeping citizens informed about potential risks, emergencies, or public health concerns and providing guidance on how to respond. Regulatory and Legislative Duties: The first selectman might be involved in proposing, supporting, or enforcing local ordinances that promote safety, such as building codes, health regulations, or traffic rules. While the first selectman's office has these responsibilities, it's

essential to understand that the duty to ensure safety doesn't mean guaranteeing that no harm will ever come to any citizen. Rather, it typically means acting reasonably, responsibly, and in good faith to promote public safety through the tools and powers available to municipal government.

## COUNT SEVENTEEN Violations of C.G.S § 53a-192 Coercion

261. Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

262. All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.

## COUNT EIGHTEEN Violations of 42 U.S.C. § 12203- Prohibition against retaliation and coercion

240. Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

241. The actions and policies of the defendants' amount to severe breaches of plaintiff's constitutional rights, including her rights to due process and equal protection under the law, and defendants have used coercion and retaliation tactics against plaintiff in an effort to manipulate her actions.

242. Defendants acted in concert with one another to discriminate against plaintiff because plaintiff "opposed [various] act[s] or practice[s] made unlawful by 42 U.S.C. § 12203 in any manner in an investigation, proceeding, or hearing" under said chapter under federal law.

243. Defendants repeatedly acted in concert and in conspiracy with one another to "coerce, intimidate, threaten, or interfere with [plaintiff] in the exercise or enjoyment of, or on account of his/her having exercised or enjoyed, or on account of his/her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by 42 U.S.C. § 12203."

244. Plaintiff was aggrieved by the acts and omissions and overt actions of the defendants and as such

has suffered irreparable harm.

245. All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.

## COUNT NINETEEN Violations of 42 U.S.C. § 2000d- Title VI of the Civil Rights Act of 1964

240. Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

241. Defendants have engaged in discrimination on the basis of race, color, or national origin in various programs and activities receiving federal financial assistance.

242. All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.

## COUNT TWENTY Violations of 31 U.S.C. §§ 3729-3733 – False Claims Act

263. Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

264. Defendants have systematically misappropriated federal funds designated for the Fatherhood Initiative, the Violence Against Women Act, and Child Protection.

265. Defendants have submitted claims for funds to the federal government in the form of grant applications which are based on false or fraudulent representations.

266. Defendants claim that they are conducting activities which are classified as charitable while exploiting federal funds for personal gains and profits and denying indigent individuals' relief under the programs.

267. Defendants have engaged in fraud against the federal government in regard to their handling and

distribution of federal grants, contracts, and other violations of the Federal Acquisition Regulation.

268. Defendants have, on numerous occasions, knowingly submitted false claims to the federal government or caused others to submit said false claims for the purpose of obtaining funding.

269. Defendants have repeatedly violated FAR and said violations lead to fraudulent claims for grants and other funding incentives to be submitted to the government.

270. All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.

271.


## COUNT TWENTY-ONE Violations of the First Amendment of The United States Constitution

240. Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

241. Defendants' actions and inactions violate plaintiff's rights under the First Amendment to the United States Constitution.

242. All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.


## COUNT TWENTY-TWO Violations of 18 U.S.C. § 666– Federal Program Theft

240. Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

241. Defendants have consistently engaged in federal program theft and have repeatedly misrepresented their intentions to exploit more funds from the federal government while denying

program benefits to individuals who qualify and giving themselves sizeable salaries, bonuses, and full benefits through the State of Connecticut.

242. This misappropriation is part of a broader racketeering operation wherein multiple state agencies and entities, in tandem with their co-conspirators, engage in nefarious activities, including trafficking and money laundering, to further their collective interests.

243. Defendants have engaged in an ongoing pattern of racketeering activity involving theft and bribery related to programs that receive federal funds, including grants.

244. All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.

## COUNT TWENTY-THREE Violations of 18 U.S.C. § 1341 Frauds and Swindles

245. Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

246. Defendants have engaged in the use of mail and wire communications in furtherance of a fraudulent scheme, including by fraud related to federal contracts and grants.

