| A05D-CR23-0190622-S | : | SUPERIOR COURT |
| STATE OF CONNECTICUT | : | G.A. # 05 |
| v. | : | AT DERBY, CONNECTICUT |
| MATTHEW LODICE | : | MARCH 1, 2023 |

BEFORE THE HONORABLE SCOTT JONES, JUDGE

A P P E A R A N C E S :

    Representing the State of Connecticut:

        ATTORNEY REBECCA BARRY
        Supervisory Assistant State's Attorney
        106 Elizabeth Street
        Derby, CT 06418

    Representing the Defendant:

        MATTHEW LODICE
        Self-Represented Litigant

                         Recorded By:
                         Michele Nichols

                         Transcribed By:
                         Stephanie Charboneau
                         Court Recording Monitor
                         14 West River Street
                         Milford, CT 06460

1    ATTY. BARRY:  I have a Matthew Lodice, 17 on the

2    F docket, who is here, Judge. He is coming forward

3    pro se.

4        THE DEFENDANT:  Good morning, Your Honor.

5        THE COURT:  Good morning.  One moment, please.

6    Just writing some notes.  And your name, again?

7    Lodice?

8        THE DEFENDANT:  Matthew Lodice.

9        THE COURT:  Lodice. One moment, please. All

10   right. I'm with you. Good morning.

11       THE DEFENDANT:  Good morning.

12       ATTY. BARRY:  All right.  Your Honor, the

13   defendant appears before the Court pro se today.  I

14   did indicate to him that we did get input from the

15   complainant, who was asking the Court to modify the

16   protective order today to allow for contact only

17   through My Family Wizard, with regards to their minor

18   child.

19       There is a protective order that is in effect. I

20   believe it mirrors the civil order, Judge.  And there

21   is special language on the second page.  So, if Your

22   Honor would like to review that.

23       The complainant indicated that when she was

24   advised, I think, you know, she was advised that

25   there is the civil case that is pending. She should

26   go through the civil case to modify the order there.

27   She indicates she doesn't have a court date until

2

1    April. She was liking for this - - she was asking for

2    this Court to modify the protective order to indicate

3    that the contact should only be made through My

4    Family Wizard.

5         THE DEFENDANT:  May I speak on that, Your Honor?

6         THE COURT:  Well, it does - - just before you

7    do.  It says you're allowed to have contact with the

8    protected party, regarding visitation and affairs of

9    the child, through My Family Wizard. And exchange of

10   minor child must be pursuant to the civil/family

11   court order. Then, I handwrote in you're allowed to

12   facilitate/initiate contact with the protected party

13   for the purpose of contact with your child, in

14   accordance with the most recent civil/family order.

15        And you're saying the next civil date is?

16        ATTY. BARRY:  Not until April.

17        THE COURT:  And how is this inconsistent with

18   the civil order?

19        ATTY. BARRY:  It's not inconsistent with the

20   civil order. She is asking that the contact only be

21   made through My Family Wizard.  Her concern is that

22   the defendant initiating contact a lot with her

23   outside of My Family Wizard allows for the defendant,

24   at least this is what the complainant is saying, to

25   make disparaging remarks towards her when he

26   initiates that contact.  That's why she would like it

27   only through My Family Wizard.

1    THE COURT:  But didn't - - would that still

2    leave open the possibility that he can make,

3    quote/unquote, disparaging remarks through My Family

4    Wizard, consistent with the order, but still through

5    My Family Wizard?

6    ATTY. BARRY:  I suppose.  I mean, I think My

7    Family Wizard is something that is monitored.

8    THE COURT:  I'll hear from you.

9    THE DEFENDANT:  Your Honor, since that day, I

10   have not had any communications with her at all.  She

11   actually stopped letting me see my daughter since the

12   last time I was in court.  I haven't seen my daughter

13   in four weeks. As of two weeks ago, she stopped

14   letting me talk to my daughter, which she is court

15   ordered to do. She is now in violation of that court

16   order. By making me unable to call her to talk to my

17   daughter, it alleviates her from being in contempt of

18   that court order. That's what she's looking for.  She

19   is trying to keep my daughter from me because I've -

20   - I don't know if you remember, I have told you that

21   I've applied for full custody of my daughter, and we

22   have been going through trial for that.