247. All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.

## COUNT TWENTY-FOUR Violations of 18 U.S.C. § 1341 Fraud by wire, radio, or television

248. Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

179- COMPLAINT FOR FRAUD, RACKETEERING, ABUSE OF PROCESS, AND CIVIL CONSPIRACY

249. The fraudulent acts described herein constitute fraud under federal law and the enterprise is liable for wire fraud in violation of 18 U.S.C. § 1341.

250. All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.

251.

## COUNT TWENTY-FIVE Violations of 18 U.S.C. § 1001 False Statements

252. Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

253. Defendants have repeatedly made false statements and concealed information in various matters within the jurisdiction of the federal government, including statements related to applications for federal contracts and grants.

254. Defendants have repeatedly represented that funds would be distributed for charitable purposes yet fail to do so and misappropriate funds on a regular basis for personal profits and gains with little to no oversight.

255. All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.

## COUNT TWENTY-SIX Violations of 42 U.S.C. § 1320a-7b Criminal penalties for acts involving Federal Health Care Programs

256. Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

257. Billions of dollars in grant money has been procured by key defendants such as Yale and other non-profit organizations and their affiliates, many of whom serve on overlapping boards of directors, to be laundered through a series of shell companies and non-profit organizations to camouflage the illicit gains.

258. All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.

259.

**COUNT TWENTY-SEVEN Violations of 181 U.S.C. § 641 embezzlement of public money**

250. Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

251. Defendants have engaged in repeated misappropriation of funding and federal grant and contract fraud.

252. Defendants have also misappropriated funding and violated terms of federal contracts and violated Federal Acquisition Regulations on an ongoing basis.

253. All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.

**COUNT TWENTY-EIGHT Violations of 18 U.S.C. § 1031- Major Fraud against the United States**

260. Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

261. Defendants have acted in concert with one another to engage in large-scale fraud in federal procurement and grant activities.

262. Defendants knowingly engaged in schemes to defraud the federal government of more than $1,000,000.00 in connection with various contracts, subcontracts, grants, and other benefits.

263. All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.

264.

## COUNT TWENTY-NINE Violations of 18 U.S.C. § 287- False, fictitious, or fraudulent claims

240. Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

241. Defendants knowingly and repeatedly made various false and fraudulent claims to the federal government for the purpose of receiving continued funding incentives.

242. All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.

243.

## COUNT THIRTY Violations of 18 U.S.C. § 371 – Conspiracy to Defraud the United States

240. Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

241. Defendants conspired in concert with one another to defraud the United States in various manners, particularly through contract and grant fraud.

242. All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this

lawsuit.

243.

## COUNT THIRTY-ONE Violations of The Frederick Douglass Trafficking Victims Prevention and Protection Reauthorization Act of 2018

240. Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

241. Defendants have knowingly and continuously transferred custody of minors into environments marked by abuse, effectively facilitating a trafficking operation under the veneer of legitimate child protection efforts.

242. All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.

243.

## COUNT THIRTY-TWO Violations of 18 U.S.C. § 1593A- Benefitting financially from trafficking in persons

240. Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

241. Defendants knowingly benefitted financially from participation in a human trafficking venture.

242. Trafficking was carried out by various agencies, including DCF, the State of Connecticut Judicial System, and other named defendants.

243. All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.

244.

## COUNT THIRTY-THREE Civil Action for Deprivation of Rights - Discrimination 42 U.S.C. § 1983

240. Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

241. Plaintiff contends that defendants engaged in systematic discrimination against women in an effort to maximize federal funds derived from programs ostensibly designed to support fathers.

242. Defendants have deliberately marginalized and discriminated against women, particularly indigent mothers.

243. Defendants have suppressed efforts by plaintiff and others to shed light on these issues by use of systematic state employee intimidation tactics, legal barriers, and spurious legal actions used to silence them.

244. All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.

245.

## COUNT THIRTY-FOUR Violations of 42 U.S.C. § 13925 – Violence Against Women Act

240. Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

241. Defendants have engaged in repeated discrimination against plaintiff based on plaintiff's sex.

242. Defendants receiving funding that originates in whole or in part from VAWA failed to comply with eligibility requirements in section 1201(d) of the Violence Against Women Act of 2000 (42

U.S.C. 3796gg–6(d)).