23   THE COURT:  So, you want this order to remain as

24   it is?

25   THE DEFENDANT:  She is trying to keep me away

26   from her as much as she could until our court date.

27   THE COURT:  Do you want to keep this order the

1   way that it is?

2          THE DEFENDANT:  I would, actually, like the

3   order to say that we can communicate because every

4   time I'm at the - -

5          THE COURT:  You can communicate?

6          THE DEFENDANT:  Well, I can produce the messages

7   that I've been - -

8          THE COURT:  I don't want the messages. I want to

9   know what you want this order to say.

10          THE DEFENDANT:  I want this order to say no

11   threatening or harassing, and that's it, because - -

12          THE COURT:  And how does it - - the way it is

13   written, how does this adversely impact you?

14          THE DEFENDANT:  Because every time I try to

15   communicate with her about my daughter, she says stop

16   messaging me. I feel harassed. And then, I have

17   already had the cops called on me twice from her from

18   these messages.  They didn't make arrest because I am

19   staying within the parameters. But I have like no way

20   to communicate with her about my daughter without - -

21          Like right now she says - - the last message I

22   got from her is you will no longer be seeing your

23   daughter, you will no longer be talking to your

24   daughter.  If you contact me trying to see or setup

25   anything with your daughter, I will have you arrested

26   for violating the protective order. So, now I can't

27   even say, hey, can you bring my daughter to me or can

1    I talk to my daughter, because she is saying that I'm

2    going to be in violation.  So, I don't know what to

3    ask for.

4         THE COURT:  If there is a family court order in

5    place that allows for visitation and she's not

6    behaving in compliance with that, then you have to

7    take action there.

8         THE DEFENDANT:  I do understand that.

9         THE COURT:  This protective order, the way I

10   drafted last time, allows for whatever contact

11   between you and your child that the family court

12   would allow.

13        THE DEFENDANT:  Okay.

14        THE COURT:  Nothing more, nothing less.

15        THE DEFENDANT:  Okay.

16        THE COURT:  And so, I'm comfortable with leaving

17   it the way it is.

18        THE DEFENDANT:  Can I ask a question?

19        THE COURT:  You may.

20        THE DEFENDANT:  If I ask her, like, I need to

21   talk to my daughter, it's the time that - - you know,

22   because we're allowed between 7:00 and 7:15 for me to

23   call my daughter.  If I say, I would like to speak to

24   my daughter at that time, am I in violation of that

25   court order?

26        THE COURT:  That is the last thing you are going

27   to get me to do is give you some legal advice on the

1   record. That's not happening.  But I would advise you
2   to - - well, that would be advice, too.  You should,
3   perhaps, speak with an attorney.  And I remember you
4   said I know the law - -
5         THE DEFENDANT:  I have. They told me - -
6         THE COURT:  - - I'm going to do it myself. I
7   remember you last time.
8         THE DEFENDANT:  They told me technically it's
9   not, but there's a risk that if she pushes hard
10  enough, the cops can make an arrest. That's what the
11  lawyer told me.
12        ATTY. BARRY:  Your Honor, this is further reason
13  why My Family Wizard would be the perfect thing for
14  the defendant and the complainant.
15        THE COURT:  But it says that in the protective
16  order.
17        ATTY. BARRY:  I understand. But the words that
18  were written by the court, initiate contact only with
19  regards, he can still text, or email, or things like
20  that, with regards to the minor child. If it is
21  through My Family Wizard, the reason why that app was
22  created is so that there's a record of what is said
23  and what is not said.
24        THE DEFENDANT:  There's a correction to that.
25  Per our other court agreement, we are only - - I made
26  it so she can only communicate with me through that
27  app.  The reason we allowed for what you're saying is

1    because I have to drop off and pick up my daughter

2    from church where she is at. That's why we made that

3    - -

4         THE COURT:  So, if we got rid of what I wrote,

5    then would it be congruent with what you are saying?