243. All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.

244.


**COUNT THIRTY-FIVE Violations of 42 U.S.C. § 12101 – Americans with Disabilities Act**

240. Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

241. Defendants regularly and systematically discriminated against plaintiff on the basis of her disabilities.

242. Defendants regularly and systematically denied plaintiff her rights under Title II of the Americans with Disabilities Act by refusing to provide plaintiff with reasonable accommodations when requested.

243. All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.

244.


**COUNT THIRTY-SIX Violations the Ninth Amendment to the United States Constitution**

240. Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

241. Defendants' actions and inactions violate plaintiff's rights under the Ninth Amendment to the United States Constitution.

242. All corporate defendants have the legal capacity to sue and be sued in their corporate name and

are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.

243.

**COUNT THIRTY-SEVEN Violations of 42 U.S.C. §§ 620-627, 670-679 – The Federal Adoption Assistance and Child Welfare Act of 1980**

240. Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

241. Defendants' actions and inactions violate the plaintiff's rights under the Federal Adoption Assistance and Child Welfare Act of 1980.

242. All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.

243.

**COUNT THIRTY-EIGHT Violations of 42 U.S.C. §§ 5101-5106 – The Child Abuse Prevention and Treatment Act**

244. Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

245. Defendants have failed to create and implement appropriate plans for children to ensure their proper care and permanent placement.

246. Defendants' actions and inactions violate plaintiff's rights under the federal Child Abuse Prevention and Treatment Act.

247. All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this

lawsuit.

248.


**COUNT THIRTY-NINE Violations of**

249. Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

240. All corporate defendants have the legal capacity to sue and be sued in their corporate name and are recognized as legal entities and thus have the legal capacity to be held accountable in this lawsuit.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter an award in Plaintiff's favor, and against Defendants, as follows:

a.       Compensatory Damages;

b.       Treble Damages;

c.   Actual Damages;

d.   Injunctive relief preventing and restraining all defendants from any future RICO violations;

e.   Punitive Damages;

f.   An injunction against all defendants halting any and all illicit activities;

g.   An order requiring the establishment of a robust oversight mechanism to ensure transparency and adherence to federal grant guidelines;

h.   An order of permanent injunction enjoining Grossman and all persons and entities insofar as they are acting in the capacity of their agents, servants, employees, successors, assigns, and attorneys, and all persons insofar as they are acting in active concert or participation with Grossman or any other defendants listed herein who receive actual notice of such order by personal service or otherwise, from directly or indirectly engaging in conduct in violation of the RICO act;

i.   All expenses and costs, including but not limited to, all attorney's fees (if applicable);

j.   An order finding all defendants liable for violating the aforementioned state, federal, and constitutional statutes, codes, and amendments;

k.   Declarative relief stating that Defendant Grossman and other Defendant Judges issued orders are null and void as said orders violate the Fourteenth Amendment civil rights and are thus devoid of any legal force or effect;

l.   Declarative relief stating that the use of the State of Connecticut Family Court "Best interest of the Child Standard" in dissolution and custody proceedings taking place in the Superior Courts of Connecticut in the Family Division is unconstitutional in that it allows a complete severance of any and all parental rights, access, or contact with a child without ensuring due process of law or requiring the court to find a parent unfit prior to severing said rights, access, or contact.;

m.   Injunctive relief enjoining Defendants from enforcing the established Court Orders against the Plaintiffs and recusing Defendants from any current or future civil or criminal matters involving the plaintiffs or their minor children.;

n.   Issuance of an immediate order to stay judgment and proceedings in any and all dockets involving the plaintiffs, including but not limited to, the NNH-FA-19-5046828S docket until further notice;

o.   Issuance of an immediate injunction ordering reunification of Plaintiff immediately with minor daughter A.L.;

p.   Asset Forfeiture of all assets linked to the illegal activity described herein;