6         ATTY. BARRY:  That's what she's asking for, that

7    he only be allowed to contact her through My Family

8    Wizard with - -

9         THE DEFENDANT:  Then I would not be able to - -

10        ATTY. BARRY:  - - regards to the minor child.

11        THE DEFENDANT:  Then I would not be able to pick

12   up or drop off my daughter, as I am court ordered to

13   do, at church where she teaches.

14        THE COURT:  Why can't you contact her through My

15   Family Wizard?

16        THE DEFENDANT:  Okay. But what happens when I

17   have to be in front of her to grab my daughter?

18        THE COURT:  Isn't it a mobile app?

19        THE DEFENDANT:  No.  No.  I'm talking about when

20   I actually go to like - - so, when I have my daughter

21   on the weekends, I have to bring her to church per

22   our court order.

23        THE COURT:  Right.

24        THE DEFENDANT:  Where my ex, the person that

25   we're - -

26        THE COURT:  The protected party.

27        THE DEFENDANT:  - - the protected party, is

1    teaching at.  So, like I bring my daughter to her and

2    then she gives my daughter back to me.  If there is a

3    no contact, then I won't be able to do that.

4          THE COURT:  There is still a no contact, so

5    technically, you would be in violation by being in

6    her presence, but - -

7          THE DEFENDANT:  When we talked about this and

8    you set those parameters, that was the reason you set

9    those parameters is so we can do the exchanges.

10         ATTY. BARRY:  I think this - -

11         THE COURT:  I don't think - - so, then this,

12   technically, is incongruent because it says stay away

13   from her wherever she may - - let's see.  Stay away

14   from her home, actually, and don't contact her in any

15   manner. The only exception is so that you can have

16   contact with her regarding the child.

17         THE DEFENDANT:  And to follow our agreement,

18   which is that - - which is stating that drop off and

19   pick up.

20         THE COURT:  Let me just ask this. Has there been

21   any alleged violation of the way it is written?

22         ATTY. BARRY:  May I approach the Clerk, please?

23         THE COURT:  Yes.

24         THE DEFENDANT:  May I approach, also?  I mean…

25         ATTY. BARRY:  I'm just handing something.  I'm

26   not talking.

27         THE DEFENDANT:  Okay.  I wasn't sure if you were

```
1      talking.

2             ATTY. BARRY:  I just indicate for the record

3      that the complainant wrote a letter that says, to

4      whom it may concern.  I have that from the Victim's

5      Advocate.  I would give that to the Court.  She does

6      indicate - - I mean, I think the State's concern is -

7      -

8             THE COURT:  Well, I'm going to read.

9             ATTY. BARRY:  Sure.  Sure.

10            THE COURT:  I'm not paying attention.  Has he

11     seen this?

12            THE DEFENDANT:  No, I have not, Your Honor.

13            ATTY. BARRY:  No.

14            THE COURT:  So, maybe you want to make a copy,

15     have him see it.  Maybe talk to Family, have a

16     protective order drafted consistent with whatever

17     you're seeking.  I'll hear him out, I'll hear you

18     out, and either I'll implement the new protective

19     order with the language the way you're seeking, or

20     I'll leave the one that I have in place.

21            ATTY. BARRY:  Okay.  Can I pass this?

22            THE COURT:  But make a copy of this, so that - -

23            And you cannot have a copy of this, you can just

24     read it.

25            THE DEFENDANT:  All right.

26            THE COURT:  But you need to make sure that you

27     give him a copy to read.
```

1         ATTY. BARRY:  Yes, Judge.

2         THE COURT:  And then, she's going to take it

3    back.

4         THE DEFENDANT:  That's fine.

5         THE COURT:  All right.  So, that's what I'll do.

6         ATTY. BARRY:  Can we pass the matter, Judge?

7         THE COURT:  Yes.

8 **WHERUEPON THE MATTER WAS PASSED AND THE COURT CONTINUED WITH**

9 **THE CASE AT HAND:**

10         ATTY. BARRY:  Recall Matthew Iodice, Your Honor,

11    line 17 on the F docket.

12         For the record, Your Honor, I did hand up the

13    three-page letter from the complainant that was

14    addressed to whom it may concern.  Your Honor asked

15    me to make a copy and show it to the defendant; I did

16    do that.  The defendant has had an opportunity to

17    read it, as had the State.