q.   An order that all tax exempt and government entities named herein produce full transparency and access to all financial records and statements;

r.   An order compelling the dissolution and/or restructuring of any entity used to commit RICO violations;

s.   Issuance of a declaration that it is unconstitutional for any parent to lose access, visitation, or contact with their children without first being proven unfit and being afforded all the same legal protections as a criminal defendant;

t.   A declaratory judgment affirming the unconstitutional and illicit nature of defendants' practices;

u.   Injunctive relief in the form of an order that no judge in any court be permitted to issue physical custody orders that grant no "actual parenting time"—unless a parent is found "unfit," i.e., having done actual harm to the minor child, which is the constitutional showing required for the State to divest custody;

v.   An order blocking the property of all defendants involved in the controversy in accordance with Federal Executive Order #13818;

w.   A Declaratory judgment that the practices of the defendants are unlawful and in violation of RICO and for federal charges to be brought against all defendants for their respective crimes;

x.   Declarative relief that the State of Connecticut and all sub-enterprises named within were engaging in violations of RICO under color of law; and

y.   Monetary award in damages payable to the Plaintiff not less than eight hundred million dollars ($800,000,000.00) in collective damages.

Respectfully submitted,

**Theodora Antar,** *The Plaintiff*

**856 Shagbark Drive, Orange, CT, 06477**

theodoraantar@gmail.com

**10/22/2023**

## DECLARATION OF THEODORA F. ANTAR

I, Theodora F. Antar, declares as follows:

1.  I am over the age of eighteen (18) years of age and am a party to this action. I have personal knowledge of the facts stated in this declaration, and if called as a witness, could and would testify competently to the truth of the facts stated herein.

2.  I make this declaration in support of this Complaint for Fraud, Racketeering, Abuse of Process, Civil Conspiracy, Damages, Declaratory Relief and Injunctive Relief, and I respectfully request that the Court accept my Complaint and grant the requested relief.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11. The undersigned declares under penalty of perjury that she is the Plaintiff in the above action, that she has read the above Complaint and that the information contained in the Complaint is true and correct. 28 U.S.C. § 1746; 18 U.S.C. § 1621.

**Theodora Antar,** *The Plaintiff*

**856 Shagbark Drive, Orange, CT, 06477**

theodoraantar@gmail.com

191- COMPLAINT FOR FRAUD, RACKETEERING, ABUSE OF PROCESS, AND CIVIL CONSPIRACY

## ORGANIZATION OF RICO ENTERPRISE

The Main "Enterprise" is The State of Connecticut, and there are ten other enterprises which operate as sub-enterprises under the blanket of the State of Connecticut, which are as follows: 1) City of New Haven 2) City of Waterbury 3) Judicial Branch 4) Non-profit/Not-for-profit sector 5) Department of Social Services 6) Department of Children and Families 7) Public Safety 8) Corrections 9) Department of Labor 10) Town of Orange

**SUB-ENTERPRISE #1: THE CITY OF NEW HAVEN**

**SUB-ENTERPRISE #2: THE CITY OF WATERBURY**

**SUB-ENTERPRISE #3: THE JUDICIAL BRANCH OF THE STATE OF CONNECTICUT**

**SUB-ENTERPRISE #4: THE NON-PROFIT/NOT-FOR-PROFIT SECTOR OF THE STATE OF CONNECTICUT**

**SUB-ENTERPRISE #5: THE DEPARTMENT OF SOCIAL SERVICES FOR THE STATE OF CONNECTICUT**

**SUB-ENTERPRISE #6: THE DEPARTMENT OF CHILDREN AND FAMILIES FOR THE STATE OF CONNECTICUT**

**SUB-ENTERPRISE #7: THE DEPARTMENT OF PUBLIC SAFETY FOR THE STATE OF CONNECTICUT**

**SUB-ENTERPRISE #8: THE DEPARTMENT OF CORRECTIONS**

**SUB-ENTERPRISE #9: THE DEPARTMENT OF LABOR**

**SUB-ENTERPRISE #10: THE TOWN OF ORANGE**