18         The State's motion, Your Honor, is to modify the

19    protective order to be a full no contact protective

20    order and have the only carveout be communication

21    through My Family Wizard with regards to the minor

22    child.  I think the language in the protective order,

23    as it stands now, allows for an area of gray within

24    the protective order, and I think this would just

25    make it cleaner.

26         THE COURT:  Do you want to be heard, sir?

27         THE DEFENDANT:  I do.

11

1    THE COURT:  And if you could limit your - - you

2    were speaking before about how the language in the

3    protective order somehow adversely impacts church and

4    transfer of child between the two of you at church.

5    Her three-page letter to me didn't mention any of

6    that.  It mentioned telephone calls and what could

7    constitute a violation of the protective order, no

8    matter how it was written, where you are allegedly

9    making comments outside the scope of the limited area

10   where you're allowed to have communication regarding

11   the children.  Would you like to be heard?

12        THE DEFENDANT:  I would.

13        THE COURT:  Go for it.

14        THE DEFENDANT:  Upon reading that letter, I mean

15   she says that I'm making disparaging comment, but she

16   gives no instances of - -

17        THE COURT:  We're not going to have a mini

18   trial, but I hear you.

19        THE DEFENDANT:  What's that?

20        THE COURT:  We're not going to have a mini

21   trial, whereas there's no proof, and the level of

22   proof, and the instances - -

23        THE DEFENDANT:  No, no. It's not that there's

24   proof - -

25        THE COURT:  I hear what you're saying.

26        THE DEFENDANT:  - - but she's stating that I

27   make disparaging comments, but she is not giving any

1    instances of me making disparaging comments.

2         THE COURT:  Perhaps that's why you weren't

3    arrested.

4         THE DEFENDANT:  Exactly, because I wasn't making

5    any disparaging comments. The only communications

6    that I've had -- I haven't talked to her once.

7         THE COURT:  Don't talk yourself into a

8    violation, by the way.  Anything you say can and will

9    be used against you, so be careful what you are

10   saying. But go on.

11        THE DEFENDANT:  I appreciate that. I haven't

12   talked to her not once.  The only conversations that

13   I've had were with my daughter, my three-year-old

14   daughter.  I would never say anything by to my three-

15   year-old daughter, nor about her mother, neither.

16        THE COURT:  That's what she's alleging.

17        THE DEFENDANT:  I understand.

18        THE COURT:  But the request is that

19   communication only be had through Family Wizard.  I

20   don't see a problem with that. Or communication be

21   had consistent with -- well, this doesn't say

22   consistent with the family order like the other --

23        THE DEFENDANT:  That's what --

24        THE COURT:  Can I see the old protective order?

25        THE DEFENDANT:  My ex is trying to make it so I

26   can't talk to my daughter, because she knows I'm

27   allowed that 7:00pm call. And if this court says I

```
 1   can't call her, then she won't get in trouble for not

 2   letting me talk to my daughter. That's what this

 3   person, T.A., is looking for. She is trying to

 4   inhibit my relationship with my daughter as much as

 5   possible.  I have not violated any parts of the

 6   order. I have respected your protective order all of

 7   the way, as I'm supposed to.

 8        THE COURT:  I don't see this change as

 9   forbidding you from having contact.  All this change

10   does it spell out the only way you are supposed to

11   have contact with the mother.

12        THE DEFENDANT:  Okay.

13        THE COURT:  Any violations of the exchange of

14   the child or the terms of visitation between you and

15   the child and violations of orders in family court

16   need to be handled in family court. This still allows

17   you to have that - -

18        THE DEFENDANT:  So, I can call my daughter at

19   7:00pm and I won't be in violation?  Because as of

20   right now, that was the parameter.

21        THE COURT:  This says you have to use Family

22   Wizard.

23        THE DEFENDANT:  There is no way for me to call

24   my daughter.  I have a court order.  I'm obligated

25   for a call at 7:00pm.

26        THE COURT:  This protective order speaks to T.A.

27        THE DEFENDANT:  Yes.
```

```
 1              THE COURT:  And your ability to contact her,
 2     inability.
 3              THE DEFENDANT:  Well, my daughter is three. I
 4     have to call T.A.'s phone to talk to her.
 5              THE COURT:  You got to call Family Wizard to set
 6     that up.
 7              THE DEFENDANT:  There is no call that - -
 8              THE COURT:  But you've got to utilize Family
 9     Wizard to set that up.
10              THE DEFENDANT:  There is no call program through
11     Family Wizard.  It's only a messaging app.
12              THE COURT:  What is Family Wizard's utility,
13     then?  What is it for?
14              THE DEFENDANT:  It's just so - - she can't - - I
15     made it that way through the court because she kept
16     like sending me emails and - -
17              THE COURT:  So, why can't you continue to use
18     it?
19              THE DEFENDANT:  I have no problem using it. But
20     for me to be able to talk to my - - I haven't seen my
21     daughter in four weeks now.  And I'm supposed to be
22     able to call her and talk to her every day. And now,
23     she's not letting me talk to her and telling me that
24     she's going to make it that I can't call her. And so
25     this, when you make it I can't call T.A.'s phone, I
26     cannot call to speak to my daughter anymore.
27              THE COURT:  State, do you understand what he's
```

```
1    saying?  I guess he could use the app, but the app

2    doesn't facilitate communication between him and the

3    child.

4         ATTY. BARRY:  Your Honor, I would ask Your Honor

5    to impose the protective order as it appears before

6    you.  And you know, to the extent that - -

7         THE COURT:  Can I see that again?  I'm sorry.  I

8    handed it back.

9         ATTY. BARRY:  - - he contacts the complainant

10   through the My Family Wizard app to setup a time

11   where he can call the minor child - -

12        THE COURT:  But when he calls after the Family

13   Wizard app, he calls, violation.

14        THE DEFENDANT:  That's what I'm trying to avoid.

15        THE COURT:  That's why I used the word

16   facilitate/initiate contact with the protected party

17   for the purpose of contact with their child.  So, he

18   can use the app to establish we're going to talk

19   about 1:00.  The minute he calls at 1:00, the way the

20   new protective order is written, that call

21   constitutes a violation.  That's why I wrote this

22   language in here. And - - so, I see his problem.

23        THE DEFENDANT:  I don't call her outside - - I

24   don't call her even to facilitate any of the drop

25   offs/pickups. I do everything through the app,

26   anyway, because it's documented.  I also ordered that

27   through family - - our other court case specifies
```

1    that our communications are to be through the app,

2    alone.

3         THE COURT:  Right, so they could document your

4    communications.

5         THE DEFENDANT:  Yeah. So, there's no reason for

6    us to communicate outside of that. I haven't talked

7    to her like outside of that app, at all.

8         THE COURT:  Well, you're not talking, but you

9    are actually ringing her line so she could put the

10   child on.

11        THE DEFENDANT:  But I do have to ring her line

12   to talk to my daughter.

13        THE COURT:  Right. And that's what this, the way

14   it's presently written, allows.

15        THE DEFENDANT:  And I have been staying within

16   the parameters of that arrangement - - of that

17   agreement. So, I feel like I shouldn't be punished

18   for something I haven't done wrong.

19        THE COURT:  So, here's the thing: if I don't

20   change it, and I'm about to hear arguments whether I

21   should, and I'm disinclined to change it given this

22   problem area, you're going to be back here with a

23   violation of protective order.  But just be aware,

24   that's going to happen.

25        THE DEFENDANT:  I don't understand. Can you

26   repeat that, please?

27        THE COURT:  She is going to say you violated the

1   terms of the protective order.

2        THE DEFENDANT:  She is always going to.

3        THE COURT:  Right, so you're aware of that?

4        THE DEFENDANT:  I understand that.  But at least

5   if like I'm allowed to call, I don't get in trouble

6   for that.

7        THE COURT:  So, presently, I'm inclined to leave

8   it the way it is, given this gray area that I did not

9   understand until we just articulated it.

10        State want to be heard?

11        ATTY. BARRY:  I do think that the language that

12   was handwritten in provides a gray area, you know,

13   and - -

14        THE COURT:  But he needs the gray area in order

15   to have the contact, otherwise, he can't talk to the

16   child through Family Wizard.

17        ATTY. BARRY:  I understand he can't talk to the

18   child through the My Family Wizard. It's an app.

19   It's for communication. I think that limits his

20   ability to talk to the complainant at all.

21        THE COURT:  Correct.

22        ATTY. BARRY:  And that gives a log of what is

23   said, you know what I mean. So, to the extent that

24   they agree that there should be a phone call, I mean

25   the minor child is three years old, so.

26        THE DEFENDANT:  Almost four.

27        THE COURT:  So, how about this?  Call - -

1    utilize the app, establish a 3:00 time,

2    hypothetically speaking, and then the way it's

3    presently written, make that 3:00 call.

4        THE DEFENDANT:   But that's the way it's always

5    been. That is what we have been doing all along. It's

6    never - -

7        THE COURT:   I'm inclined to leave it the way it

8    is, because it doesn't allow him an opportunity to -

9    - it doesn't allow him an opportunity to actually

10    fulfill the discussion on the My Family Wizard app.

11    I'm going to call you by 3:00, but oh, by the way,

12    the minute I ring your phone, I'm in violation. That

13    doesn't make any sense to me.

14        ATTY. BARRY:   The State was just bringing to the

15    Court's attention - -

16        THE COURT:   Oh, all right.

17        ATTY. BARRY:   - - what the allegations are from

18    the complainant, that this gray area allows for the

19    defendant to talk about or to the complainant within

20    that gray area that's - -

21        THE COURT:   That is always going to exist, I

22    guess, if he has the child, it's his turn, and then

23    he badmouths mom, hypothetically speaking.

24        ATTY. BARRY:   Well, this communication, like you

25    said, it's sticky and it's hard because the

26    complainant is three - - or the minor child is three

27    years old that they share together.  If the defendant

1      is calling the complainant's phone and talking about

2      her, you know what I mean, that's - -

3           THE COURT:  About her to her, or about her to

4      the child?

5           ATTY. BARRY:  About her, in general.  I mean,

6      there should not be really - -

7           THE COURT:  And I don't think this protective

8      order covers that, at all.

9           ATTY. BARRY:  Well, I think that - -

10          THE COURT:  It says no contact with her, no

11     threats, violence, harassment, but it doesn't really

12     cover you can't disparage mom to anybody, to include

13     the child.

14          THE DEFENDANT:  I would never do that, anyway.

15          THE COURT:  But I'm just saying.  Does it?

16          ATTY. BARRY:  Well, I think it should, you know.

17     A full no contact protective order and he's talking

18     about her to the three-year-old, I mean - -

19          THE COURT:  Oh, I'm not saying the conduct is

20     permissible or I condone it, by any stretch.  I'm

21     just saying the language doesn't cover it, does it,

22     unless I'm missing something.

23          ATTY. BARRY:  I mean, here's what I would say;

24     that from what I read from the letter within the

25     civil order there is language that says he should

26     have contact with the minor child that is age-

27     appropriate, you know what I mean, for a three-year-

20

1    old.  You know, I think that the defendant is an

2    adult and he should understand what he should and

3    should not say to a three-year-old when he calls the

4    complainant's phone.

5            THE COURT:  So, if he were to allege to do what

6    she is alleging, that is really not a violation of

7    the criminal protective order.  That is more a

8    violation of the civil order, and there are

9    repercussions that could be had from that.

10           So, what I am going to do is I am not going to

11   modify the protective order, so that at least I leave

12   open the opportunity for you, pursuant to a Family

13   Wizard setup, you can call the number to have contact

14   with the child, unless or until the child gets his

15   own device, at which point you just go through the

16   child's device.

17           THE DEFENDANT:  Absolutely.

18           THE COURT:  Right now.  But just know this is a

19   really gray area for you, and I envision you are

20   going to be back here. But anyway, date?

21           THE DEFENDANT:  I'd like to ask that we move

22   straight to trial as soon as possible, please.

23           THE COURT:  That's not going to happen today.

24           THE DEFENDANT:  I know today it's not going to

25   happen. But could we set our next court date as the

26   trial, so I don't have to keep coming back here?

27           THE COURT:  Do you have any discovery?

1      THE DEFENDANT:  What kind of discovery?

2      THE COURT:  Do you know what discovery is?

3      THE DEFENDANT:  Yes.

4      THE COURT:  What is it?

5      THE DEFENDANT:  Like financial discovery?  Like

6  discovery of what the report is?

7      THE COURT:  Well, you are being charged with a

8  crime.

9      THE DEFENDANT:  Yep.

10      THE COURT:  And the State has to provide you

11  with the evidence it plans on using to prove - -

12      THE DEFENDANT:  I have not gotten any evidence

13  from the State.

14      THE COURT:  Right. Therefore, how are we going

15  to go straight to a trial?  You don't even know what

16  you are defending against.

17      THE DEFENDANT:  Okay. Then, I would like

18  whatever we can do to expedite this.  Because the

19  longer this goes on, she's just - -

20      THE COURT:  It wouldn't kill you to get an

21  attorney.

22      THE DEFENDANT:  I know. But she is just going to

23  keep trying to trip me up, trip me up, trip me up

24  until I get - - I mean, I told you she's called - -

25      THE COURT:  Would you like to get an attorney?

26      THE DEFENDANT:  - - the cops forty times on me.

27      THE COURT:  Would you like to get an attorney?

1    THE DEFENDANT:  I do not.

2    THE COURT:  Huh?

3    THE DEFENDANT:  No, I do not.

4    THE COURT:  You are going to be required to live

5    up to the rules of - - the Practice Book rules.

6    THE DEFENDANT:  I understand.

7    THE COURT:  No one is going to go easy on you

8    because you're a pro se, so.

9    THE DEFENDANT:  That's fine.

10   THE COURT:  If you could get an attorney, you

11   would be wise to do so.  But I am going to give you a

12   continuance date to maybe have discussions with the

13   State about discovery.

14   THE DEFENDANT:  This court is like an hour away

15   from me and it's very difficult to come here. I lose

16   a whole day of work. I mean, that's why I want to - -

17   THE COURT:  I can try to get you a remote date.

18   Would you like a remote date?

19   THE DEFENDANT:  A remote day would definitely be

20   easier, for sure.

21   THE COURT:  What's the next court date available

22   for remote?

23   THE CLERK:  April 14th. He has to go file the

24   appropriate paperwork in the Clerk's Office.

25   THE COURT:  April 14th, 2023 remote, but you

26   need to go file the appropriate paperwork properly,

27   an appearance with your email address, whatever.

```
1              THE DEFENDANT:  Okay.
2              THE COURT:  With the Clerk's Office today before
3      you leave the building.
4              THE DEFENDANT:  I'll go right now.
5              THE COURT:  All right. When is your next court
6      date in family?
7              THE DEFENDANT:  The 20 - - no, the 5th.
8              THE COURT:  Of what month?
9              THE DEFENDANT:  April.
10             THE COURT:  4/5?
11             THE DEFENDANT:  Yep.  But I'm sure her lawyer is
12     going to continue it again.
13             THE COURT:  Right now the protective order
14     remains as it is.  Be very careful, sir.
15             THE DEFENDANT:  I will.
16             THE COURT:  4/14 remote.  Please, see the Clerk.
17             THE DEFENDANT:  Thank you, Your Honor.
18             THE COURT:  You're welcome.
19                        (END OF CASE)
20
21
22
23
24
25
26
27
```

| A05D-CR23-0190622-S | : | SUPERIOR COURT |
| STATE OF CONNECTICUT | : | G.A. # 05 |
| v. | : | AT DERBY, CONNECTICUT |
| MATTHEW LODICE | : | MARCH 1, 2023 |

C E R T I F I C A T I O N

     I hereby certify the foregoing pages are a true and correct transcription of the audio recording of the above-referenced case, heard in Superior Court, G.A. # 02 Derby, Connecticut, before the Honorable Scott Jones, Judge, on the 1st day of March, 2023.

     Dated this 5th day of June, 2023 in Milford, Connecticut.

*Stephanie Charboneau*
Stephanie Charboneau
Court Recording Monitor